IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-CV-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, *et al.*,

    Plaintiffs

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

    Defendant.

---

**PROPOSED CIVIL SCHEDULING ORDER**

---

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

The Scheduling Conference occurred on June 10, 2013, at 10:30 a.m. before Magistrate Judge Michael J. Watanabe.

The following counsel appeared on behalf of the Plaintiffs:

1.     On behalf of the 55 Sheriffs and David Strumillo:

    David B. Kopel
    Independence Institute
    727 E. 16th Ave.
    Denver, CO 80203
    Phone: (303) 279-6536

2.     On behalf of Magpul Industries and the National Shooting Sports Foundation:

    Jonathan M. Anderson
    Douglas L. Abbott
    Holland & Hart
    PO Box 8749
    Denver, CO 80201-8749
    Phone: (303) 295-8566

3. On behalf of David Bayne, Dylan Harrell, Outdoor Buddies, Inc., the Colorado Outfitters Association, Colorado Farm Bureau, Women for Concealed Carry, and Colorado Youth Outdoors:

   Richard A. Westfall
   Peter J. Krumholz
   Hale Westfall, LLP
   1445 Market St., Suite 300
   Denver, CO 80202
   Phone: (720) 904-6022

4. On behalf of Licensed Firearms Dealers USA Liberty Arms, Rocky Mountain Shooters Supply, 2nd Amendment Gunsmith & Shooter Supply, LLC, Burrud Arms Inc. d/b/a Jensen Arms, Green Mountain Guns, Jerry's Outdoor Sports, Grand Prix Guns, Specialty Sports & Supply, and Goods for the Woods:

   Marc F. Colin
   Bruno Colin Jewell & Lowe PC
   1999 Broadway, Suite 3100
   Denver, CO 80202-5731
   Phone: (303) 831-1099

5. On behalf of Colorado State Shooting Association and Hamilton Family Enterprises, Inc., d/b/a Family Shooting Center at Cherry Creek State Park:

   Anthony J. Fabian
   Law Offices of Anthony J. Fabian PC
   510 Wilcox St., Suite C
   Castle Rock, CO 80104
   Phone: (303) 663-9339

The following counsel appeared on behalf of Defendant John W. Hickenlooper:

Daniel D. Domenico
David Christopher Blake
Jonathan Patrick Fero
Matthew David Grove
Office of the Colorado Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6000

## 2. STATEMENT OF JURISDICTION

**Plaintiffs' Statement:**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims arise under the Constitution and statutes of the United States. This Court has jurisdiction to grant the declaratory relief sought pursuant to 18 U.S.C. § 2201, and additional relief pursuant to 18 U.S.C. § 2202. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 because this action involves a deprivation of federal constitutional rights by those acting under color of state law.

**Defendant's Statement**

The Governor does not concede that he is an appropriate defendant in this case or that this Court represents an appropriate forum for raising the claims asserted. The Governor reserves the right to assert immunity under the Eleventh Amendment or to seek federal court abstention from the interpretive questions relating to the challenged state laws. The Governor anticipates making a final evaluation of the immunity issue prior to the status conference set for June 10, 2013.

The Governor does not concede that the Sheriffs have Article III standing to challenge the constitutionality of a state law with which they disagree.

## 3. STATEMENT OF CLAIMS AND DEFENSES

a.   **Plaintiffs:**

The Supreme Court, in *District of Columbia v. Heller*, 554 U.S. 570 (2008), held that the Second Amendment to the U.S. Constitution guarantees the right of individual citizens to keep and bear arms for all lawful purposes. 554 U.S. at 627. The right to arms is fundamental, and self-defense is its "central component." 554 U.S. at 628. In *McDonald v. Chicago*, 561 U.S. 3025 (2010), the Supreme Court held that the rights protected by the Second Amendment are incorporated by the Fourteenth Amendment and apply equally to the states.

On March 20, 2013, Governor Hickenlooper signed House Bills 13-1224 and 13-1229 ("HB 1224" and "HB 1229," respectively). HB 1224:

1. Bans all ammunition magazines sold or acquired after July 1, 2013, that hold more than 15 rounds of ammunition;
2. Bans magazines of any size that are "designed to be readily converted" to hold more than 15 rounds of ammunition;
3. Allows for "grandfathered" ownership of magazines but only if: (a) the magazines were owned prior to July 1, 2013; *and* (b) the owner maintains "continuous possession" of the magazine after July 1, 2013.

