

**John W. Suthers**
Attorney General
**Cynthia H. Coffman**
Chief Deputy Attorney General
**Daniel D. Domenico**
Solicitor General

**STATE OF COLORADO**
**DEPARTMENT OF LAW**

Office of the Attorney General

**Ralph L. Carr**
**Colorado Judicial Center**
1300 Broadway, 10th Floor
Denver, Colorado 80203
Phone (720) 508-6000

May 16, 2013

Colorado Department of Public Safety
Executive Director James H. Davis
700 Kipling Street, 3rd Floor
Denver CO 80215

RE:   Technical Guidance on the Interpretation and Application of House Bill 13-1224, Large-Capacity Magazine Ban

Dear Executive Director Davis:

House Bill 13-1224, which was passed during this year's legislative session and becomes effective July 1, 2013, prohibits the sale, transfer, and possession of "large-capacity ammunition magazines." On March 20, 2013, in a statement issued at the time he signed HB 13-1224 into law, Governor Hickenlooper instructed "the Colorado Department of Public Safety to consult with the Office of the Attorney General and others, as necessary . . . and then to draft and issue, to law enforcement agencies in the State of Colorado, technical guidance on how the law should be interpreted and enforced."

This letter sets forth the technical guidance requested by the Governor.

**Introduction**

This technical guidance, issued at the request of the Governor, is meant to assist Colorado law enforcement agencies in understanding and applying portions of House Bill 13-1224, which regulates the sale, transfer, and possession of "large capacity magazines." Although this guidance is not binding on the courts, it is based upon existing legal principles and represents a fair and accurate reading of the legislation.

**Definition of "Large Capacity Magazine"**

Under House Bill 1224, the term "large capacity magazine" is defined, in part, as follows: "a fixed or detachable magazine, box, drum, feed strip, or similar device capable of accepting, or that is designed to be readily converted to accept, more than fifteen rounds of ammunition."

Exhibit  B

Page 2

The phrase "designed to be readily converted to accept more than fifteen rounds of ammunition" has prompted questions regarding the scope of the definition, particularly because some ammunition magazines include features, such as removable baseplates, that can be removed and replaced, or otherwise altered, so that the magazine accepts more than fifteen rounds.

The term "designed," when used as a modifier, denotes a feature that meets a specific function. This suggests that design features that fulfill more than one function, and whose function is not specifically to increase the capacity of a magazine, do not fall under the definition. The features of a magazine must be judged objectively to determine whether they were "designed to be readily converted to accept more than fifteen rounds."

Under this reading of the definition, a magazine that accepts fifteen or fewer rounds is not a "large capacity magazine" simply because it includes a removable baseplate which may be replaced with one that allows the magazine to accept additional rounds. On many magazines, that design feature is included specifically to permit cleaning and maintenance. Of course, a magazine whose baseplate is replaced with one that does, in fact, allow the magazine to accept more than fifteen rounds would be a "large capacity magazine" under House Bill 1224.

**"Possession" of Large-Capacity Magazines and Application of the Grandfather Clause of House Bill 1224**

House Bill 1224 also places limitations on when and how a large-capacity magazine may be sold, transferred, or possessed. In particular, the bill's grandfather clause permits possession of a large-capacity magazine on or after July 1, 2013 by an individual who "owns" such a magazine on that date and "maintains continuous possession" of it thereafter. However, the bill prohibits the owner of a large-capacity magazine from selling or transferring it after July 1, 2013, and also prohibits an individual who as of July 1 did not own and since then has not continuously possessed a particular large-capacity magazine to possess it after July 1, 2013.

Responsible maintenance, handling, and gun safety practices, as well as constitutional principles, dictate that these provisions cannot be reasonably construed as barring the temporary transfer of a large-capacity magazine by an individual who remains in the continual physical presence of the temporary transferee, unless that temporary transfer is otherwise prohibited by law. For example, an owner should not be considered to have "transferred" a large-capacity magazine or lost "continuous possession" of it simply by handing it to a gunsmith, hunting partner, or an acquaintance at a shooting range with the expectation that it will be promptly returned. Likewise, a gunsmith, hunting partner, or acquaintance at a shooting range who acquires temporary physical custody of a large-capacity magazine from its owner should not be considered in "possession" of the magazine

Page 3

so long as he or she remains in the owner's physical presence. However, it would be unreasonable to construe the bill or this guidance to exempt a temporary transfer of a large-capacity magazine in connection with criminal activity.

For similar reasons, the bill's requirement that an owner must maintain "continuous possession" in order to ensure the application of the grandfather clause cannot reasonably be read to require continuous physical possession. Proper storage of a large-capacity magazine, such as in a gun safe in the owner's home or in a secure carrying case in the trunk of an automobile, is entirely consistent with the bill's intent of limiting the acquisition and permanent transfer of large-capacity magazines after the effective date of July 1, 2013.

Sincerely,

JOHN W. SUTHERS
Colorado Attorney General


cc:     Governor John Hickenlooper
        Jack Finlaw, Chief Legal Counsel to Governor Hickenlooper