IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-CV-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, *et al.*,

    Plaintiffs

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

    Defendant.

### PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR CERTIFICATION OF QUESTIONS OF LAW TO THE COLORADO SUPREME COURT

Plaintiffs submit this Response to Defendant's Motion for Certification of Questions of Law to the Colorado Supreme Court.  For the reasons set forth below, the motion should be denied.

**I.      INTRODUCTION**

Certification in this case is not only unnecessary, but completely unhelpful given the vagueness problems with HB 1224.  Applicable case law directs that where, as here, challenged legislation suffers from vagueness, it is not subject to a limiting interpretation by the state court because the legislation is open to an indefinite number of interpretations, and nothing less than extensive adjudications in a variety of factual situations would bring the legislation within the bounds of constitutional certainty.  Certification of the two questions posed by Defendant therefore would not be dispositive, nor would it serve to narrow the constitutional issues facing this Court.

1

HB 1224 was introduced on February 7, 2013, and signed by the Governor on March 20, 2013 – a total of 41 days. The Governor has now had three months working with his lawyers to define: (a) which magazines that presently use 15 rounds or less are "designed to be readily converted" to 16 rounds or more and are therefore illegal under HB 1224; and (b) what "possession" constitutes "continuous possession" allowing a present owner of a magazine to avail himself or herself of HB 1224's facially highly restrictive "grandfather clause." After May 16's "Technical Guidance," Plaintiffs' highly detailed complaint filed on May 17 pointing out the problems with both clauses, and now the questions posed to be certified to the Colorado Supreme Court (filed on June 12), there remains no definition, or even a suggested definition, of either of the terms "designed to be readily converted" or "continuous possession" that would allow citizens to know which magazines and what possession are legal – and that law enforcement can use to enforce them. For these reasons and those detailed below, certification is particularly inappropriate in this case.

## II.  QUESTIONS FOR WHICH CERTIFICATION IS SOUGHT

At issue in Plaintiffs' motion for preliminary injunction and the two questions for which certification is sought are two aspects of HB 1224 that everyone agrees are vague and capable of multiple interpretations. Upon signing HB 1224 on March 20, 2013, the Governor issued a "signing statement" wherein he effectively conceded that there were interpretation problems attendant to HB 1224's "designed to be readily converted" language as well as what would constitute "continuous possession," and asked that the Attorney General follow up on trying to better define what these terms meant. The Attorney General then issued a "Technical Guidance"

addressing these two problem areas of HB 1224 and noted at the beginning that it was issuing the "Technical Guidance" at the request of the Governor.

In the "Technical Guidance," the Attorney General states that the bill's definition of a "large capacity magazine" does not include every magazine that could conceivably be converted to a "large capacity magazine" "simply because" the magazine has a removable base plate or other similar features. "Technical Guidance" at 2. Rather than providing any bright-line test, the "Technical Guidance" concludes that a magazine's "features" "must be judged objectively to determine whether they were 'designed to be readily converted to accept more than fifteen rounds.'" The "Technical Guidance" does not further define what "judged objectively" means, nor does it define who or what does the judging, or what process would be employed to make the necessary determinations.

Regarding "continuous presence," the "Technical Guidance" states that only "temporary transfers" of "grandfathered" magazines are permissible, but only so long as the magazine remains in the "continual physical presence" of the owner. Furthermore, any "temporary transfer" must also be done with the "expectation that it will be promptly returned." *Id*. Accordingly, all "temporary transfers" where the "grandfathered" magazine leaves the "physical presence" of the owner destroys "grandfather" status and any possession after such transfer is illegal.

