IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01300-MSK-MJW

John B. Cooke, Sheriff of Weld County, Colorado, *et al.*

　　Plaintiffs,

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

　　Defendant.

---

**MOTION TO DISMISS PLAINTIFFS' CLAIMS TWO, THREE, AND FOUR, AND TO DISMISS SHERIFFS AS PLAINTIFFS ACTING IN THEIR OFFICIAL CAPACITY.**

---

　　**COMES NOW** Defendant, Governor John Hickenlooper, by and through undersigned counsel, moves to dismiss Plaintiffs' Second, Third, and Fourth Claims for Relief in the Second Amended Complaint for Declaratory and Injunctive Relief for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1). In addition, the Governor moves to dismiss the 55 Colorado Sheriffs[1] as Plaintiffs for lack of standing in their official capacity.

---

[1] John B. Cooke, Terry Maketa, Justin Smith, David A. Weaver, Bruce W. Hartman, Ken Putnam, Dennis Spruell, Tim Jantz, Jerry Martin, Mike Ensmigner, Shayne Heap, Chad Day, Fred D. McKee, Lou Vallario, Fred Hosselkus, Brett L. Powell, James Faull, Larry Kuntz, Brian E. Norton, Duke Schirard, Jim Beicker, Ronald Bruce, Chris S. Johnson, Fred Jobe, Donald Krueger, James Crone, Si Woodruff, Tom Ridnour, Tom Nestor, Stan Hilkey, Forrest Frazee, Rick Dunlap, Ted B. Mink, Dave Stong, Fred Wegner, Bruce Newman, Randy Peck, Dominic Mattivi, Jr., John Minor, Scott Fischer, Peter Gonzalez, Rick Besecker, Charles "Rob" Urbach, Rod Fenske, Grayson Robinson, David D. Cambell, Mike Norris, Amos Medina, Miles

Defendant certifies that, pursuant to D.C. Colo. L. Civ. R. 7.1(A), counsel discussed the grounds for this motion and the relief requested on July 31, 2012. Plaintiffs object to this motion and the relief requested herein.

## INTRODUCTION

In the 2013 session, the Colorado General Assembly adopted a limitation on the capacity of certain magazines (HB 13-1224) and additional background check requirements for firearm purchases (HB 13-1229). Plaintiffs, a coalition of county sheriffs, firearm dealers, gun owners and others, filed suit against the Governor, asking this Court to declare both provisions unconstitutional and to enjoin their enforcement. While most of Plaintiffs' claims raise substantive constitutional challenges to the statutory restrictions, Claims Two, Three, and Four in the Second Amended Complaint rest on vagueness challenges. In addition, while all of the Plaintiffs bring suit as private citizens, the 55 Colorado Sheriffs also assert standing based on their official capacities. As to those two grounds, Defendant moves to dismiss.

## BACKGROUND

The Second Amended Complaint alleges six causes of action: (i) HB 1224 violates the Second and Fourteenth Amendments based on its prohibition of magazines larger than fifteen rounds; (ii) HB 1224 violates the Second and Fourteenth Amendments because its prohibition of magazines "designed to be

---

Clark, David Encinas, Sue Kurtz, James (Jim) Casias, Garret Wiggins, Douglas N. Darr, and Rodney Johnson ("the 55 Colorado Sheriffs").

readily converted" to hold more than fifteen rounds has the effect of banning the possession of a broad class of firearms; (iii) HB 1224 violates the Fourteenth Amendment right to Due Process because its use of the language "designed to be readily convertible" is vague; (iv) HB 1224 violates the Second and Fourteenth Amendments because its use of the term "continuous possession" is vague; (v) HB 1224 and 1229 violate the Americans with Disabilities Act; and (vi) HB 1229 violates the Second and Fourteenth Amendment by restricting firearms sales and temporary transfers between individuals.

