IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-CV-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, Colorado, *et al.*

    Plaintiffs,

vs.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

    Defendant.

## RESPONSE OF HINSDALE COUNTY SHERIFF RON BRUCE TO DEFENDANT'S INTERROGATORIES

    Sheriff Bruce, by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 33(b), hereby responds to Defendant's Interrogatories as follows:

### GENERAL OBJECTIONS

    Where no objection is interposed, the responses below reflect all responsive information and documents identified by Sheriff Bruce before the date of the responses, pursuant to a reasonable and diligent search and investigation conducted in connection with this discovery. To the extent the discovery purports to require more, Sheriff objects on the grounds that (a) the discovery seeks to compel him to conduct a search beyond the scope of permissible discovery contemplated by the Federal Rules of Civil Procedure, and (b) compliance with the discovery would be oppressive, and would impose an undue burden or expense.

    Sheriff Bruce's discovery responses are also made subject to the ongoing discovery and trial preparation in this case. These discovery responses are made based on the best information, including facts available as of the date of such responses. Sheriff Bruce reserves the right to amend, supplement, or change these discovery responses as permitted or required under the Federal Rules of Civil Procedure based on additional information obtained through the discovery and trial preparation process.

1

Sheriff Bruce makes each individual response subject to and without waiving the conditions and objections that are stated in the sections of these responses entitled "General Objections" and "Objections to Instructions and Definitions" and that are specifically referred to in that particular individual response.

Sheriff Bruce makes each individual response without adopting in any way (unless otherwise stated) the terms and phrases that Defendant purports to define in his discovery. When Sheriff Bruce uses words or phrases that Defendant has purported to define, those words and phrases should be given either (a) the meaning set out by Sheriff Bruce in his responses, or in its objections to the specific definitions, or (b) the ordinary meaning of such words or phrases.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Defendant has purported to define several terms used in his discovery. In his responses, Sheriff Bruce gives ordinary words and phrases their ordinary meaning. By making this written response, Sheriff Bruce does not (a) adopt any purported definition, (b) waive or limit its objections to Defendant's purported definitions, or (c) concede the applicability of any such definition to any term or phrase that might be contained in written responses. Wherever these words are used in Defendant's interrogatories, these objections and these clarifications are incorporated, unless otherwise specified in the request.

Defendant purported to define "you" and "your" to include "counsel for Plaintiffs." Sheriff Bruce objects to this definition to the extent that it purports to require the disclosure of information, communications, or documents protected from disclosure by the attorney-client privilege, work product immunity, or any other privilege or immunity.

**RESPONSES**

1. With respect to each and every home invasion or "robbery in the home" to which your department has responded since January 1, 2004, please:

   a. describe the circumstances surrounding the home invasion/robbery in the home, including: the date and location (by city and county), the number of perpetrators involved, whether or not the perpetrator(s) carried firearms, and whether or not the perpetrator(s), victim(s), or others fired any shots;

**Response:** The Hinsdale County Sheriff's Office has not responded to any home invasions or robberies in the home since January 1, 2004.

    b. if a firearm was fired or otherwise used or displayed by any person, identify who used, displayed, or discharged the firearm, the manner in which they did so, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:**  Sheriff Bruce objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous.  Subject to and without waiving this objection: Not applicable.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**  Not applicable.

2. With respect to each and every occasion when you, your predecessor(s) in office, or a sheriff's deputy has discharged a firearm in the course of duty since January 1, 2004 (not including firearm practice or training), please:

a. describe the circumstances surrounding the firearm discharge, including the date, location (by city and county), the reason for the firearm discharge, and whether you, your predecessor(s), or deputy were fired upon;

**Response:**  Sheriff Bruce objects to this interrogatory on the ground that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving this objection:

Our deputies have no record of any officer involved shootings outside of those that are related to animals. Our deputies have discharged various firearms, while on duty, for the purposes of hazing wildlife, putting down injured wildlife or domestic animals. This has happened countless times each year and no specific documentation has been kept regarding those circumstances.

b. if a firearm was fired by any person involved in the event, identify who fired the firearm, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:**  Sheriff Bruce objects to this interrogatory on the ground that the word "event" is vague.  Subject to and without waiving this objection: Not applicable.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**  Not applicable.

3. With respect to the allegations of paragraph 102 of the First Amended Complaint (doc. #22), describe every instance since January 1, 1973 in which you or your predecessors in office requested the armed assistance of able-bodied adults ("posse comitatus"). In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms in connection with their participation;

**Response:**  Since I have taken office, which was in January of 2007, there has been no use of a posse comitatus or able-bodied adults.

However, in November of 1994, the Hinsdale County Sheriff requested the assistance of a non-certified deputy who was a retired Air Force Lieutenant Colonel. During the dangerous traffic stop, the sheriff was shot and killed. The non-certified deputy fired 17 rounds from his Beretta Model 92 9mm pistol at the suspects when they fled. One of the bullets struck the tire of the vehicle forcing the suspects to retreat on foot. The suspects fled into the mountains and were discovered dead around 30 days later. The male had shot the female and himself with the same .44 magnum that was used to kill the sheriff.

