**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-CV-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, Colorado, *et al.*

    Plaintiffs,

vs.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

    Defendant.

# RESPONSE OF RIO BLANCO COUNTY SHERIFF SI WOODRUFF TO DEFENDANT'S INTERROGATORIES

    Sheriff Woodruff, by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 33(b), hereby responds to Defendant's Interrogatories as follows:

### GENERAL OBJECTIONS

    Where no objection is interposed, the responses below reflect all responsive information and documents identified by Sheriff Woodruff before the date of the responses, pursuant to a reasonable and diligent search and investigation conducted in connection with this discovery. To the extent the discovery purports to require more, Sheriff objects on the grounds that (a) the discovery seeks to compel him to conduct a search beyond the scope of permissible discovery contemplated by the Federal Rules of Civil Procedure, and (b) compliance with the discovery would be oppressive, and would impose an undue burden or expense.

    Sheriff Woodruff's discovery responses are also made subject to the ongoing discovery and trial preparation in this case. These discovery responses are made based on the best information, including facts available as of the date of such responses. Sheriff Woodruff reserves the right to amend, supplement, or change these discovery responses as permitted or required under the Federal Rules of Civil Procedure based on additional information obtained through the discovery and trial preparation process.

    Sheriff Woodruff makes each individual response subject to and without waiving the conditions and objections that are stated in the sections of these responses entitled "General Objections" and "Objections to Instructions and

1

Definitions" and that are specifically referred to in that particular individual response.

Sheriff Woodruff makes each individual response without adopting in any way (unless otherwise stated) the terms and phrases that Defendant purports to define in his discovery. When Sheriff Woodruff uses words or phrases that Defendant has purported to define, those words and phrases should be given either (a) the meaning set out by Sheriff Woodruff in his responses, or in its objections to the specific definitions, or (b) the ordinary meaning of such words or phrases.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Defendant has purported to define several terms used in his discovery. In his responses, Sheriff Woodruff gives ordinary words and phrases their ordinary meaning. By making this written response, Sheriff Woodruff does not (a) adopt any purported definition, (b) waive or limit its objections to Defendant's purported definitions, or (c) concede the applicability of any such definition to any term or phrase that might be contained in written responses. Wherever these words are used in Defendant's interrogatories, these objections and these clarifications are incorporated, unless otherwise specified in the request.

Defendant purported to define "you" and "your" to include "counsel for Plaintiffs." Sheriff Woodruff objects to this definition to the extent that it purports to require the disclosure of information, communications, or documents protected from disclosure by the attorney-client privilege, work product immunity, or any other privilege or immunity.

**RESPONSES**

1. With respect to each and every home invasion or "robbery in the home" to which your department has responded since January 1, 2004, please:

    a. describe the circumstances surrounding the home invasion/robbery in the home, including: the date and location (by city and county), the number of perpetrators involved, whether or not the perpetrator(s) carried firearms, and whether or not the perpetrator(s), victim(s), or others fired any shots;

**Response:**

August 8, 2012 - 3 deputies with the Rio Blanco County Sheriff's Office were asked to assist the Rangely Police Department in the arrests of two individuals involved with an armed home invasion and assault.

Earlier that evening two men, Kellen Kuck and Derek Muisner, forcibly entered into an apartment located at 125 Darius Ave. in Rangely. Upon entering the

2

residence the two males physically assaulted a single male occupant by striking him on the back of the head with a large caliber revolver. Afterwards, the two males forced the barrel of the revolver into the mouth of the victim and threatened his life. They then asked for the whereabouts of two other males that lived in the apartment. After a short time the two males exited the residence and while doing so fired a single round into the floor of the residence.

A sergeant from the Rangely Police Department and a deputy from the Rio Blanco Sheriff's Office assisted in the arrest and search of the suspect's residence. Another deputy assisted with the transport of Kuck. Both subjects were taken out of the residence at gunpoint.

> b. if a firearm was fired or otherwise used or displayed by any person, identify who used, displayed, or discharged the firearm, the manner in which they did so, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:** Sheriff Woodruff objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous. Subject to and without waiving this objection:

The deputy and the officer both displayed their guns while arresting and removing the suspects from the residence. The only shot fired was fired by one of the suspects as indicated above.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Not applicable. No one was shot or killed.

2. With respect to each and every occasion when you, your predecessor(s) in office, or a sheriff's deputy has discharged a firearm in the course of duty since January 1, 2004 (not including firearm practice or training), please:

a. describe the circumstances surrounding the firearm discharge, including the date, location (by city and county), the reason for the firearm discharge, and whether you, your predecessor(s), or deputy were fired upon;

3

**Response:** Sheriff Woodruff objects to this interrogatory on the ground that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection:

December 10, 2004 - A woman called to report that Everett Link had "gone ballistic." He had been drinking and had fired two shots at his girlfriend. He had also choked a second person, and threatened to kill her with a gun. Everyone had escaped the residence, leaving Link still there.

The second person reported to the Sheriff's Office that Link possessed four shotguns, one 7mm rifle, two 25-'06 rifles, one .223 rifle, and one 9mm handgun. She also reported that Link had said that all of his weapons were loaded and ready to go.

Nine law enforcement officers went to the house. Details of the incident are in a Dec. 28, 2005, District Attorney report, which is submitted in response to the request for production of documents.

Link attempted to escape in his pickup truck and a police pursuit ensued. The incident took place near the intersection of Colorado Highway 64 and Rio Blanco County Road 5, within the County of Rio Blanco.

