**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-CV-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, Colorado, *et al.*

　　Plaintiffs,

vs.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

　　Defendant.

## RESPONSE OF MORGAN COUNTY COUNTY SHERIFF JIM CRONE TO DEFENDANT'S INTERROGATORIES

　　Sheriff Crone, by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 33(b), hereby responds to Defendant's Interrogatories as follows:

### GENERAL OBJECTIONS

　　Where no objection is interposed, the responses below reflect all responsive information and documents identified by Sheriff Crone before the date of the responses, pursuant to a reasonable and diligent search and investigation conducted in connection with this discovery. To the extent the discovery purports to require more, Sheriff objects on the grounds that (a) the discovery seeks to compel him to conduct a search beyond the scope of permissible discovery contemplated by the Federal Rules of Civil Procedure, and (b) compliance with the discovery would be oppressive, and would impose an undue burden or expense.

　　Sheriff Crone's discovery responses are also made subject to the ongoing discovery and trial preparation in this case. These discovery responses are made based on the best information, including facts available as of the date of such responses. Sheriff Crone reserves the right to amend, supplement, or change these discovery responses as permitted or required under the Federal Rules of Civil Procedure based on additional information obtained through the discovery and trial preparation process.

　　Sheriff Crone makes each individual response subject to and without waiving the conditions and objections that are stated in the sections of these responses entitled "General Objections" and "Objections to Instructions and Definitions" and that are specifically referred to in that particular individual response.

1

Sheriff Crone makes each individual response without adopting in any way (unless otherwise stated) the terms and phrases that Defendant purports to define in his discovery. When Sheriff Crone uses words or phrases that Defendant has purported to define, those words and phrases should be given either (a) the meaning set out by Sheriff Crone in his responses, or in its objections to the specific definitions, or (b) the ordinary meaning of such words or phrases.

## **OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

Defendant has purported to define several terms used in his discovery. In his responses, Sheriff Crone gives ordinary words and phrases their ordinary meaning. By making this written response, Sheriff Crone does not (a) adopt any purported definition, (b) waive or limit its objections to Defendant's purported definitions, or (c) concede the applicability of any such definition to any term or phrase that might be contained in written responses. Wherever these words are used in Defendant's interrogatories, these objections and these clarifications are incorporated, unless otherwise specified in the request.

Defendant purported to define "you" and "your" to include "counsel for Plaintiffs." Sheriff Crone objects to this definition to the extent that it purports to require the disclosure of information, communications, or documents protected from disclosure by the attorney-client privilege, work product immunity, or any other privilege or immunity.

**RESPONSES**

1. With respect to each and every home invasion or "robbery in the home" to which your department has responded since January 1, 2004, please:

   a. describe the circumstances surrounding the home invasion/robbery in the home, including: the date and location (by city and county), the number of perpetrators involved, whether or not the perpetrator(s) carried firearms, and whether or not the perpetrator(s), victim(s), or others fired any shots;

**Response:**

March 1, 2009, Hwy 34, Morgan County – Two unknown male suspects forced their way into a private residence and assaulted the victim. It is possible that one of the suspects struck the victim with an unknown make and model handgun. No shots were fired and no other weapons were used or displayed.

March 7, 2009, Rd 23, Morgan County – An ex-husband broke into a home with the intent of killing his ex-wife. After being scared off by the home alarm system, he

fled, firing two shots from a 9mm handgun with an 8 round magazine. No one was hit. The suspect was seen in his garage at a later time by his neighbor. The suspect then took his girlfriend hostage inside his home. The suspect subsequently surrendered and no shots were fired.

March 10, 2009, Hwy 34, Morgan County – Two unknown male suspects entered the home of the elderly homeowner. Upon entering, the suspects assaulted the victim by punching and kicking him. The suspects then stole the victim's wallet. No firearms were displayed or discharged.

April 28, 2009, Rd 19, Morgan County – Two male suspects broke into a home and assaulted the homeowner. They then ran to another residence, broke in and assaulted the residents. Before fleeing, the suspects stole bottled water and soda. One suspect was armed with a broom handle, but no firearms were displayed or discharged.

November 15, 2009, Rd 17.6, Morgan County – One male and one female suspect knocked on an elderly man's door. When the victim answered, the suspects assaulted him with a handgun and stole his wallet and money. No shots were fired and no other firearms were used or displayed.

June 17, 2011, Hwy34, Morgan County – Two male and one female suspect unlawfully entered a private residence armed with baseball bats. Upon entering, the suspects threatened the residents and stole a number of their belongings. They then fled the scene. No firearms were displayed or discharged.

