IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-CV-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, Colorado, *et al.*

    Plaintiffs,

vs.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

    Defendant.

## RESPONSE OF CUSTER COUNTY SHERIFF FRED JOBE TO DEFENDANT'S INTERROGATORIES

    Sheriff Jobe, by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 33(b), hereby responds to Defendant's Interrogatories as follows:

### GENERAL OBJECTIONS

    Where no objection is interposed, the responses below reflect all responsive information and documents identified by Sheriff Jobe before the date of the responses, pursuant to a reasonable and diligent search and investigation conducted in connection with this discovery.  To the extent the discovery purports to require more, Sheriff objects on the grounds that (a) the discovery seeks to compel him to conduct a search beyond the scope of permissible discovery contemplated by the Federal Rules of Civil Procedure, and (b) compliance with the discovery would be oppressive, and would impose an undue burden or expense.

    Sheriff Jobe's discovery responses are also made subject to the ongoing discovery and trial preparation in this case.  These discovery responses are made based on the best information, including facts available as of the date of such responses.  Sheriff Jobe reserves the right to amend, supplement, or change these discovery responses as permitted or required under the Federal Rules of Civil Procedure based on additional information obtained through the discovery and trial preparation process.

    Sheriff Jobe makes each individual response subject to and without waiving the conditions and objections that are stated in the sections of these responses

1

entitled "General Objections" and "Objections to Instructions and Definitions" and that are specifically referred to in that particular individual response.

Sheriff Jobe makes each individual response without adopting in any way (unless otherwise stated) the terms and phrases that Defendant purports to define in his discovery. When Sheriff Jobe uses words or phrases that Defendant has purported to define, those words and phrases should be given either (a) the meaning set out by Sheriff Jobe in his responses, or in its objections to the specific definitions, or (b) the ordinary meaning of such words or phrases.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Defendant has purported to define several terms used in his discovery. In his responses, Sheriff Jobe gives ordinary words and phrases their ordinary meaning. By making this written response, Sheriff Jobe does not (a) adopt any purported definition, (b) waive or limit its objections to Defendant's purported definitions, or (c) concede the applicability of any such definition to any term or phrase that might be contained in written responses. Wherever these words are used in Defendant's interrogatories, these objections and these clarifications are incorporated, unless otherwise specified in the request.

Defendant purported to define "you" and "your" to include "counsel for Plaintiffs." Sheriff Jobe objects to this definition to the extent that it purports to require the disclosure of information, communications, or documents protected from disclosure by the attorney-client privilege, work product immunity, or any other privilege or immunity.

**RESPONSES**

1. With respect to each and every home invasion or "robbery in the home" to which your department has responded since January 1, 2004, please:

   a. describe the circumstances surrounding the home invasion/robbery in the home, including: the date and location (by city and county), the number of perpetrators involved, whether or not the perpetrator(s) carried firearms, and whether or not the perpetrator(s), victim(s), or others fired any shots;

**Response:** The Custer County Sheriff's Office has no records of home invasions or robberies during this time frame.

b. if a firearm was fired or otherwise used or displayed by any person, identify who used, displayed, or discharged the firearm, the manner in which they did so, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:** Sheriff Jobe objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous. Subject to and without waiving this objection: Not applicable.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Not applicable.

2. With respect to each and every occasion when you, your predecessor(s) in office, or a sheriff's deputy has discharged a firearm in the course of duty since January 1, 2004 (not including firearm practice or training), please:

a. describe the circumstances surrounding the firearm discharge, including the date, location (by city and county), the reason for the firearm discharge, and whether you, your predecessor(s), or deputy were fired upon;

**Response:** Sheriff Jobe objects to this interrogatory on the ground that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection:

April 16, 2010 – A Custer County Sheriff's deputy responded to a call from a restaurant about a disturbed individual who refused to leave, Upon arriving, the deputy witnessed the suspect leave in a black SUV with the hatch up thus stopping the officer from noting the license plate number. The deputy turned on his emergency lights and the suspect stopped one block down the road. After the stop was initiated, the suspect and officer both got out of their vehicles. The officer pulled out a baton when the suspect refused to remove his hands from his pockets. The suspect then removed his hands from his pockets and withdrew a knife. At this point the deputy dropped the baton and drew his Glock .40 caliber semi-automatic pistol with a 15 round magazine. As the suspect lunged at the deputy, the deputy fired two shots, hitting the suspect in the torso and killing him.

b. if a firearm was fired by any person involved in the event, identify who fired the firearm, whether the firearm used a magazine, the capacity of any magazines from

3

which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:** Sheriff Jobe objects to this interrogatory on the ground that the word "event" is vague. Subject to and without waiving this objection: Two bullets were fired by the deputy from a Glock .40 caliber with a 15 round magazine.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** The suspect died at the scene from being shot twice by the deputy.

