IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-CV-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, Colorado, *et al.*

    Plaintiffs,

vs.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

    Defendant.

## RESPONSE OF LINCOLN COUNTY SHERIFF TOM NESTOR TO DEFENDANT'S INTERROGATORIES

    Sheriff Nestor, by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 33(b), hereby responds to Defendant's Interrogatories as follows:

### **GENERAL OBJECTIONS**

    Where no objection is interposed, the responses below reflect all responsive information and documents identified by Sheriff Nestor before the date of the responses, pursuant to a reasonable and diligent search and investigation conducted in connection with this discovery.  To the extent the discovery purports to require more, Sheriff objects on the grounds that (a) the discovery seeks to compel him to conduct a search beyond the scope of permissible discovery contemplated by the Federal Rules of Civil Procedure, and (b) compliance with the discovery would be oppressive, and would impose an undue burden or expense.

    Sheriff Nestor's discovery responses are also made subject to the ongoing discovery and trial preparation in this case.  These discovery responses are made based on the best information, including facts available as of the date of such responses.  Sheriff Nestor reserves the right to amend, supplement, or change these discovery responses as permitted or required under the Federal Rules of Civil Procedure based on additional information obtained through the discovery and trial preparation process.

Sheriff Nestor makes each individual response subject to and without waiving the conditions and objections that are stated in the sections of these responses entitled "General Objections" and "Objections to Instructions and Definitions" and that are specifically referred to in that particular individual response.

Sheriff Nestor makes each individual response without adopting in any way (unless otherwise stated) the terms and phrases that Defendant purports to define in his discovery. When Sheriff Nestor uses words or phrases that Defendant has purported to define, those words and phrases should be given either (a) the meaning set out by Sheriff Nestor in his responses, or in its objections to the specific definitions, or (b) the ordinary meaning of such words or phrases.

## **OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

Defendant has purported to define several terms used in his discovery. In his responses, Sheriff Nestor gives ordinary words and phrases their ordinary meaning. By making this written response, Sheriff Nestor does not (a) adopt any purported definition, (b) waive or limit its objections to Defendant's purported definitions, or (c) concede the applicability of any such definition to any term or phrase that might be contained in written responses. Wherever these words are used in Defendant's interrogatories, these objections and these clarifications are incorporated, unless otherwise specified in the request.

Defendant purported to define "you" and "your" to include "counsel for Plaintiffs." Sheriff Nestor objects to this definition to the extent that it purports to require the disclosure of information, communications, or documents protected from disclosure by the attorney-client privilege, work product immunity, or any other privilege or immunity.

**RESPONSES**

1. With respect to each and every home invasion or "robbery in the home" to which your department has responded since January 1, 2004, please:

   a. describe the circumstances surrounding the home invasion/robbery in the home, including: the date and location (by city and county), the number of perpetrators involved, whether or not the perpetrator(s) carried firearms, and whether or not the perpetrator(s), victim(s), or others fired any shots;

**Response:** We have had no home invasions reported since 2004. We have covered 102 residential burglaries of which the occupants were not at the residence and 119 commercial burglaries since that date.

b. if a firearm was fired or otherwise used or displayed by any person, identify who used, displayed, or discharged the firearm, the manner in which they did so, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:** Sheriff Nestor objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous. Subject to and without waiving this objection: In each of these burglaries no firearms were shown or used

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** There were no gunshots or injuries related to gunshots reported in that time frame.

2. With respect to each and every occasion when you, your predecessor(s) in office, or a sheriff's deputy has discharged a firearm in the course of duty since January 1, 2004 (not including firearm practice or training), please:

a. describe the circumstances surrounding the firearm discharge, including the date, location (by city and county), the reason for the firearm discharge, and whether you, your predecessor(s), or deputy were fired upon;

**Response:** Sheriff Nestor objects to this interrogatory on the ground that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection:

In January 2011 I (Sheriff Tom Nestor) pursued a domestic violence suspect from a neighboring jurisdiction. At the conclusion of the pursuit the suspect jumped out of his stolen truck and pointed a snub nose revolver at me and the Undersheriff. I shot at the suspect 4 times with my department issued .40 caliber handgun. The suspect received minor injuries and was transported to the hospital. The suspect did not fire his weapon. He is currently serving 16 years in prison.

On March 9th, 2011, Deputy Josh Morrison and Deputy Albert Leach entered into a residence with Limon Police Sgt. Russell Lengel and Limon Officer Jay Sheridan. The officers were looking for a wanted fugitive from the US Marshals service. The officers encountered the suspect in a back bedroom and he fired several rounds in the direction of the officers. Officer Jay Sheridan was killed at the scene from the

3

suspect. Deputy Leach and Sgt. Lengel were pinned down in a bathroom for several hours.

b. if a firearm was fired by any person involved in the event, identify who fired the firearm, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:** Sheriff Nestor objects to this interrogatory on the ground that the word "event" is vague. Subject to and without waiving this objection:

During the January 2011 event I was the only one who fired my department issued Smith and Wesson 4006 with a magazine.

