**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-CV-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, Colorado, *et al.*

      Plaintiffs,

vs.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

      Defendant.

---

## RESPONSE OF MONTEZUMA COUNTY SHERIFF DENNIS SPRUELL TO DEFENDANT'S INTERROGATORIES

---

      Sheriff Spruell, by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 33(b), hereby responds to Defendant's Interrogatories as follows:

### <u>GENERAL OBJECTIONS</u>

      Where no objection is interposed, the responses below reflect all responsive information and documents identified by Sheriff Spruell before the date of the responses, pursuant to a reasonable and diligent search and investigation conducted in connection with this discovery. To the extent the discovery purports to require more, Sheriff objects on the grounds that (a) the discovery seeks to compel him to conduct a search beyond the scope of permissible discovery contemplated by the Federal Rules of Civil Procedure, and (b) compliance with the discovery would be oppressive, and would impose an undue burden or expense.

      Sheriff Spruell's discovery responses are also made subject to the ongoing discovery and trial preparation in this case. These discovery responses are made based on the best information, including facts available as of the date of such responses. Sheriff Spruell reserves the right to amend, supplement, or change these discovery responses as permitted or required under the Federal Rules of Civil Procedure based on additional information obtained through the discovery and trial preparation process.

      Sheriff Spruell makes each individual response subject to and without waiving the conditions and objections that are stated in the sections of these responses entitled "General Objections" and "Objections to Instructions and

1

Definitions" and that are specifically referred to in that particular individual response.

Sheriff Spruell makes each individual response without adopting in any way (unless otherwise stated) the terms and phrases that Defendant purports to define in his discovery.  When Sheriff Spruell uses words or phrases that Defendant has purported to define, those words and phrases should be given either (a) the meaning set out by Sheriff Spruell in his responses, or in its objections to the specific definitions, or (b) the ordinary meaning of such words or phrases.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Defendant has purported to define several terms used in his discovery.  In his responses, Sheriff Spruell gives ordinary words and phrases their ordinary meaning.  By making this written response, Sheriff Spruell does not (a) adopt any purported definition, (b) waive or limit its objections to Defendant's purported definitions, or (c) concede the applicability of any such definition to any term or phrase that might be contained in written responses.  Wherever these words are used in Defendant's interrogatories, these objections and these clarifications are incorporated, unless otherwise specified in the request.

Defendant purported to define "you" and "your" to include "counsel for Plaintiffs."  Sheriff Spruell objects to this definition to the extent that it purports to require the disclosure of information, communications, or documents protected from disclosure by the attorney-client privilege, work product immunity, or any other privilege or immunity.

**RESPONSES**

1. With respect to each and every home invasion or "robbery in the home" to which your department has responded since January 1, 2004, please:

   a. describe the circumstances surrounding the home invasion/robbery in the home, including: the date and location (by city and county), the number of perpetrators involved, whether or not the perpetrator(s) carried firearms, and whether or not the perpetrator(s), victim(s), or others fired any shots;

**Response:**  Between January 1, 2004 and July 31, 2013 there were a total of 564 burglaries. During this same time period, there were 30 home invasions, two of which involved guns.

September 29, 2007, Montezuma County – During a home invasion, the suspect used a Marlin .22LR Model 60 rifle to threaten and strike the victim homeowner. The rifle was found later to be empty, and no shots were fired.

November 1, 2009, Montezuma County – A suspect entered into the victim homeowner's residence and pointed a gun at him. The suspect then struck the victim, but the victim could not tell if the strike was done with a fist or the gun. No shots were fired during this incident.

There are no documented instances, in any of the 30 home invasions, of shots being fired by any suspect or victim.

> b. if a firearm was fired or otherwise used or displayed by any person, identify who used, displayed, or discharged the firearm, the manner in which they did so, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:**  Sheriff Spruell objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous.  Subject to and without waiving this objection:

September 29, 2007 – The suspect displayed a Marlin .22LR Model 60 rifle to the victim and then struck the victim with the gun.