HB 1229 requires so-called "universal" background checks before sale or temporary transfer of a firearm, with only a few exceptions. As detailed below, HB 1224 and 1229 violate the Second and Fourteenth Amendments, Supreme Court precedent in *Heller* and *McDonald*, and the Americans with Disabilities Act ("ADA").

> a. *HB 1224 Violates the Second and Fourteenth Amendments because it Prohibits Magazines Larger than 15 Rounds.*

Many common and popular firearms, used for self-defense as well as target and sport shooting, come standard with magazine capacities larger than 15 rounds. *Heller* forbids the prohibition of arms which are "typically possessed by law-abiding citizens for lawful purposes." Magazines of 16-20 rounds for handguns, and 16-30 rounds for rifles plainly meet this standard.

Accordingly, the prohibition of such magazines is categorically forbidden by *Heller*.

> b. *HB 1224 Violates the Second and Fourteenth Amendments because it Prohibits Magazines of Any Size that are "Designed to be Readily Converted."*

Magazines for most handguns and many rifles are detachable box magazines, which often contain a removable base (floor) plate. The existence of removable base plates necessarily means that the magazine can be extended through commercially available extension products or readily available fabricated extensions. Instead of a detachable box magazine, some rifles have fixed tube magazines, which lie underneath the rifle barrel. Many fixed tube magazines have removable end caps, and so can be easily extended. As a result, nearly every magazine – for both handguns and rifles – can be converted to exceed the capacity limit set by HB 1224. Notably, HB 1224 bans magazines regardless of whether they have actually been converted to hold more than 15 rounds.

To the extent that HB 1224 bans some or all magazines of 15 rounds or less, it further violates the *Heller* standard against outlawing arms "typically possessed by law-abiding persons for lawful purposes."  Plaintiffs intend to seek a preliminary injunction barring HB 1224''s prohibitions related to such magazines because it would make a very large fraction, perhaps a majority, of handguns and rifles unusable or illegal.

> c. *HB 1224 Violates the Fourteenth Amendment Due Process Clause because it is Ambiguous and Vague Regarding Magazines of 15 Rounds or Less.*

Neither ordinary firearms owners, nor experts, for the Office of the Attorney General itself understand what is prohibited by HB 1224's ban on magazines that are "designed to be readily converted" to hold more than 15 rounds. The intent of the designer of any particular firearm magazine is beyond the ken of any of the Plaintiffs—and also of the Defendant.

The Attorney General's technical guidance says that a removable base/floor plate does not, in itself, make a magazine "designed to be readily converted." But no-one, including the Attorney General, has been able to specify what physical feature *does* make a magazine "designed to be readily converted."

The unconstitutional vagueness of the HB 1224 "designed" language chills the exercise of Second Amendment rights of all Plaintiffs. The vague language is an even more

serious problem for Plaintiff Sheriffs, because they and their deputies are supposed to enforce the statute, but they have no way to knowing which small magazines are or not illegal contraband.

For these reasons, Plaintiffs intend to seek a preliminary injunction against this part of HB 1224 as well.

### d. HB 1224 Violates the Second and Fourteenth Amendments because it Requires the "Continuous Possession" of Magazines Owned on the Effective Date.

HB 1224 contains a "grandfather" clause permitting an individual to retain a magazine larger than 15 rounds or any of indeterminate class of prohibited smaller magazines, if two requirements are both met: The magazine was owned prior to the effective date of HB 1224, **and** the magazine remains in the owner's individual's "continuous possession." The term "continuous possession" is undefined in HB 1224.

The Attorney General's technical guidance infers an exception to "continuous possession," so that the owner can allow someone else to possess the magazine, so long as the second person remains in the "continuous physical presence" of the owner. The technical guidance does not "and cannot change or replace the unequivocal language" of HB 1224. *See* Jordan v. Pugh, 504 F.Supp.2d 1109, 1118 (D. Colo. 2007). The technical guidance "can be withdrawn or further revised at any time." *Id.*

To whatever extent the technical guidance solves the unconstitutional vagueness of "continuous possession," the guidance demonstrates the violation of the Second Amendment. Under the guidance, all of the following are prohibited by HB 1224:

> a) Loans to friends, family, spouses, and employees – regardless of the duration. For example, allowing one's spouse to use a firearm and its grandfathered magazine for lawful self-defense in the home while the owner is out of town.
> b) General bailments to a friend or neighbor for safe storage while the owner is away from the home.
> c) General bailments to a gunsmith for regular maintenance and repairs, if the owner does not remain in the "continuous physical presence" of the gunsmith throughout the days and weeks that are the typical turn-around time for arms repairs.