The questions Defendant proposes to certify not only deviate from the "Technical Guidance" but any answer to them would not add any clarity to the uncertainty surrounding these two aspects of HB 1224. As for the first question proposed by Defendant, it does not even reference the language of the statute: "designed to be readily converted." While it is not entirely

3

clear what exactly is being asked of the Colorado Supreme Court, it appears that what is being sought is a legal conclusion that irrespective of the language of HB 1224 and its "designed to be readily converted" language, the intent of HB 1224 is that it not "***amount to*** a ban on functional magazines for most handguns and many rifles."  (Emphasis added.)  This question, even if answered, would not provide guidance on what exactly "designed to be readily converted" means, which is the focus of the motion for a temporary restraining order or preliminary injunction.

The lack of any certainty arising from the first question is underscored by the question's last clause: "or does it apply only to magazines that are ***principally*** used with ***extensions*** or ***devices*** that increase the combined capacity to more than 15 rounds."  (Emphasis added.)  This too deviates from the "Technical Guidance."  The "Technical Guidance" specifically addressed "designed to be readily converted" and said magazines with removable base plates would not be deemed prohibited by this language "simply because" of such a feature and stated that each magazine would then be subject to an "objective test" to see whether the magazine was "designed to be readily converted."  By contrast, Defendant's first proposed question indicates that some test will still need to be applied on a magazine-by-magazine basis to determine whether it is "only" one of those magazines that is "principally used" with an "extender or device."  The question suggests no definition for what would constitute "principally," or what is an "extender," or, especially, what is a "device."  It is also silent on what type of test or process should be used to make the determination.

In short, the first question is designed to obtain from the Colorado Supreme Court an answer based upon a false choice: does HB 1224's definition of "large capacity magazine" either

(a) "amount[] to a ban on functional magazines for most handguns and many rifles" (which would make it patently unconstitutional) *or* (b) encompass "only" some limited subset of magazines that are "principally used" with an "extender or a device"?  In a variation on begging the question, the only answer could be HB 1224's intent is not to be patently unconstitutional, but rather, it should be read as applying to some more limited but still undefined subset of magazines.  The question appears designed to avoid providing any real definition of what "designed to be readily converted" actually means, but rather to shift the focus to one of empirical effects.

The second question also deviates from the "Technical Guidance."  There, "continuous possession" means "continual physical presence" of the owner, with certain "temporary transfers" being allowed so long as "continual physical presence" was maintained and that the "temporary transfer" must also be done with the "expectation that it will be promptly returned."  In Defendant's second question, he substitutes an allowance for "another person to temporarily hold, use, or share [a magazine] for lawful purposes."  There is no definition of what constitutes "temporarily," "hold," "use," or, especially, "share."  The second question, even if answered yes (as Defendant intends), would provide far less – not more – clarity than that offered in the "Technical Guidance."

**III.    LEGAL ANALYIS**

    **A.    Certification Should Not Be Routinely Granted, But Only Where the State Law Questions Are "Dispositive" or Would Avoid or Substantially Modify the Federal Constitutional Challenge to the Statute**

The Tenth Circuit has held that certification should not be routinely invoked. *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) ("Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law."). Other Tenth Circuit cases stand for a similar proposition. For example, in *Pino v. United States*, 507 F.3d 1233 (10th Cir. 2007), the Tenth Circuit declared that "we will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Id.* at 1236.

Thus, certification in the Tenth Circuit is appropriate only where the state law questions are both "unsettled and dispositive." *Anaconda Minerals Co. v. Stoller Chem. Co.*, 990 F.2d 1175, 1177 (10th Cir. 1993). "Moreover, where statutory interpretation is at issue, the touchstone of our certification inquiry is whether the state statute is readily susceptible of an interpretation that 'would avoid or substantially modify the federal constitutional challenge to the statute.'" *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008) (quoting *Bellotti v. Baird*, 428 U.S. 132, 148 (1976)).

Defendant cited *Larrieu v. Best Buy Stores*, 491 F. Appx. 864 (10th Cir. 2012), for the applicable standard. *Larrieu*, unlike the cases cited above, is an unpublished decision. However, the standard recited in *Larrieu* focuses on whether the state law question is, among other things, "determinative." *Id.* at 866. It is therefore similar to the "unsettled and dispositive" standard in *Anaconda Minerals*.