On June 12, 2013, Plaintiffs filed a motion requesting a temporary restraining order and preliminary injunction asserting that the following provisions of HB 1224 are unconstitutionally vague: 1) the prohibition on magazines that are "designed to be readily converted" to hold more than fifteen rounds; 2) the grandfather clause of HB 1224; and 3) the ban on "transfers" of large-capacity magazines after July 1, 2013. Pls.' Mtn. for Temporary Restraining Order and For Preliminary Injunction [Doc. 29]. Following a hearing, Plaintiffs' withdrew the motion. Pls.' Unopposed Motion to Withdraw Pls.' Motion for Preliminary Injunction [Doc. 59]. The motion explained that the Governor, through the Attorney General, agreed to "issue additional guidance on the interpretation and application of the two provisions of House Bill 13-1224 that were the subject of Plaintiffs' Preliminary Injunction Motion." *Id.*, at 3. The additional Technical Guidance has previously been filed with the Court, at Docket No. 59-1 (a copy is also attached as Exhibit A).

## ARGUMENT

I.  **The Second, Third, and Fourth Claims in the Second Amended Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1).**

   A.  **Standard of Review**

Article III, section 2 of the Constitution limits the jurisdiction of federal courts to the adjudication of "cases or controversies." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37–38 (1976). By its own terms, the Declaratory Judgment Act also limits its reach to "case[s] of actual controversy." 28 U.S.C. § 2201; *Aetna Life Ins. Co. of Hartford Conn.* v. *Haworth*, 300 U.S. 227, 239–40 (1937) (holding that the Declaratory Judgment Act "manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense."); *Rector v. City & County of Denver*, 348 F.3d 935, 946 (10th Cir. 2003) ("[i]t is well established that the Declaratory Judgment Act is remedial and does not itself confer jurisdiction on federal courts . . . and that plaintiffs must establish an Article III case or controversy as a prerequisite for declaratory relief.") (citations omitted).

"When a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007). In reviewing a factual attack, the court does not "presume the truthfulness of the complaint's factual allegations" and "has wide discretion to allow affidavits, other

4

documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). A plaintiff has the burden to establish standing, and without it, this Court has no jurisdiction to hear the claim. *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006).

### B. Law and Analysis

To establish standing, Plaintiffs must prove that (1) they have suffered an injury-in-fact that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bronson v. Swensen*, 500 F.3d 1099, 1106, 1109 (10th Cir. 2007) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000)). Accordingly, when a plaintiff fails to establish "that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Nat'l Counsel for Improved Health v. Shalala*, 122 F.3d 878, 884 (10th Cir. 1997) (quoting *Babbit v. United Farm Worker's Nat'l Union*, 442 U.S. 289, 298–99 (1979)). Plaintiffs have not established standing.


documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). A plaintiff has the burden to establish standing, and without it, this Court has no jurisdiction to hear the claim. *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006).

### B. Law and Analysis

To establish standing, Plaintiffs must prove that (1) they have suffered an injury-in-fact that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bronson v. Swensen*, 500 F.3d 1099, 1106, 1109 (10th Cir. 2007) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000)). Accordingly, when a plaintiff fails to establish "that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Nat'l Counsel for Improved Health v. Shalala*, 122 F.3d 878, 884 (10th Cir. 1997) (quoting *Babbit v. United Farm Worker's Nat'l Union*, 442 U.S. 289, 298–99 (1979)). Plaintiffs have not established standing.

### 1. Plaintiffs have not proven that they have suffered an injury-in-fact that is actual or imminent.

In Claims Two, Three, and Four of the Second Amended Complaint, Plaintiffs rest their claim for standing on the contention that they face a "credible threat" of prosecution.[2] In so doing, they fail to state a claim because no such threat exists.

An injury-in-fact does not occur by "[t]he mere presence on the statute books of an [allegedly] unconstitutional statute . . . even if [plaintiffs] allege an inhibiting effect on constitutionally protected conduct prohibited by the statute." *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006). "Where a law has yet to be enforced against the plaintiff, the plaintiff is further required to show a 'credible threat' of enforcement." *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1156 (10th Cir. 2006); *see also Dias v. City & County of Denver*, 567 F.3d 1169, 1176 (10th Cir. 2009) (to obtain prospective relief, a plaintiff must show a "credible threat of future prosecution").