During the manhunt for these two suspects, over 100 local citizens were sworn in to assist the approximately 200 law enforcement officers in conducting the search. Several hundred buildings and the surrounding land mass was searched without a single shot being fired. There is no information on the firearms and magazines since they ran the gamut of nearly anything available at the time.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a

magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:** An unknown number of bullets were fired at the Sheriff from a .44 magnum. The non-certified deputy that had been assisting the sheriff fired 17 rounds from his Beretta Model 92 9mm handgun. The sheriff was shot at the scene. The suspect driver then shot the female that he was with and shot himself.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** The sheriff was shot and killed by the suspect driver. The female suspect was also shot and killed by the suspect driver. Later, the suspect driver killed himself with a self-inflicted gunshot.

4. With respect to the allegations of paragraph 103 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 when you or your predecessors appointed deputies who were not certified peace officers. In your response, state in detail:

a. the date and duration of each individual's appointment, the circumstances surrounding the need for the "non-certified" deputy, whether the non-certified deputy was required to carry a firearm, whether the "non-certified" deputy carried a firearm he/she supplied or a firearm supplied by the sheriff's office, and whether any non-certified deputy ever discharged a firearm;

**Response:** I cannot state specific dates or numbers regarding non-certified deputies. However, Hinsdale County Sheriff's Office does utilize a total of eight non-certified deputies. Six of these individuals have been utilized at various times for law enforcement details and were bestowed with temporary powers of arrest have been bestowed. Those activities have included roadblocks, security patrols around hunting season and around private lands, backing up sworn officers, search and rescue operations and back county ranger patrols.

During my tenure as sheriff, none of those parties has had to discharge their authorized firearms in the line of duty. However, they have, at various times, been issued patrol carbines with either a 30 or 60 round magazine. In some cases, they have provided their own carbine with the same capacity magazines.

Hinsdale County is approximately 1,100 square miles of some of the most rugged terrain in the lower 48 states.  The United States Geological Survey declared out county to be the most remote in those 48 states, about eight years ago.  I have four full-time sworn officers including myself, one sworn part-time deputy, one sworn

reserve deputy and eight non-sworn deputies. The reserve and non-sworn are all volunteers. As stated before we all train and shoot together. The volunteers get the same in-house training that my sworn staff get. Our nearest expected back-up agencies are at least one hour away. We do not have the luxury of waiting for help; my non-sworn staff go a long way to plug that resource gap.

We issue and train with standard capacity magazines for our carbines and select-fire firearms, up to and including 60 round magazines. These, on occasion, are issued to my non-sworn staff in times of need. Most of them also personally own such firearms, including select-fire firearms (BATFE licensed). 96% of our county is public land (USFS – Uncompahgre, Gunnison, Rio Grande and San Juan and BLM) and we receive a very large number of the public coming here to recreate and about 65% of our home owners are 2nd home owners, largely from Texas and Oklahoma. The demands on our small Sheriff's Office are great and we must be prepared to handle almost anything that lands in our laps.

b. the circumstances surrounding the discharge of the non-certified deputy's firearm, including: the date and location of the event, whether the non-certified deputy was fired upon, the number of rounds fired by the non-certified deputy, the number of rounds fired by others involved in the event, the capacities of magazines from which bullets were fired, and whether any individual was shot;

**Response:** Not applicable.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Not applicable.

5. Describe every occasion since January 1, 2004 when you, your predecessor sheriff(s), a sheriff's deputy, or a family member living with these individuals has discharged or otherwise used or displayed a firearm in defense of self, home, or other family members. In your response, describe the circumstances surrounding each event, including: the events leading to the use, display, or discharge of the firearm, the number of rounds fired by you or others, and the capacity of magazines used by firearms that were discharged. If any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

6

**Response:**  Sheriff Bruce objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous.  Subject to and without waiving this objection:

I am not aware of any personnel, sworn or otherwise, having had to use a firearm in self-defense of home, property or other third party individuals. However, I can state that all of these individuals are encouraged to respond to a knock at their door with a firearm readily available. All these individuals are also strongly encouraged to carry a firearm at all times that they are legally able to do so. All of my non-sworn staff have concealed carry permits. All of the non-sworn deputies also qualify and tactically train with our sworn staff.

6. With respect to the allegations of paragraph 105 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 in which you or your predecessors in office requested armed citizen assistance for emergencies and natural disasters. In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, and whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms;

**Response:**  Please see the response to question three for details to this question.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:**  Please see the response to question three for details to this question.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**  Please see the response to question three for the details to this question.

7

**AS TO OBJECTIONS:**

s/David B. Kopel
INDEPENDENCE INSTITUTE
727 E. 16th Avenue
Denver, CO 80203
Phone: (303) 279-6536
Fax: (303) 279-4176
david@i2i.org

**ATTORNEY FOR SHERIFFS AND DAVID STRUMILLO**

**AS TO RESPONSES:**

Pursuant to 28 U.S.C. § 1746, I, Ron Bruce, do hereby verify under penalty of perjury that the foregoing responses to Defendant's Interrogatories are true and correct to the best of my information and belief.

Dated this 13th day of August, 2013.

_____
s/Sheriff Ron Bruce