Link exited the truck and began bringing his Remington SP-10 magnum shotgun (one shell in the chamber and two in the magazine) towards a patrol car.

The one and only deputy to shoot the Link shot 15 times, emptying his handgun magazine and then reloading, although he did not fire from the second magazine. The deputy shot in self-defense and to protect other deputies and police officers.

b. if a firearm was fired by any person involved in the event, identify who fired the firearm, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:** Sheriff Woodruff objects to this interrogatory on the ground that the word "event" is vague. Subject to and without waiving this objection:

The firearm used by the deputy was a Glock .40 caliber with a magazine that held 15 rounds. In this instance, 15 shots were fired and the magazine was emptied. The officer then loaded another 15 round magazine.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

4

**Response:** The individual shot was Everett Alan Link and he was killed during the shooting. According to a postmortem examination, 10 rounds hit Link. Several of these rounds had apparently ricocheted off another object, or had struck another object before hitting Link. Of the 10 hits, six were "not immediately fatal or incapacitating"; three were "not immediately fatal"; and one was "rapidly fatal."

3. With respect to the allegations of paragraph 102 of the First Amended Complaint (doc. #22), describe every instance since January 1, 1973 in which you or your predecessors in office requested the armed assistance of able-bodied adults ("posse comitatus"). In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms in connection with their participation;

**Response:**

Two individuals have been deputized to assist us in catching a suspect for running from law enforcement after a traffic stop. Both men were deputized and armed. The date was September 8, 2003. The deputy attempted to stop a car for speeding. The two occupants parked the car and ran away. The car was stolen from a car lot in Grand junction. I deputized them to work with me the same night so the deputies could get some rest. The person with me I believe carried a Glock .40; he has moved from Meeker and I have called his cell phone to attempt to obtain further information. We had hired a plane to search and we were out of personnel. The intent was to start again in the morning.

These men were selected because they were known by me and other staff members as very experienced pistol and rifle shooters. I believe that the men had Glock .40 calibers, AR-15's, shotguns, and perhaps other arms. They patrolled the highway with us, in the vehicle, and operated the Thermal vision. The second suspect was located the next morning and arrested w/o any problems, tired, cold and hungry. The first subject was found the first day.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a

magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:** No shots were fired by these men and no individuals were injured.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Not applicable.

4. With respect to the allegations of paragraph 103 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 when you or your predecessors appointed deputies who were not certified peace officers. In your response, state in detail:

a. the date and duration of each individual's appointment, the circumstances surrounding the need for the "non-certified" deputy, whether the non-certified deputy was required to carry a firearm, whether the "non-certified" deputy carried a firearm he/she supplied or a firearm supplied by the sheriff's office, and whether any non-certified deputy ever discharged a firearm;

**Response:**

Currently we have 15 P.O.S.T. Certified personnel. We are authorized for 17, we are down a Patrol Sergeant and a Patrol Deputy.

We currently have only one P.O.S.T. Certified person in the jail. We currently have only two people who are authorized to carry weapons on-duty in the jail. At one point we had up to 60% of the jail staff was authorized (Non-Certified) to carry on-duty in the jail. Currently we have nine people in the jail with one open/vacant position. 1 is certified and 1 of the non-certified is authorized to carry on-duty.

All Non-Certified Deputies who want to carry On-Duty are required to go through a training program which is part classroom and part actual time on the range. Then they are required to qualify with the Certified Deputies each range day. Once they get qualified through the training program, they are required to go through the same quarterly training and qualification course that all Certified Deputies are required to go through.

We do not require Deputies (Jail) to go through the program and carry, it is their choice.

b. the circumstances surrounding the discharge of the non-certified deputy's firearm, including: the date and location of the event, whether the non-certified deputy was fired upon, the number of rounds fired by the non-certified deputy, the number of rounds fired by others involved in the event, the capacities of magazines from which bullets were fired, and whether any individual was shot;

**Response:**

We have never had any accidental discharges in either the Jail or Patrol and we have never had a Jail deputy discharge a firearm in the course of their duties.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**  Not applicable.

5. Describe every occasion since January 1, 2004 when you, your predecessor sheriff(s), a sheriff's deputy, or a family member living with these individuals has discharged or otherwise used or displayed a firearm in defense of self, home, or other family members. In your response, describe the circumstances surrounding each event, including: the events leading to the use, display, or discharge of the firearm, the number of rounds fired by you or others, and the capacity of magazines used by firearms that were discharged. If any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**  Sheriff Woodruff objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous.  Subject to and without waiving this objection: I have no information that any predecessor, sheriff, deputy or family member has fired or displayed a gun in defense of self, home or family in the given time period.

6. With respect to the allegations of paragraph 105 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 in which you or your predecessors in office requested armed citizen assistance for emergencies and natural disasters. In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, and whether such individuals were law enforcement officers or were

deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms;

**Response:** No armed citizen request has been made during this time period.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:** Not applicable.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Not applicable.

**AS TO OBJECTIONS:**

s/David B. Kopel
INDEPENDENCE INSTITUTE
727 E. 16th Avenue
Denver, CO 80203
Phone: (303) 279-6536
Fax: (303) 279-4176
david@i2i.org

**ATTORNEY FOR SHERIFFS AND DAVID STRUMILLO**

**AS TO RESPONSES:**

　　　　Pursuant to 28 U.S.C. § 1746, I, Si Woodruff, do hereby verify under penalty of perjury that the foregoing responses to Defendant's Interrogatories are true and correct to the best of my information and belief.

　　　　Dated this 12th day of August, 2013.

_____
s/Sheriff Si Woodruff