> b. if a firearm was fired or otherwise used or displayed by any person, identify who used, displayed, or discharged the firearm, the manner in which they did so, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:**  Sheriff Crone objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous.  Subject to and without waiving this objection:

March 1, 2009 – The suspect displayed and potentially struck the victim with an unknown make and model handgun. No shots were fired.

March 7, 2009 – The suspect fired two shots from an unknown make and model 9mm handgun with an 8 round magazine. No one was shot.

3

November 15, 2009 – The suspects displayed an unknown make and model handgun but no shots were fired.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** None.

2. With respect to each and every occasion when you, your predecessor(s) in office, or a sheriff's deputy has discharged a firearm in the course of duty since January 1, 2004 (not including firearm practice or training), please:

a. describe the circumstances surrounding the firearm discharge, including the date, location (by city and county), the reason for the firearm discharge, and whether you, your predecessor(s), or deputy were fired upon;

**Response:** Sheriff Crone objects to this interrogatory on the ground that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection:

July 3, 2005, City of Lochbuie, Weld County – Two deputies and two Wiggins police officers were involved in a high speed chase with two suspects driving the stolen vehicle of a missing elderly woman. Officers believed that the elderly woman had been murdered in Orange County, California. When one of the deputies attempted a PIT maneuver on the suspect's car, the suspect fired at the police. The police were forced to fire back at the suspects and hit both of them.

June 17, 2011, Hwy 34, Morgan County – Two deputies were responding to a domestic violence call when they were approached by the suspect with a knife. After requesting that the suspect put down the knife, the suspect refused and told the deputies to shoot him. The suspect then entered the home when the deputies attempted to deploy a taser twice without success. The suspect proceeded to advance upon the officers with the knife when the officers fired at him and wounded him.

b. if a firearm was fired by any person involved in the event, identify who fired the firearm, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

4

**Response:** Sheriff Crone objects to this interrogatory on the ground that the word "event" is vague. Subject to and without waiving this objection:

July 3, 2005 – The suspect fired 7 rounds from a shotgun with an extended magazine. He did not hit anyone. One deputy fired several rounds from an AR-15 in .223 caliber with a 20 round magazine. The other deputy fired 16 rounds from his .40 caliber handgun with a 15 round magazine. One police officer also fired several rounds. The suspect in the passenger seat was believed to have been killed by a bullet from the AR-15. The suspect driver was hit by the Wiggins police officer.

June 17, 2011 – The deputy fired 2 rounds from his .45 caliber handgun with an 8 round magazine. The suspect was hit once in the torso and once in the arm but survived.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**

July 3, 2005 – One suspect was killed by a deputy and one suspect was wounded by the police officer.

June 17, 2011 – One suspect was wounded by the deputy.

3. With respect to the allegations of paragraph 102 of the First Amended Complaint (doc. #22), describe every instance since January 1, 1973 in which you or your predecessors in office requested the armed assistance of able-bodied adults ("posse comitatus"). In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms in connection with their participation;

**Response:**

I have been a member of the Morgan County Sheriff's Office since 1977, with 33 years as a deputy sheriff, investigator or sheriff. The other years I was a member of the sheriff's office dive team and always maintained close relationships with deputies at the agency. I was also a cadet for the Morgan County Sheriff's Office for 2 years in high school before being hired.

I was involved in a specific incident in March of 1985 where I was in pursuit of a stolen vehicle from Texas.  The vehicle left the roadway and went cross-county into Adams County, and we were unable to pursue due to having no four-wheel drive vehicles.  A local rancher offered himself and his pickup so he and I could follow the vehicle's tracks through the snow (in the middle of a blizzard at night).  Locating the pickup, the rancher pursued it back into Morgan County.

We went across country for several minutes and went back into Adams County.  After the stolen pickup rammed us and I fired a shot into the front of the pickup, it stopped shortly thereafter.   I gave the rancher my shotgun and had him cover me while I arrested both occupants of the pickup.  The rancher fired no shots but stood armed, in view of the suspects, as my backup. I made the arrests alone in a remote area in which road signs were covered with snow and my radio could not reach out to the other cars looking for us.

Since 1975, I cannot say I know of any other specific incidents where the sheriff or any deputies specifically requested assistance from an "able-bodied adult," either already armed or given a firearm by a deputy, for the specific purpose of enforcing the law, preservation of the peace, or protecting the sheriff or deputy.  However, I am sure I am not the only deputy who has had citizens, usually local farmers or ranchers, back us up when involved with a combative suspect, a felony stop or a crime in progress. In these instances, the citizens had told us they had ready access to a firearm (inside the house, vehicle, or on their person), if so needed.