3. With respect to the allegations of paragraph 102 of the First Amended Complaint (doc. #22), describe every instance since January 1, 1973 in which you or your predecessors in office requested the armed assistance of able-bodied adults ("posse comitatus"). In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms in connection with their participation;

**Response:**

The Custer County Sheriff's Posse was established on April 2, 2003, as a volunteer organization to assist the Custer County Sheriff's Office. The posse assists with parades, traffic control, crowd control, road closures, searches, inmate transfers and detention detail. There is a limit of 40 members, and currently 25 are certified to carry handguns while 16 are certified to carry shotguns.

Posse members receive firearms training from the Custer County Sheriff's Office; they are not required to be POST-certified.

Below is a list of some of the events or incidents where the posse was utilized. For a complete list, please see the Posse Background and Custer County Sheriff's Posse Policies and Procedures handbook, which were included in the production of documents.

July 21-22, 2004 – Six posse members assisted the Custer County Sheriff's Office in locating several inmates who had escaped.

4

April 30, 2005 – One posse member assisted the Sheriff's Office with the searching of a house.

July 29, 2005 – One posse member assisted with watching inmates.

March 30-31, 2006 – Three posse members assisted with drug surveillance at a local apartment complex.

August 16-17, 2006 – One posse member assisted the deputies in their search for a homicide suspect.

November 27, 2006 – Three posse members assisted deputies with a search warrant regarding a teen suicide.

November 9-11, 2007 – Four posse members assisted deputies who were investigating an animal cruelty case.

July 4, 2008 – One posse member assisted deputies in executing a search warrant and arresting an individual.

September 9, 2008 & September 12, 2008 – Three posse members assisted in the search for a fugitive.

October 13, 2008 – Three posse members assisted with a hostage situation where someone had barricaded themselves in a house.

October 23, 2008 – Four posse members guarded the home of a teacher who had received death threats.

March 3, 2009 – Two posse members assisted in the investigation of a break in that occurred at a local school.

May 10, 2010 – Two posse members assisted a woman who had been locked in a campground.

July 3-4, 2011 – Three posse members provided assistance in watching over the bodies and evidence at a plane crash site.

January 21, 2012 – Two posse members assisted in the search for a missing child.

February 16, 2012 – Two posse members assisted with the search for an 80 year old man who suffered from dementia.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:** None.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** None.

4. With respect to the allegations of paragraph 103 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 when you or your predecessors appointed deputies who were not certified peace officers. In your response, state in detail:

a. the date and duration of each individual's appointment, the circumstances surrounding the need for the "non-certified" deputy, whether the non-certified deputy was required to carry a firearm, whether the "non-certified" deputy carried a firearm he/she supplied or a firearm supplied by the sheriff's office, and whether any non-certified deputy ever discharged a firearm;

**Response:** We have 5 non-certified jail deputies who also do transports, and they are armed at the times of transporting inmates. They all supply their own weapons. None have had to discharge their weapons.

b. the circumstances surrounding the discharge of the non-certified deputy's firearm, including: the date and location of the event, whether the non-certified deputy was fired upon, the number of rounds fired by the non-certified deputy, the number of rounds fired by others involved in the event, the capacities of magazines from which bullets were fired, and whether any individual was shot;

**Response:** None.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Not applicable.

6

5. Describe every occasion since January 1, 2004 when you, your predecessor sheriff(s), a sheriff's deputy, or a family member living with these individuals has discharged or otherwise used or displayed a firearm in defense of self, home, or other family members. In your response, describe the circumstances surrounding each event, including: the events leading to the use, display, or discharge of the firearm, the number of rounds fired by you or others, and the capacity of magazines used by firearms that were discharged. If any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Sheriff Jobe objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous. Subject to and without waiving this objection: To my knowledge, no sheriff, deputy or family member has had to display or discharge a firearm in order to protect themselves, their family or their home.

6. With respect to the allegations of paragraph 105 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 in which you or your predecessors in office requested armed citizen assistance for emergencies and natural disasters. In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, and whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms;

**Response:** No such request has been made, other than as described in question set 3.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:** Not applicable.

7

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Not applicable.

**AS TO OBJECTIONS:**

                                  s/David B. Kopel
                                  INDEPENDENCE INSTITUTE
                                  727 E. 16th Avenue
                                  Denver, CO 80203
                                  Phone: (303) 279-6536
                                  Fax: (303) 279-4176
                                  david@i2i.org

                                  **ATTORNEY FOR SHERIFFS AND DAVID STRUMILLO**

**AS TO RESPONSES:**

    Pursuant to 28 U.S.C. § 1746, I, Fred Jobe, do hereby verify under penalty of perjury that the foregoing responses to Defendant's Interrogatories are true and correct to the best of my information and belief.

    Dated this 13th day of August, 2013.

                                    _____

                                    s/Sheriff Fred Jobe