During the March 9, 2001 incident no officers fired their weapons. The suspect was shooting a .45 caliber pistol with a magazine.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Officer Jay Sheridan died at the scene and had a vest on at the time of his death.

3. With respect to the allegations of paragraph 102 of the First Amended Complaint (doc. #22), describe every instance since January 1, 1973 in which you or your predecessors in office requested the armed assistance of able-bodied adults ("posse comitatus"). In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms in connection with their participation;

**Response:** My predecessor had never requested an armed response from the citizens. I too have not requested such a response. However, it is not uncommon for our citizens in rural areas to watch for vehicles or offenders from an incident. Many of our citizens are concealed weapons holders.

I started a posse in 2007 for the purposes of events, evidence searches and missing person searches. Since I started the 20 person posse, they have only been deployed

4

on three occasions and all deployments were for evidence searches. The posse has also been deployed for gate security at the annual Lincoln County Fair.

I don't require, but I do authorize my posse to carry an approved handgun as long as they have been through concealed carry training. We also offer them additional training through a simulator. The posse members are authorized for ride-alongs with certified deputies.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:** There have been no shots fired or discharged firearms in relation to the posse.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** There have been no gunshot injuries.

4. With respect to the allegations of paragraph 103 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 when you or your predecessors appointed deputies who were not certified peace officers. In your response, state in detail:

a. the date and duration of each individual's appointment, the circumstances surrounding the need for the "non-certified" deputy, whether the non-certified deputy was required to carry a firearm, whether the "non-certified" deputy carried a firearm he/she supplied or a firearm supplied by the sheriff's office, and whether any non-certified deputy ever discharged a firearm;

**Response:** In Lincoln County we rely on non-certified personnel to run and operate our jail facility. With lower pay and advances associated with rural sheriff's offices it is very hard to get enough certified deputies to operate the jail. Non-certified deputies do courtroom security and prisoner transport as well. I currently have 12 deputies assigned to the jail with only 5 being certified. In the recent past we have had no certified deputies working inside the jail system for Lincoln County. It is virtually impossible to send non-certified deputies to academies to get certified. Non-certified deputies are required to take firearms training with our range instructor. Non-certified deputies carry guns at times in the courtrooms and on

prisoner transports. Firearms are not provided to any jail deputies, Any firearms they do have must meet the department's policies and be approved by the department range officer.

b. the circumstances surrounding the discharge of the non-certified deputy's firearm, including: the date and location of the event, whether the non-certified deputy was fired upon, the number of rounds fired by the non-certified deputy, the number of rounds fired by others involved in the event, the capacities of magazines from which bullets were fired, and whether any individual was shot;

**Response:**  We have had no discharge of firearms by non-certified deputies.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**  There have been no individuals injured or killed by gunshots in relation to non-certified deputies.

5. Describe every occasion since January 1, 2004 when you, your predecessor sheriff(s), a sheriff's deputy, or a family member living with these individuals has discharged or otherwise used or displayed a firearm in defense of self, home, or other family members. In your response, describe the circumstances surrounding each event, including: the events leading to the use, display, or discharge of the firearm, the number of rounds fired by you or others, and the capacity of magazines used by firearms that were discharged. If any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**  Sheriff Nestor objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous.  Subject to and without waiving this objection, I am not aware of any incidents since 2004 of any of my sheriff's deputies or family members displaying or using a firearm at home.

6. With respect to the allegations of paragraph 105 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 in which you or your predecessors in office requested armed citizen assistance for emergencies and natural disasters. In your response, state in detail the circumstances surrounding each such request, including:

6

a. the reason for the request, the number of individuals who responded to the request, and whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms;

**Response:** Both my predecessor and I have had many natural disasters such as tornadoes. Citizens all come to help in these situations and we rely on them to watch over damaged businesses and homes. I only have 4 patrol deputies and 3 command staff. Without the assistance of citizens I could not possibly watch everything. Earlier this year one of my deputies lost an individual during a pursuit. I searched a house side by side with an armed citizen who I knew had a concealed weapon permit. However, I am not aware of a request specifically that a citizen be armed since 2004.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:** There were no shots fired.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** There were no injuries or deaths from gunshots by an armed citizen response.

**AS TO OBJECTIONS:**

        s/David B. Kopel
INDEPENDENCE INSTITUTE
727 E. 16th Avenue
Denver, CO 80203
Phone: (303) 279-6536
Fax: (303) 279-4176
david@i2i.org

**ATTORNEY FOR SHERIFFS AND DAVID STRUMILLO**

**AS TO RESPONSES:**

Pursuant to 28 U.S.C. § 1746, I, Tom Nestor, do hereby verify under penalty of perjury that the foregoing responses to Defendant's Interrogatories are true and correct to the best of my information and belief.

Dated this 12th day of August, 2013.

_____
s/Sheriff Tom Nestor