November 1, 2009 – The suspect displayed and possibly struck the victim with an unknown make and model firearm.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**  None.

2. With respect to each and every occasion when you, your predecessor(s) in office, or a sheriff's deputy has discharged a firearm in the course of duty since January 1, 2004 (not including firearm practice or training), please:

a. describe the circumstances surrounding the firearm discharge, including the date, location (by city and county), the reason for the firearm discharge, and whether you, your predecessor(s), or deputy were fired upon;

**Response:**  Sheriff Spruell objects to this interrogatory on the ground that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving this objection:

For specific details regarding the following events, please refer to the document production.

August 26, 2007, Montezuma County, City of Cortez – After officers and deputies were attacked by the suspect, 2 deputies fired 1 round each from their duty firearm.

August 24, 2009, Montezuma County, City of Lewis – After the suspect robbed a liquor store at gunpoint, the Montezuma Sheriff's Office obtained search and arrest warrants for the suspect. Having heard that the suspect threatened to kill any police officers who attempted to arrest him, the sheriff called upon the SWAT team to surround the home. The SWAT team is made up of various deputies. The SWAT team launched gas into the suspect's home and attempted to contact him via a PA system and by telephone. The suspect refused to respond or obey orders. After some time, the suspect fired at the officers and struck one deputy. The deputies returned fire. The standoff lasted until the next morning when the suspect died from a self-inflicted gunshot wound.

December 15, 2010, Montezuma County, City of Cortez – Police in Cortez had recently reported a stolen brown F-350 that was seen days later in Montezuma County. After police, deputies and troopers engaged the suspect in what appeared to be the stolen vehicle, the suspect initiated a high speed chase. The suspect reached speeds of up to 115 mph. During this pursuit, the suspect entered a field where a deputy was able to drive alongside him. The deputy drew his .40 caliber Glock duty weapon and fired at the truck's tires.

March 19, 2011, Montezuma County, City of Cortez – A Cortez City police officer and Montezuma County deputy responded to a call regarding an intoxicated male who was stumbling as he walked down the street. Upon confronting the suspect, the officer and deputy were met with some resistance. As the suspect began fumbling through his clothes, the police slowly backed away. The officer and deputy drew their weapons when they saw the suspect produce a weapon. The suspect fired, then his gun jammed. At the same time, the officer and deputy fired at the suspect. The suspect then ran and police fired at him again, taking him down but not killing him.


b. if a firearm was fired by any person involved in the event, identify who fired the firearm, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:** Sheriff Spruell objects to this interrogatory on the ground that the word "event" is vague. Subject to and without waiving this objection

August 26, 2007 – The two deputies fired one shot each from their Glock Model 22, .40 caliber handguns that held 15 round magazines. The officers each had a total of three magazines. No one was shot.

August 24, 2009 – Both the suspect and officers at the scene exchanged fire. The gun recovered from the suspect was a Remington Model 722 in .222 caliber. The officers' guns are not described in the police report. No specific magazines are reported in the police report.

December 15, 2010 – The deputy fired two shots from his .40 caliber Glock duty weapon at the tires of the suspect's vehicle. One bullet struck the dirt and the other hit the wheel well. No one was shot.

March 19, 2011 – The officer and deputy fired their service weapon several times. The deputy fired a Glock Model 22 in .40 caliber. The suspect had a Llama single action 9mm pistol with 1 loaded magazine containing 9 rounds with one jammed. The suspect also had an extra magazine and box of 9mm ammunition. The suspect was able to fire a shot before his gun jammed. The suspect was hit several times but survived.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**

August 24, 2009 – The suspect died as a result of a self-inflicted gun shot wound.

3. With respect to the allegations of paragraph 102 of the First Amended Complaint (doc. #22), describe every instance since January 1, 1973 in which you or your predecessors in office requested the armed assistance of able-bodied adults ("posse comitatus"). In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms in connection with their participation;

**Response:** The Montezuma County Sheriff's Office has had a Sheriff's Posse since 1968. They have assisted the Montezuma County Sheriff's Office with law enforcement and search and rescue missions since their inception. The posse is called out by the Sheriff to do security for community events, guard crime scenes, and have in the past assisted with court security and the transportation of inmates.