Therefore, HB 1224's "continuous possession" requirement violates the Second and Fourteenth Amendments. Plaintiffs intend to seek a preliminary injunction on this aspect of HB 1224 as well.

### e. HB 1224 Violates the Americans With Disabilities Act.

The exercise of enumerated constitutional rights, including Second Amendment rights, is a "major life activity" under the Americans with Disabilities Act. Title II of the ADA prohibits public entities from subjecting persons with disabilities to discrimination because of their disabilities. 42 U.S.C. § 12132. Many disabled individuals, including the disabled Plaintiffs, have reduced mobility, so they cannot retreat or take cover as quickly as can able-bodied crime victims. Likewise, many disabled individuals, including the disabled Plaintiffs, cannot

change magazines as quickly as able-bodied people can. Therefore, persons with relevant disabilities are entitled to a "reasonable accommodation" under the ADA so that they can own magazines larger than 15 rounds, for necessary self-defense.

   f. *HB 1229 Violates the Second and Fourteenth Amendments because it Imposes Illegitimate Restrictions on the Private Sale of Firearms.*

HB 1229 requires that when private individuals (that is persons who are not engaged in the business of the retail sale of firearms--Federal Firearms Licensees), they must route the sale through a Federal Firearms Licensee (FFL). The FFL is supposed to contact the Colorado Bureau of Investigation for a background check of the gun buyer **and also** conduct the transfer as if he were selling a firearm out of his own inventory. The latter requirement means that the dealer and the transferee must jointly complete a three-page federal form, for which the dealer is at risk of civil and criminal liability for errors.

This regulatory scheme creates a *de facto* prohibition on private sales and thus violates the Second Amendment. The creation of a legal mandate with which persons cannot in practice comply violates the Due Process clause of the Second Amendment.

Further, for certain Plaintiffs, the multitude of background checks and the related expenses are highly oppressive. For example, HB 1229 mandates that when a non-natural person acquires a firearm, every natural person who may use the firearm must undergo a background check. Because many family farms and ranches in Colorado are LLCs or partnerships, this means that when the farm or ranch acquires a firearm, every family member, and every farm/ranch hand must undergo a background check.

The per-person cost is $22. (The $10 fee to the FFL, allowed by HB 1229; plus the $12 fee to the CBI, which is imposed by a separate law, and which is not challenged in this lawsuit.) So a farm or ranch could have to spend $220 in fees in order to acquire a $140 gun. And of course every family member and farm/ranch hand would have to travel in person to the FFL, assuming that one could be found, in order to undergo the background check.

Plaintiffs take no position on the abstract issue of the constitutionality of background checks on private sales. Plaintiffs do contend that HB 1229 is so oppressive that it cannot pass any form of heightened scrutiny.

   g. *The Temporary Transfer Ban of HB 1229 Violates the Second and Fourteenth Amendments.*

HB 1229 also outlaws all temporary transfers of firearms, with certain exceptions. The right to own firearms includes the rights to use them for all legitimate activities. *Heller* & *McDonald*, *passim*. Legitimate uses of firearms include temporary transfers of firearms.

The HB 1229 exceptions are too narrow. For example, HB 1229 allows gifts or loans of firearms between some family members, but excludes many common family relationships, such as former spouses, other partners, stepchildren, and second cousins.

Similarly, if a man and a woman are engaged but not married, and the man leaves his firearms with his fiancée while he is sent overseas for military duty, the fiancée must undergo

a new background check every 30 days in order to possess and safely store the man's firearms.

HB 1229 will impact Colorado Youth Outdoors ("CYO") because its success is largely attributed to their fundraising. Because CYO's largest and most successful fundraiser involves target shooting and many of its members are new to shooting sports, CYO frequently loans firearms to participants for a period exceeding 72 hours. (HB 1229 allows 72-hour loans.) HB 1229's mandate requires that CYO conduct a background check on every individual it loans firearms to for fundraisers and other events. This requirement will have a chilling effect on CYO's business operations and is a violation of the Second Amendment.