*Larrieu* also provides a very useful contrast between the kinds of cases deserving of certification and those that are not. In *Larrieu* the outcome of a personal injury lawsuit depended on which of two competing interpretations of the Colorado Premises Liability Act would prevail in Colorado state courts. The case did not involve a constitutional challenge to the Act. The Tenth Circuit, emphasizing that both its own precedent as well as C.A.R. 21.1 focuses on the word "determinative," *id.* at 865, certified the case to the Colorado Supreme Court to address whether the Act applies to injuries caused by a defendant-landowner's employee during an activity not directly or inherently related to the land. If the answer was no, the district court's grant of summary judgment would be affirmed and the case would be at an end; if the answer was yes, the plaintiff's lawsuit would be reinstated. The answer to the certified question would be determinative.

By contrast, in this case the answer to Defendant's proposed questions will not be determinative in any sense. As discussed above, even if the Colorado Supreme Court answers the questions in the way Defendant would like, substantial vagueness and uncertainty will remain. Simply stated, the questions as posed do nothing to address, much less correct, the vagueness concerns with regard to the terms "designed to be readily converted" and "continuous possession." As a result, the Supreme Court's response will be neither "determinative" nor "dispositive" of the vagueness problems created by the use of these two terms.[1]

---

[1] While Defendant presumably wishes that the Colorado Supreme Court would read out of the statute the words "designed to be readily converted," as further discussed below, rewriting a statute is not an appropriate purpose for certification.

### B. The *Pullman* Abstention Doctrine Provides Additional Guidance to this Court in Addressing Motions for Certification to a State Supreme Court

The Tenth Circuit, in fashioning the principles applicable to state certification questions, has borrowed heavily from the *Pullman* abstention doctrine. *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941). In *Kansas Judicial Review*, the Tenth Circuit held that the "touchstone" of a certification inquiry is whether the state legislation can readily be interpreted in a way that "would avoid or substantially modify the federal constitutional challenge to the statute." 519 F.3d at 1119 (quoting *Bellotti v. Baird*, 428 U.S. at 148). This "touchstone" was derived, in turn, from *Pullman* abstention cases. *See, e.g., Harman v. Forssenius*, 380 U.S. 528, 535 (1965) (abstention appropriate only when the state law is "fairly subject to an interpretation ***which will render unnecessary or substantially modify the federal constitutional question***" (emphasis added)).

Although Defendant does not bring his motion pursuant to the *Pullman* abstention doctrine, other principles derived from *Pullman* precedent are equally applicable to his certification request. Indeed, even Defendant himself has treated abstention and certification interchangeably. He states that "***certification or abstention*** is inappropriate in cases involving a challenged provision that is not 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question.'" Motion, ¶ 7 (quoting *Board of Airport Comm'rs v. Jews for Jesus*, 482 U.S. 569, 575-76 (1989)).

#### 1. When a Statute's Language Is Open to an Indefinite Number of Interpretations, State Certification Will Not Be Useful

In *Board of Airport Comm'rs v. Jews for Jesus*, the United States Supreme Court held that neither certification nor abstention was available. 482 U.S. at 575. Of particular relevance

to the instant case, the Court held that abstention was inappropriate because the state statute at issue was so vague that any limiting construction would be of no assistance. *Id.* In so holding, the Court discussed its earlier decision in *Baggett v. Bullitt*, 377 U.S. 360 (1964), which involved the constitutionality of several statutes requiring loyalty oaths:

> The *Baggett* Court concluded that abstention would serve no purpose given the lack of any limiting construction, and held the statutes unconstitutional on their face under the First Amendment overbreadth doctrine. We observed that the challenged loyalty oath was not "open to one or a few interpretations, but to an indefinite number," and concluded that "[i]t is fictional to believe that anything less than extensive adjudications, under the impact of a variety of factual situations, would bring the oath within the bounds of permissible constitutional certainty." Here too, it is difficult to imagine that the resolution could be limited by anything less than a series of adjudications, and the chilling effect of the resolution on protected speech in the meantime would make such a case-by-case adjudication intolerable.