In the Plaintiffs' view, HB-1224 is "so vague that a person cannot clearly determine what conduct may result in criminal prosecution." 2nd Am. Compl. [Doc. 62], at ¶ 235. In particular, Plaintiffs' Second and Third claims assert that HB-1224's restriction of magazines that are "designed to be readily convertible" to

---

[2] Although Claims Three and Four expressly assert vagueness, Claim Two does not. Still, as Claim 1 challenges the statute's prohibition of magazines that hold more than 15 rounds, in order to constitute a separate claim, Claim Two appears to assert that the "designed to be readily converted" phrase is vague because it could be applied to magazines that hold 15 rounds or less.

accept more than 15 rounds is vague because"[m]ost magazines 15 rounds or smaller are manufactured with a removable floor plate" that "can be readily converted to hold more than 15 rounds." *Id.*, at ¶ 221. In a similar vein, Plaintiffs' Fourth Claim challenges the "continuous possession" language used in the statute's grandfather clause, arguing that the term is "undefined and vague, and owners of a magazine cannot clearly determine what is required of them to maintain 'continuous possession.'" *Id.*, at ¶ 241. Accordingly, though Plaintiffs also cast their injury-in-fact on their contention that HB-1224 "chills" their exercise of their Second Amendment right, that claim turns on their supposition that the requirements "chill[] individuals' Second Amendment rights by subjecting them to the threat of criminal prosecution." *Id.*, at ¶ 244.

A plaintiff fails to meet the "'credible threat' test" when there are affirmative assurances of non-prosecution from a governmental actor responsible for enforcing the challenged statute. Such assurances prevent a "threat" of prosecution from maturing into a "credible" one. *Bronson*, 500 F.3d at 1109. In *Bronson*, plaintiffs' alleged fear of prosecution was "belied by the policy statement of the Utah Attorney General's Office that it has decided to focus law enforcement efforts" elsewhere. *Id.* Similarly, plaintiffs have been found to lack standing when a county prosecutor issued an affidavit in which he stated it was "doubtful that Utah County would bring" charges against the plaintiff, *D.L.S.*, 374 F.3d at 974, when a district attorney authored a "No File" letter disavowing intent to prosecute under

7

challenged criminal-libel statute, *Mink*, 482 F.3d at 1253-55, when the plaintiff "received assurances from the District Attorney that the flag-abuse statute [would] not be enforced against him," *Wisness*, 433 F.3d at 733, and based on a prosecutor's "determination that [the plaintiff] was not violating the [challenged] posting ordinance," *Faustin*, 268 F.3d at 948.

In each of the foregoing cases, the plaintiff lacked standing because he could not establish a credible fear of prosecution. *See Mink*, 482 F.3d at 1255. In *Mink*, that was so even though the district attorney's "No File" letter "conceivably [would not] bind other district attorneys." *Id.* On the contrary, "the 'possibility' of future enforcement need not be 'reduced to zero' to defeat standing . . . [because] it is 'not necessary for defendants [] to refute and eliminate all possible risk that the statute might be enforced' to demonstrate a lack of a case or controversy." *Id.* (quoting *Wisness*, 433 F.3d at 733). Accordingly, even an assertion that a prosecutor has "threatened to prosecute them generally is not enough to confer standing." *Phelps v. Hamilton*, 122 F.3d 1309, 1327 (10th Cir. 1997).