When searching a private residence or a business where a burglar alarm has gone off, I have had instances where an armed home/business/property owner has accompanied me, while armed with a handgun, when I had no backup close at hand.


b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:**  None to my knowledge.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**  None to my knowledge.

4. With respect to the allegations of paragraph 103 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 when you or your predecessors appointed deputies who were not certified peace officers. In your response, state in detail:

a. the date and duration of each individual's appointment, the circumstances surrounding the need for the "non-certified" deputy, whether the non-certified deputy was required to carry a firearm, whether the "non-certified" deputy carried a firearm he/she supplied or a firearm supplied by the sheriff's office, and whether any non-certified deputy ever discharged a firearm;

**Response:**  The Morgan County Sheriff's Office does not have, nor utilize, any non-POST certified deputy sheriffs except those who are assigned to the Jail Operations Division.

The Morgan County Sheriff's Office has utilized armed non-POST certified deputy sheriffs for many years in our Jail Operations Division. These deputies receive the same training in firearms and use of force as our Field Operations deputies and POST-certified deputy sheriffs in the jail. The Morgan County Sheriff's Office utilizes a six week, in house "Jail Academy" which consists of three weeks in the classroom and three weeks of skills training. The skills training involves firearms, driving and arrest control.

Our non-certified deputies wear the same uniform, carry all the same equipment and perform all the same tasks as the certified deputies in the jail. This includes court security and mental health and prisoner transports. We also utilize one (soon to be two) non-certified jail deputies as patrol support deputies. These deputies drive a marked agency vehicle and their duties include service of certain civil processes, animal calls, VIN inspections and other service type calls.

Our non-certified deputies have the choice of being issued an agency Glock .40 caliber firearm with a 15 round magazine, or a personally owned firearm that is approved by the policy and command staff.

Our non-certified deputies are not allowed to carry concealed while off-duty as a deputy, but they may apply for a concealed carry permit.

The Morgan County Sheriff's Office also has a posse program for civilians who have no POST certification. Currently those posse members do not carry a firearm as part of their uniform but we are in the process of rewriting our policies and procedures to allow the carrying and use of a firearm by posse members. They would be required to complete the same type of training listed above.

7

b. the circumstances surrounding the discharge of the non-certified deputy's firearm, including: the date and location of the event, whether the non-certified deputy was fired upon, the number of rounds fired by the non-certified deputy, the number of rounds fired by others involved in the event, the capacities of magazines from which bullets were fired, and whether any individual was shot;

**Response:** None.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** None.

5. Describe every occasion since January 1, 2004 when you, your predecessor sheriff(s), a sheriff's deputy, or a family member living with these individuals has discharged or otherwise used or displayed a firearm in defense of self, home, or other family members. In your response, describe the circumstances surrounding each event, including: the events leading to the use, display, or discharge of the firearm, the number of rounds fired by you or others, and the capacity of magazines used by firearms that were discharged. If any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Sheriff Crone objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous. Subject to and without waiving this objection:

I am not aware of any specific instance where a deputy sheriff or member of their family has used, displayed or discharged a firearm in defense of self, home or family. I will tell you that being a law enforcement officer in this county for thirty-plus years, and having lived nearly all of my career in the county, I have had numerous people show up at my house at all hours of the night or day to talk to me about an issue, make a complaint, or report an emergency, knowing that I was a deputy sheriff, or the county sheriff.

I have walked out the door on many occasions to meet people or vehicles in my yard or drive, gun in hand, though many never knew I had it. I am not a paranoid man, but I am prepared, and our aggressive drug and other criminal enforcement have certainly raised the ire of many of our criminal element.

8

6. With respect to the allegations of paragraph 105 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 in which you or your predecessors in office requested armed citizen assistance for emergencies and natural disasters. In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, and whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms;

**Response:**

Having been County Sheriff since 1999, I have not, nor am I aware of any specific instance where one of our deputy sheriffs, has ever requested armed citizen assistance for any emergency or natural disaster, in the specified time period, except as described above.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:**  Not applicable.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**  Not applicable.

**AS TO OBJECTIONS:**

                        s/David B. Kopel
                        INDEPENDENCE INSTITUTE
                        727 E. 16th Avenue
                        Denver, CO 80203
                        Phone: (303) 279-6536
                        Fax: (303) 279-4176
                        david@i2i.org

                        **ATTORNEY FOR SHERIFFS AND DAVID STRUMILLO**

**AS TO RESPONSES:**

     Pursuant to 28 U.S.C. § 1746, I, Jim Crone, do hereby verify under penalty of perjury that the foregoing responses to Defendant's Interrogatories are true and correct to the best of my information and belief.

     Dated this 14th day of August, 2013.

                        _____
                        s/Sheriff Jim Crone