5

They are utilized as auxiliary or supplemental assistance to regular activities of the Montezuma County Sheriff's Office. Such posse members may carry a firearm as permitted or required by the sheriff.

Each posse member is required to complete a mandatory basic firearms training course. Any firearm that is carried, when permitted, must be supplied by the posse member themselves. Below is a list of some of the duties that posse members are responsible for. For an extensive list, please refer to the document production.

2005 – Various posse members provided court security, security for the county fair, and conducted inmate transfers.

2007 – Various posse members provided security at the local dog show and Ag Expo.

2008 – Various posse members provided security for the Home and Garden Show, Fourth of July show, a stock car race, and assisted with a home that had burned.

2009 – Various posse members provided security for the local dog show, a teen maze, and a wrestling event.

2011 – Various posse members provided security for a local dog show, MC Fair Races, the Ag Expo, and the Home and Garden Show.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:** None.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** None.

4. With respect to the allegations of paragraph 103 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 when you or your predecessors appointed deputies who were not certified peace officers. In your response, state in detail:

a. the date and duration of each individual's appointment, the circumstances surrounding the need for the "non-certified" deputy, whether the non-certified

deputy was required to carry a firearm, whether the "non-certified" deputy carried a firearm he/she supplied or a firearm supplied by the sheriff's office, and whether any non-certified deputy ever discharged a firearm;

**Response:**

I have 30 full time Jail Deputies who are not certified. The Office has 10 .40 caliber Glocks for some of them.

b. the circumstances surrounding the discharge of the non-certified deputy's firearm, including: the date and location of the event, whether the non-certified deputy was fired upon, the number of rounds fired by the non-certified deputy, the number of rounds fired by others involved in the event, the capacities of magazines from which bullets were fired, and whether any individual was shot;

**Response:**  There have been no instances where a firearm has been discharged by a non-certified deputy while on duty.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**  Not applicable.

5. Describe every occasion since January 1, 2004 when you, your predecessor sheriff(s), a sheriff's deputy, or a family member living with these individuals has discharged or otherwise used or displayed a firearm in defense of self, home, or other family members. In your response, describe the circumstances surrounding each event, including: the events leading to the use, display, or discharge of the firearm, the number of rounds fired by you or others, and the capacity of magazines used by firearms that were discharged. If any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**  Sheriff Spruell objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous. Subject to and without waiving this objection:

The Montezuma County Sheriff's Office has reached out to all agency employees requesting information regarding instances where they had used a firearm in defense of self, family or home. Thus far, two have come forward stating that they have.

In the first incident, the officer displayed a firearm, but no shots were fired. In the second instance, an officer used a firearm to get a suspect under control and into handcuffs. This officer did not fire his weapon either. Both instances occurred due to attempted break-ins at the homes of the officers.

6. With respect to the allegations of paragraph 105 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 in which you or your predecessors in office requested armed citizen assistance for emergencies and natural disasters. In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, and whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms;

**Response:** I do use the Sheriff's Posse which is a volunteer group. We have 29 Posse members. I have attached a Special Deputy SOP (for armed Sheriff's Posse assignments) They furnish their own firearms in accordance with Office standards, and they qualify via the Sheriff's Office.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:** None.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Not applicable.

**AS TO OBJECTIONS:**

s/David B. Kopel
INDEPENDENCE INSTITUTE
727 E. 16th Avenue
Denver, CO 80203
Phone: (303) 279-6536
Fax: (303) 279-4176
david@i2i.org

**ATTORNEY FOR SHERIFFS AND DAVID STRUMILLO**

**AS TO RESPONSES:**

Pursuant to 28 U.S.C. § 1746, I, Dennis Spruell, do hereby verify under penalty of perjury that the foregoing responses to Defendant's Interrogatories are true and correct to the best of my information and belief.

Dated this 14th day of August, 2013.

_____
s/Sheriff Dennis Spruell