Plaintiffs contend that at a minimum, the Second Amendment protects Colorado Youth Outdoors and other plaintiffs, who wish to temporarily transfer firearms for innocent and constructive reasons, from being treated as if they were selling guns to strangers in a parking lot. The Second Amendment does not allow temporary transfers to be subject to the regulatory burden attendant to permanent sales.

Even if background checks could be required on temporary transfers, HB 1229 does not provide a mechanism by which Coloradoans can participate in a functional system. On top of the dearth of willing FFLs (described in paragraph f.), the CBI background check system, although called an "instant" check in the statute, often takes several hours or up to nine days in which to generate an approval. The delays often take so long that temporary transfers are in effect impossible. The *de facto* prohibition of temporary transfers for innocent purposes violates the Second Amendment. The nominal creation of a regulatory scheme which in fact makes it impossible to engage in the regulated activity is a violation of the Fourteenth Amendment.

        **b.**    **Defendant:**

House Bills 13-1224 and -1229 strike a constitutionally satisfactory balance between the individual right to self-defense, which the United States Supreme Court has held is protected by the Second Amendment, and the state's compelling need to protect the safety of its citizenry.  Assuming *arguendo* that magazine capacity is covered by the Second Amendment at all, there is a reasonable fit between H.B. 13-1224's limit of fifteen rounds and Colorado's public safety obligations. Thus, limiting magazine size to fifteen or fewer bullets in accordance with H.B. 13-1224 does not violate the Second Amendment (Count I).

Nor does H.B. 13-1224 "ban…the possession of a broad class of functional firearms." (Count II).  To the contrary, a reasonable interpretation of the bill ensures that residents of and visitors to Colorado may possess functional semi-automatic handguns and other firearms that are adequate for the purposes of self-defense, along with a wide variety of compatible ammunition magazines.

H.B. 13-1224 is not unconstitutionally vague or ambiguous with respect to the phrases "designed to be readily converted" or "continuous possession" (Counts III and IV). To the extent that these phrases may be vague or ambiguous, this Court should certify any interpretive questions to the Colorado Supreme Court rather than declaring their meaning as a matter of state law.

Because Title II of the Americans with Disabilities Act does not apply to state statutes such as H.B. 13-1224, Plaintiffs are not entitled to relief. (Count V).

H.B. 13-1229, which expands the background check requirement for gun transfers in Colorado, does not prohibit or substantially limit activity that is protected by the Second Amendment.  And even to the extent that the statute may do so, there is a reasonable fit between the regulation and the state's legitimate goal of limiting the availability of firearms for persons who are prohibited from gun possession or ownership by state or federal law.

### 4. UNDISPUTED FACTS

The parties anticipate conferring and agreeing to the undisputed facts, if any, at a later date.

### 5. COMPUTATION OF DAMAGES

Not applicable.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED.R.CIV.P. 26(f)

a. The Rule 26(f) meeting was held at the offices of the Attorney General on June 5, 2013.

b. Names of each participant and party he/she represented:

David Kopel, on behalf of the 55 Sheriffs and David Strumillo.

Jonathan M. Anderson and Douglas L. Abbott, on behalf of Magpul Industries and the National Shooting Sports Foundation.

Richard A. Westfall and Peter J. Krumholz, on behalf of David Bayne, Dylan Harrell, Outdoor Buddies, Inc., the Colorado Outfitters Association, Colorado Farm Bureau, Women for Concealed Carry, and Colorado Youth Outdoors.

Marc F. Colin, on behalf of Licensed Firearms Dealers USA Liberty Arms, Rocky Mountain Shooters Supply, 2nd Amendment Gunsmith & Shooter Supply, LLC, Burrud Arms Inc. d/b/a Jensen Arms, Green Mountain Guns, Jerry's Outdoor Sports, Grand Prix Guns, Specialty Sports & Supply, and Goods for the Woods.

The foregoing attorneys also appeared on behalf of Colorado State Shooting Association and Hamilton Family Enterprises, Inc., d/b/a Family Shooting Center at Cherry Creek State Park, in the absence of its counsel of record, Anthony J. Fabian.

Daniel D. Domenico, David Christopher Blake, Jonathan Patrick Fero, and Matthew David Grove on behalf of the Governor of the State of Colorado

    c.       Statement as to when Rule 26(a)(1) disclosures were made or will be made.