482 U.S. at 575. Thus, when a state statute is vague, it is not fairly subject to a limiting interpretation, and certification is therefore inappropriate.

In this case, Defendant concedes that HB 1224 "is subject to a range of interpretations," *i.e.*, that it is vague. Motion at ¶ 8.a. Despite Defendant's assurance that submitting HB 1224 to the Colorado Supreme Court for interpretation "will likely" "obviate Plaintiffs' vagueness challenges altogether," that assurance flies in the face of the very United States Supreme Court precedent which Defendant cited in his Motion. Similar to *Jews for Jesus* and *Baggett* decisions, certification would be of no use because the vagueness problems inherent in HB 1224 are such that it can be limited by nothing less than a series of adjudications involving numerous factual situations.

### 2.     This Court Cannot Certify to the Colorado Supreme Court for Purposes of Rewriting the Statute

It is also inappropriate to certify the interpretation of a state statute to a state supreme court for purposes of effectively re-writing the statute. *City of Houston v. Hill*, 482 U.S. 451 (1987). In *City of Houston*, the Court refused to certify a question of interpretation to the Texas courts because "there is no uncertain question of state law whose resolution might affect the pending federal claim. . . . [T]his ordinance is neither ambiguous nor obviously susceptible of a limiting construction. A federal court may not properly ask a state court if it would care in effect to rewrite a statute." *Id.* at 471.

Defendant's two proposed questions effectively invite the Colorado Supreme Court to rewrite HB 1224. For example, Defendant's first question invites the Court to (1) import into the bill the words "principally used" despite the fact that neither of those words appears anywhere in the bill, and (2) write out of the bill the words "designed to be readily converted." Similarly, Defendant's second proposed question invites the Court to import into the bill an exception to the "continuous possession" requirement, allowing the owner to "allow[] another person to temporarily hold, use, or share it for lawful purposes." Again, the words "temporary" or "temporarily" do not appear anywhere in HB 1224. Defendant cannot utilize the certification procedure to ask the Colorado Supreme Court to rewrite an overbroad and vague bill.

### 3.     Federal Courts Should Be More Reluctant to Certify Questions in Cases Involving Challenges Based on Fundamental Rights

The Tenth Circuit observed that "[c]ourts have been particularly reluctant to abstain in cases involving facial challenges on First Amendment grounds, in part because the delay caused by declining to adjudicate the issues could prolong the chilling effect on speech." *Kansas

*Judicial Review*, 519 F.3d at 1119 (citing *City of Houston v. Hill*, 482 U.S. 451, 467-68 (1987)). The same concerns regarding delay are applicable to certification of questions to a state supreme court.

Defendant clearly contemplates that all proceedings before this Court will stop while the parties brief the proposed questions to the Colorado Supreme Court. *See* Motion at ¶ 10 (alluding to concerns about delay "during the pendency of any certification proceedings"). Granting Defendant's motion would mean that a ruling on Plaintiffs' constitutional challenges inevitably would be delayed. There are many other issues involved in this case not addressed in either the Plaintiffs' motion for preliminary injunction or in the proposed certified questions (*e.g.*, the legality of all of HB 1229 requiring background checks of all private loans and transfers). There is no question that HB 1224 and HB 1229 seriously implicate all Coloradans' Second Amendment rights. Whether these rights are in fact violated should be determined at the earliest possible time.

    **C.    Certification Is Unnecessary Where the Federal Court Has Ready Access to State Court Precedent and Other State Materials, and Where the Parties Are Represented by State-Based Counsel**

In *L. Cohen & Co., Inc. v. Dun & Bradstreet, Inc.*, 629 F. Supp. 1419 (D. Conn. 1986), the court noted that "[a] federal district court sitting in [the relevant state] is not without resources to decide the routine questions of statutory construction," for it has "ready access to the various reported decisions of the [state] Supreme Court and the state lower courts construing the [relevant laws] . . . [and] also has access to the decisions of other courts construing similar state and federal statutes." Further, and most relevant to the present case, the court believed certification was unnecessary because the parties were "represented by competent [state-based]

counsel who [could] be relied upon to bring other relevant legislative and administrative materials to the court's attention." *Id.* at 1424-25.