The same considerations control here. The Governor and the Attorney General have fully addressed the concerns raised by Plaintiffs in their second, third, and fourth claims for relief *See Mink*, 482 F.3d at 1255 (explaining "[b]y jumping the gun and filing a complaint for prospective relief, a plaintiff cannot retain standing where the [defendant] immediately concludes" the statute does not apply to the challenged conduct). In particular, as part of the Plaintiffs' decision to

withdraw their request for a preliminary injunction, the Governor, through the Attorney General, "agreed to issue additional guidance on the interpretation and application of the two provisions of House Bill 13-1224." Doc. 59, at 3. The additional Technical Guidance directly addressed the two provisions of HB 13-1224 challenged in Plaintiff's Second, Third, and Fourth Claims. The additional Technical Guidance acknowledged that "[m]agazines with a capacity of 15 or fewer rounds are not large capacity magazines as defined in HB 13-1224 whether or not they have removable base plates." [Doc. 59-1]. To "convert them to higher capacity, one must purchase additional equipment or permanently alter their operation mechanically." *Id.* In addition, the phrase "continuous possession" in the grandfather clause of the statute "does not require large-capacity magazine owners to maintain literally continuous possession of the magazine." *Id.* Instead, affording the phrase "continuous possession" its "reasonable, everyday interpretation," possession of a large capacity magazine is "only lost by a voluntary relinquishment of dominion and control." *Id.*

Nothing in Plaintiffs' Second, Third, and Fourth Claims suggest an ambiguity or concern not covered by the Technical Guidance. *See Mink*, 482 F.3d at 1255 ("The government should be encouraged, not dissuaded, from assuring citizens that it will not pursue prosecutions . . . ."). Plaintiffs have never asserted that they have been informed that they face a threat of prosecution or criminal penalties. Plaintiffs have only asserted that the Governor has "publicly confirmed that HB

9

1224 bans all magazines with removable floor plates." Doc. 62, at ¶ 9. But that assertion was not only inaccurate at the outset of this case, but also entirely ignores the additional Technical Guidance that was released eight days *before* the filing of their Second Amended Complaint. *See Mink*, 482 F.3d at 1255 (finding when plaintiff filed amended complaint after district attorney disclosed his intent not to prosecute, any threat against plaintiff "at that time was 'hypothetical,' not 'actual and imminent.'").

In addition, Plaintiffs have not established an injury-in-fact because they have not shown that the Governor can or would be likely to enforce the challenged provisions of the statute against them. *See Bronson*, 500 F.3d at 1109 (finding no injury-in-fact when plaintiffs failed to demonstrate that the Clerk for Salt Lake County had the power or was likely to enforce the criminal law against them).

Even if Plaintiffs had asserted that they faced a threat of prosecution, any such threat could not be credible. In Colorado, an individual is relieved from criminal liability (via the availability of an affirmative defense) for prohibited conduct if the person engaged in that conduct is permitted by "[a]n official written interpretation of the statute or law relating to the offense, made or issued by a public servant, agency, or body legally charged or empowered with the responsibility of administering, enforcing, or interpreting a statute, ordinance, regulation, order, or law." Colo. Rev. Stat. § 18-1-504(2)(c).

Plaintiffs have not established an injury-in-fact and Claims Two, Three, and Four of the Amended Complaint should be dismissed.

### 2. Plaintiffs cannot show that the relief requested in Claims Two, Three, and Four against the Governor would redress the alleged injury.

Even if Claims Two, Three, and Four could be read to establish injury, that still would not be enough to establish standing. The Article III jurisdictional requirement of a "case in controversy" limits standing to cases where the plaintiff's alleged injury is fairly traceable to the challenged action of the defendant, and not the result of the action of some third party not before the court. *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005).

Besides showing a cognizable injury that is traceable to the defendant, Article III also requires that the plaintiff show that the relief requested would redress a discrete alleged injury. *Id.* Accordingly, in an action seeking injunctive or declaratory relief against a government agency, the plaintiff's burden of showing redressability cannot be met when it seeks to remedy what is beyond the authority of the defendant to grant. *Bronson*, 500 F.3d at 1111–12. ("The absence of a nexus between Swensen's enforcement powers and the challenged criminal provisions renders ineffectual plaintiffs' requested prospective relief.").