          Initial disclosures will be made on or before June 19, 2013.

    d.       Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

          Not applicable.

    e.       Statement concerning any agreements to conduct informal discovery:

Counsel for the Defendant has agreed to provide the legislative record of HB 1224 and HB 1229, including transcripts. Plaintiffs believe that the parties will continue to try to cooperate if they desire additional information within the time frames suggested by the Plaintiffs.

Defendants submit that the parties have agreed to discuss the possibility of informal interviews, rather than depositions, for certain non-testifying plaintiffs. The parties have agreed to conduct informal discovery where possible, including the good faith exchange of documents and information via informal requests where appropriate. The parties agree to respond to informal discovery requests within the 30 days authorized by the Rules of Civil Procedure unless objection is made or some other time is mutually agreed upon. By responding to informal discovery requests, the parties do not waive any objection they may have to the admissibility of evidence at trial.

    f.       Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

**Plaintiffs' position:**

The plaintiffs do not believe considerable discovery is needed in this case; they believe that extensive discovery will thwart the expeditious resolution of the case. Accordingly, after receiving the legislative history and Defendant's answer, Plaintiffs will serve one set of interrogatories, requests for admissions and/or request for production on the Defendant to fully understand how Defendant intends to meet his burden to establish a compelling state interest or some similar standard. Once full responses are received, Plaintiff intends to be ready to try the case.

**Defendant's position**:

Plaintiffs have challenged the constitutionality of two duly enacted state laws, and have made it clear that they expect the state to bear the factual burden of defending their validity. The parties have agreed that a ten-day trial is appropriate, yet the Plaintiffs maintain that very little discovery will be necessary. While the Governor does not anticipate seeking leave to exceed the presumptive limits for written discovery under Fed. R. Civ. P. 33, 34, and 36, the presumptive limits on written discovery apply to each plaintiff individually and not to each side as a whole.

The Governor anticipates objecting to the issuance of "contention" interrogatories.

g. Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

**Plaintiffs' position:**

The plaintiffs do not believe discovery of electronically stored information is necessary; they believe that extensive discovery will thwart the expeditious resolution of the case.

**Defendant's position:**

Upon receiving notice of the complaint in this case, the Governor took steps to ensure the preservation of electronically stored information, and notified the Plaintiffs of his expectation that they had done the same dating back to the date upon which they reasonably anticipated the commencement of litigation. The Governor anticipates that his defenses may involve the discovery of electronically stored information, and that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

h. Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The parties agree that there is no realistic possibility of a prompt settlement which would resolve the entire case.

**Defendant's statement:**

As discussed at the May 30, 2013 status conference, the parties attempted to reach a stipulation regarding entry of an injunction. The Governor was and remains willing to stipulate to the entry of a preliminary injunction binding him to enforcement of H.B. 13-1224 consistent with the Technical Guidance, a copy of which was provided to the Court during the status conference.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

a.-c. Proposed limitations on interrogatories, requests for production and requests for admission:

**Plaintiffs' position:**

Plaintiffs propose that each side be allowed no more than 25 interrogatories, 10 requests for admission, and 10 requests for production, and that no other discovery should be allowed.

**Defendant's position:**

Defendants propose a limit of 25 interrogatories, 10 requests for production of documents, and 10 requests for admission per side. Defendants request that the Court clarify that these limits apply to each Plaintiff individually.

Defendants propose a 7-hour limit on the length of depositions, unless longer deposition is agreed to by the parties or ordered by the court.

d.   Other Planning and Anticipated Motions.

**Plaintiffs' position:**

The plaintiffs will be filing a motion for preliminary injunction on or before June 14, 2013. The parties may seek a separate scheduling order regarding the briefing of that motion.

**Defendant's position:**

The Governor anticipates filing a motion for certification of questions of law to the Colorado Supreme Court with respect to the Plaintiffs' vagueness challenges to H.B. 13-1224. The Governor would be amenable to the entry of a preliminary injunction during the pendency of any certified questions, in a form to be submitted contemporaneously with the motion for certification.

In the event that the Court denies the motion for certification or any questions are not accepted by the Colorado Supreme Court, the parties have discussed the possibility of presenting certain legal questions to the Court for resolution with the goal of potentially narrowing the factual scope of the case. The Governor remains willing to stipulate to the entry of a preliminary injunction, while such questions are pending, irrespective of the forum.