The Governor, his team of lawyers in the Attorney General's office, and all executive branch departments including the Department of Public Safety (to whom the "Technical Guidance" was addressed) are before this Court and can inform this Court's decision. The Colorado Supreme Court can add nothing more than to attempt a potential rewrite of the actual language used in HB 1224.

### IV.    THIS COURT SHOULD DENY CERTIFICATION IN THIS CASE

The certification proposed by the Defendant fails all of the tests federal courts look to in determining whether to certify questions of law to state supreme courts. The motion to certify should be denied.

Dated this 14th day of June, 2013.

                    Respectfully submitted,

                    s/Richard A. Westfall
                    Richard A. Westfall
                    Peter J. Krumholz
                    HALE WESTFALL LLP
                    1445 Market Street, Suite 300
                    Denver, CO 80202
                    Phone: (720) 904-6022
                    Fax: (720) 904-6020
                    rwestfall@halewestfall.com

                    ATTORNEYS FOR DISABLED CITIZENS, OUTDOOR BUDDIES, INC. THE COLORADO OUTFITTERS ASSOCIATION, COLORADO FARM BUREAU, AND WOMEN FOR CONCEALED CARRY

David B. Kopel
INDEPENDENCE INSTITUTE
727 E. 16th Avenue
Denver, CO 80203
Phone: (303) 279-6536
Fax: (303) 279-4176
david@i2i.org

**ATTORNEY FOR SHERIFFS AND DAVID STRUMILLO**

Jonathan M. Anderson
HOLLAND & HART LLP
Post Office Box 8749
Denver, CO 80201-8749
Phone: (303) 295-8566
Fax: (303) 672-6508
jmanderson@hollandhart.com

**ATTORNEYS FOR MAGPUL INDUSTRIES AND THE NATIONAL SHOOTING SPORTS FOUNDATION**

Marc F. Colin
BRUNO, COLIN & LOWE PC
1999 Broadway, Suite 3100
Denver, CO 80202-5731
Phone: (303) 831-1099
Fax: (303) 831-1088
mcolin@brunolawyers.com

**ATTORNEY FOR LICENSED FIREARMS DEALERS**

13

Anthony J. Fabian
LAW OFFICES OF ANTHONY J. FABIAN PC
510 Wilcox Street, Suite C
Castle Rock, CO 80104
Phone: (303) 663-9339
Fax: (303) 713-0785
fabianlaw@qwestoffice.net

**ATTORNEY FOR COLORADO STATE SHOOTING ASSOCIATION AND HAMILTON FAMILY ENTERPRISES, INC. D/B/A FAMILY SHOOTING CENTER AT CHERRY CREEK STATE PARK**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2013, I have caused to be presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following e-mail address:

| | |
|---|---|
| David B. Kopel | david@i2i.org |
| Jonathan M. Anderson | jmanderson@hollandhart.com |
| Douglas Abbott | dabbott@hollandhart.com |
| Marc F. Colin | mcolin@bcjlpc.com |
| Anthony J. Fabian | fabianlaw@qwestoffice.net |
| Matthew Groves | matt.grove@state.co.us |
| Kathleen Spalding | kit.spalding@state.co.us |
| Jonathan Fero | jon.fero@state.co.us |
| David Blake | david.blake@state.co.us |
| Daniel D. Domenico | dan.domenico@state.co.us |

s/Peter J. Krumholz
HALE WESTFALL LLP
1445 Market Street, Suite 300
Denver, CO 80202
Phone: (720) 904-6022
Fax: (720) 904-6020
rwestfall@halewestfall.com