Here, Plaintiffs never assert that local law enforcement authorities in fact will not follow the Governor's additional Technical Guidance. Plaintiffs only assert that such guidance "is not legally binding on all state and local law enforcement

11

officers and prosecutors throughout Colorado." Doc. 62, at ¶ 210. Accordingly, the Second Amended Complaint fatally fails to allege any redressable injury-in-fact. *See, e.g., Gandy*, 416 F.3d at 1158 (a "plaintiff must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury.").

Even if this Court entertained the possibility that other unnamed entities may attempt to apply the law based on an interpretation different than what is provided in the original or additional Technical Guidance, this case would not redress that injury as a matter of law. Plaintiffs have chosen not to name local law enforcement authorities in their case. They chose only to sue the Governor.

In Colorado, district attorneys are independent from other governmental officers under Colorado law. In Colorado, when enforcing laws, the district attorney "represents the people of the state of Colorado, and nothing within this section shall be construed to create an attorney-client relationship between the district attorney and any party, other than the people of the state of Colorado . . ." Colo. Rev. Stat. § 20-1-102(3); *People v. Spykstra*, 234 P.3d 662, 666 (Colo. 2010) (recognizing District Attorney is "the attorney for the People in a criminal proceeding"). The Second Amended Complaint does not assert, nor could it establish, that district attorneys in Colorado are bound by the Governor's authority. Rather, as the district attorneys are independent from the Governor, they are not "officers, agents, servants, employees, [nor] attorneys" for the Governor, and a permanent injunction or declaratory judgment against the Governor would not extend to the district

attorneys. *Cf. Am. Civil Liberties Union v. Johnson*, 194 F.3d 1149 (10th Cir. 1999) (holding under Fed. R. Civ. P. 65 an injunction against Governor of New Mexico and Attorney General could extend to district attorneys because under New Mexico law, district attorneys' only statutory duty is to "prosecute criminal cases on behalf of the State") (quoting *State v. Session*, 91 N.M. 381, 574 P.2d 600, 601 (N.M. Ct. App. 1978)).

As such, Plaintiffs have failed to show that this Court could fashion relief sufficient to redress its alleged injuries asserted in Claims Two, Three, and Four. *See Bronson*, 500 F.3d at 1110–11; *cf. Hope Clinic v. Ryan*, 249 F.3d 603, 605 (7th Cir. 2001) (per curiam) (holding that "plaintiffs lack standing to contest the statutes authorizing private rights of action" in part "because any potential dispute plaintiffs may have with future private plaintiffs could not be redressed by an injunction running only against public prosecutors"). The claims should be dismissed. *See Warth v. Seldin*, 422 U.S. 490, 501–02 (1975) ("If . . . the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.").

## II. The Sheriffs Lack Standing In Their Official Capacity to Sue Their Parent State.

### A. Standard of Review

The essence of standing is whether the plaintiff is entitled to have the court decide the merits of the dispute. *See United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012). When the opposing party challenges the jurisdiction of the court as

a matter of law based on the face of the complaint pursuant to Fed. R. Civ. P. 12(b)(1), the court must accept all of the facts pleaded in a complaint as true and determine whether those facts state a claim over which the court has jurisdiction. *E.g.*, *McDonald v. Kinder Morgan, Inc.*, 287 F.3d 997 (10th Cir. 2000). However, a plaintiff bears the burden of establishing standing. *Opala*, 454 F.3d at 1157.

### B. Law and Analysis

"The focus of any inquiry into standing 'is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Hous. Auth. of Kaw Tribe v. Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991) (quoting *Warth*, 422 U.S. at 498). Under the doctrine of political subdivision standing, federal courts lack jurisdiction over certain controversies between political subdivisions and their parent states. *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 628 (10th Cir. 1998). As this Circuit recently explained, there is not "a single case in which the Supreme Court or a court of appeals has allowed a political subdivision to sue its parent state under a substantive provision of the Constitution." *City of Hugo v. Nichols*, 656 F.3d 1251, 1253–54 (10th Cir. 2011). Instead, courts have allowed such suits only when Congress has enacted statutory law specifically providing rights to political subdivisions. *Id.* at 1254.