### 9.  CASE PLAN AND SCHEDULE

a.   Deadline for Joinder of Parties and Amendment of Pleadings:

**Plaintiffs propose** July 1, 2013

**Defendant proposes** July 1, 2013.

    b.    Discovery Cut-off:

        **Plaintiffs propose** August 31, 2013

        **Defendant proposes** December 2, 2013.

    c.    Dispositive Motion Deadline:

        **Plaintiffs propose** August 1, 2013

        **Defendant proposes** December 20, 2013

    d.    Expert Witness Disclosure:

        1.    Anticipated fields of expert testimony:

**Plaintiffs** anticipate expert testimony in the fields of research concerning, among other things, the common and suitable use of firearms utilizing magazines of more than 15 rounds; the prevalence and nature of self-defense with firearms; the relative suitability of certain firearms for personal and home defense;.

**Defendants** anticipate expert testimony concerning, among other things, the relation between magazine size and both collective and individual self-defense needs, the correlation between magazine size and the number of casualties in mass shooting events, the efficacy of expanded background checks on the illegal transfer of firearms and possession by prohibited persons, and any effect of the challenged regulations on firearms markets.

        2.    Limitations which the parties propose on the use or number of expert witnesses:

**Plaintiffs** propose a limit of five experts per side.

**Defendant** proposes a limit of three experts per side.

        3.    The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:

**Plaintiffs** propose July 15, 2013

**Defendant** proposes September 13, 2013

    4. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:

**Plaintiffs** propose July 31, 2013

**Defendant** proposes October 11, 2013.

    e. Identification of Persons to Be Deposed:

**Plaintiffs' position:**

Plaintiffs do not believe that depositions are necessary in order to try this case. Given the July 1 effective date of the bills and the time-sensitive nature of these proceedings, plaintiffs believe that interrogatories will be sufficient for purposes of preparing for trial. Similarly, with respect to experts, the expert reports submitted under Fed. R. Civ. P. 26(a)(2)(B) should be sufficient to avoid the need for expert depositions.

**Defendant's position:**

The Governor maintains that, at a minimum, he should be permitted to depose every witness whom the Plaintiffs indicate will testify at trial. With respect to non-testifying plaintiffs, the Governor is willing to conduct informal interviews to follow up on any questions remaining after responses to written discovery are received.

    f. Deadline for Interrogatories:

**Plaintiffs** propose August 1, 2013 as the deadline for serving interrogatories

**Defendant** proposes November 1, 2013, as the deadline for serving interrogatories.

    g. Deadline for Requests for Production of Documents and/or Admissions:

**Plaintiffs** propose August 1, 2013 as the deadline for serving requests for production of documents and admissions

**Defendant** proposes November 1, 2013, as the deadline for service requests for production of documents and requests for admission.

## 10.  DATES FOR FURTHER CONFERENCES

*[The magistrate judge will complete this section at the scheduling conference if he or she has not already set deadlines by an order filed before the conference.]*

      a.      Status conferences will be held in this case at the following dates and times:

_____.

      b.      A final pretrial conference will be held in this case on _____ at ____ o'clock __.m.  A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

      a.      As set forth above, after good-faith discussions among counsel, the parties cannot disagree concerning the scope of discovery necessary to try this case, and consequently they disagree as to the applicable deadlines listed in Section 9.

      b.      The parties anticipate a ten-day trial to the court.

      c.      All pretrial proceedings will be most efficiently and economically conducted in Denver.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

## 13. AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this _____ day of _____, 20___.

BY THE COURT:

_____
United States Magistrate Judge

APPROVED:

| For Plaintiffs: | For Defendant: |
|---|---|
| s/David B. Kopel<br>David B. Kopel | s/Daniel D. Domenico<br>Daniel D. Domenico |
| s/Douglas L. Abbott<br>Douglas L. Abbott | s/ David Blake<br>David Blake |
| s/Richard A. Westfall<br>Richard A. Westfall | s/ Matthew D. Grove<br>Matthew D. Grove |
| s/Marc F. Colin<br>Marc F. Colin | s/ Jonathan P. Fero<br>Jonathan P. Fero |
| s/Anthony J. Fabian<br>Anthony J. Fabian | s/ Kathleen Spalding<br>Kathleen Spalding |

6243881_1.DOCX