Sheriffs are Colorado "county officers." Colo. Const. Art. XXIV, Sec. 8. Counties are political subdivisions of the state and have only such powers as are granted to them by the Colorado Constitution or delegated to them by the general

assembly. *Beaver Meadows v. Bd. of County Comm'rs*, 709 P.2d 928, 932 (Colo. 1985); *Pennobscot, Inc. v. Bd. of County Comm'rs*, 642 P.2d 915, 918 (Colo. 1982); *Colo. State Bd. of Social Services v. Billings*, 175 Colo. 380, 384, 487 P.2d 1110, 1112 (1971). The 55 Sheriffs' alleged injury depends on the Fourteenth Amendment. Accordingly, they lack standing to bring suit in their official capacity and therefore must be dismissed.[3] *See, e.g., City of New York v. Richardson*, 473 F.2d 923, 929 (2d Cir. 1973) (ruling that political subdivisions of state may not challenge the validity of a state statute under the Fourteen Amendment); *Amato v. Wilentz*, 952 F.2d 742 (3d Cir. 1991) (finding that county did not have standing to bring action against Chief Justice of the New Jersey State Supreme Court); *Delta Special Sch. Dist. v. State Bd. of Educ.*, 745 F.2d 532, 533 (8th Cir. 1984) ("A political subdivision of the state cannot invoke the protection of the [F]ourteenth [A]mendment against the state."); *Palomor Pornerado Health Syst. v. Belshe*, 180 F.3d 1104, 1107–08 (9th Cir. 1999) (holding that a political subdivision of the state lacks standing to bring a cause of action against the state in federal court); *Moore v. Atchison, T., & S.F.R. Co.*, 699 F.2d 507, 511–12 (10th Cir. 1983) (holding a city had no standing to challenge a state statute on Fourteenth Amendment grounds); *United States v. Alabama*, 791 F.2d 1450, 1455–56 (11th Cir. 1986) ("ASU [a state school] thus has no standing to sue or to seek to enjoin the Alabama state board of education under Section 1983 and the Fourteenth Amendment.").

---

[3] Defendants do not contend that the sheriffs lack standing in their individual capacities.

## CONCLUSION

For the reasons and authorities stated above, Defendant asks this Court to dismiss Claims Two, Three, and Four in Plaintiffs' Second Amended Complaint. Defendant also asks this Court to dismiss the 55 Sheriffs as Plaintiffs in their official capacity.

Respectfully submitted,

JOHN W. SUTHERS
Attorney General

*s/ John T. Lee*
**Daniel D. Domenico***
Solicitor General
**David C. Blake***
Deputy Attorney General
**Jonathan P. Fero***
Assistant Solicitor General
**Kathleen Spalding***
Senior Assistant Attorney General
**Matthew D. Grove***
Assistant Attorney General
*Counsel of Record
**John T. Lee***
Assistant Attorney General
*Counsel of Record

Attorneys for Governor John W. Hickenlooper
1300 Broadway, 10th floor
Denver, Colorado  80203
Telephone:  720-508-6000
*Counsel of Record

## **CERTIFICATE OF SERVICE**

I hereby certify that on __August 1__, 2013 I served a true and complete copy of the foregoing MOTION TO DISMISS upon all counsel of record listed below via the CM/ECF system for the United States District Court for the District of Colorado:

David B. Kopel                              david@i2i.org

Jonathan M. Anderson              jmanderson@hollandhart.com

Richard A. Westfall                    rwestfall@halewestfall.com
Peter J. Krumholz                      pkrumholz@halewestfall.com

Marc F. Colin                              mcolin@bcjlpc.com

Anthony J. Fabian                      fabianlaw@qwestoffice.net


*s/ Debbie Bendell*

17