IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-CV-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, Colorado, *et al.*

 Plaintiffs,

vs.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

 Defendant.

## RESPONSE OF LARIMER COUNTY SHERIFF JUSTIN SMITH TO DEFENDANT'S INTERROGATORIES

 Sheriff Smith, by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 33(b), hereby responds to Defendant's Interrogatories as follows:

### GENERAL OBJECTIONS

 Where no objection is interposed, the responses below reflect all responsive information and documents identified by Sheriff Smith before the date of the responses, pursuant to a reasonable and diligent search and investigation conducted in connection with this discovery.  To the extent the discovery purports to require more, Sheriff objects on the grounds that (a) the discovery seeks to compel him to conduct a search beyond the scope of permissible discovery contemplated by the Federal Rules of Civil Procedure, and (b) compliance with the discovery would be oppressive, and would impose an undue burden or expense.

 Sheriff Smith's discovery responses are also made subject to the ongoing discovery and trial preparation in this case.  These discovery responses are made based on the best information, including facts available as of the date of such responses.  Sheriff Smith reserves the right to amend, supplement, or change these discovery responses as permitted or required under the Federal Rules of Civil Procedure based on additional information obtained through the discovery and trial preparation process.

 Sheriff Smith makes each individual response subject to and without waiving the conditions and objections that are stated in the sections of these responses entitled "General Objections" and "Objections to Instructions and Definitions" and that are specifically referred to in that particular individual response.

1

Sheriff Smith makes each individual response without adopting in any way (unless otherwise stated) the terms and phrases that Defendant purports to define in his discovery. When Sheriff Smith uses words or phrases that Defendant has purported to define, those words and phrases should be given either (a) the meaning set out by Sheriff Smith in his responses, or in its objections to the specific definitions, or (b) the ordinary meaning of such words or phrases.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Defendant has purported to define several terms used in his discovery. In his responses, Sheriff Smith gives ordinary words and phrases their ordinary meaning. By making this written response, Sheriff Smith does not (a) adopt any purported definition, (b) waive or limit its objections to Defendant's purported definitions, or (c) concede the applicability of any such definition to any term or phrase that might be contained in written responses. Wherever these words are used in Defendant's interrogatories, these objections and these clarifications are incorporated, unless otherwise specified in the request.

Defendant purported to define "you" and "your" to include "counsel for Plaintiffs." Sheriff Smith objects to this definition to the extent that it purports to require the disclosure of information, communications, or documents protected from disclosure by the attorney-client privilege, work product immunity, or any other privilege or immunity.

**RESPONSES**

1. With respect to each and every home invasion or "robbery in the home" to which your department has responded since January 1, 2004, please:

   a. describe the circumstances surrounding the home invasion/robbery in the home, including: the date and location (by city and county), the number of perpetrators involved, whether or not the perpetrator(s) carried firearms, and whether or not the perpetrator(s), victim(s), or others fired any shots;

**Response:**

July 25, 2005 – One suspect removed the air conditioner from a residence and entered the home in unincorporated Larimer County. When the suspect was inside, he was confronted by the victim/homeowner. The homeowner displayed a handgun, after which the suspect fled. No shots were fired.

2

February 18, 2006 – One suspect forced his way into a residence, pointed a handgun at the resident and insisted that another resident owed the suspect money. This took place in Fort Collins, Colorado in Larimer County. No shots were fired.

November 2, 2008 – Two suspects forced a victim back into their home and stole drugs, a generator and other items. One of the suspects displayed a handgun during the theft. This crime took place in Wellington Colorado in Larimer County. No shots were fired.

March 12, 2010 – Four to seven suspects broke into a residence through the front window in unincorporated Larimer County. Once the suspects were inside, they tied up the two victims and stole drugs, guns and a car. One of the suspects hit one of the victims with the butt of a shotgun, but no shots were fired.

March 29, 2010 – Four suspects were invited into a home to conduct a drug deal. While inside, the four suspects stole the drugs and attempted to flee. When the victim attempted to pursue the suspects, one of the suspects fired a single shot from a handgun wounding the suspect. This took place in unincorporated Larimer County.

October 5, 2010 – Six suspects were charged with felony menacing at a trailer in unincorporated Larimer County. Two of the suspects displayed handguns during the incident which included four victims. No shots were fired.

April 4, 2011 – While in Fort Collins in Larimer County, the suspect grandson cut the lock to his grandmother's cabin and entered. Upon getting inside, the grandson fired numerous shots from an AR-15, a .45 caliber semi-automatic handgun, a .308 caliber bolt action rifle and a .38 caliber revolver. No one was shot or injured.

December 24, 2011 – The suspect ex-husband attempted to enter the residence of his wife through a window. This was a violation of the restraining order against him. Upon entering the home, the victim fired two shots at him before her gun jammed. No one was injured. This took place in Loveland within Larimer County.

June 18, 2012 – In Timnath, inside Larimer County, one suspect entered a residence through an unlocked door and then sat in a vehicle after he was told to leave. When the owner confronted the suspect again, the suspect pointed a handgun at him. No shots were fired.

November 29, 2012 – In Wellington, inside Larimer County, two suspects entered a residence through an unlocked door. Once inside, the victim resident fired at the suspects with an AK-47 type rifle with a 30 round magazine. The suspects were able to get the gun from the victim and beat him with it. No one was shot.

March 20, 2013 – In unincorporated Larimer County, an estranged husband entered the home of his ex-wife, pointed a rifle or shotgun at her and stole her necklace. No shots were fired and no one was injured.

May 2, 2013 – In Fort Collins, inside Larimer County, one suspect entered the residence of another and confronted the victim. The suspect displayed a handgun and demanded money. The victim was able to obtain their .357 magnum and fired a single shot. No one was not or injured.

A table provided along with these answers supplements the narrative above, and provides additional information responsive to all the questions in interrogatory 1.

> b. if a firearm was fired or otherwise used or displayed by any person, identify who used, displayed, or discharged the firearm, the manner in which they did so, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:** Sheriff Smith objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous. Subject to and without waiving this objection:

March 29, 2010 – One of the suspects shot at the victim wounding him with his handgun.

December 24, 2011 – The ex-wife/victim fired two shots at her ex-husband but no one was hit.

November 29, 2012 – Resident of a home that had been broken into fired one shot at the two suspects with his AK-47 with a 30 round magazine. No one was hit.

May 2, 2013 – The suspect displayed a handgun upon breaking into the resident's home and the resident then fired a single shot from a .357 magnum.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**

March 29, 2010 – One of the suspects shot at the victim wounding him with his handgun.

4

2. With respect to each and every occasion when you, your predecessor(s) in office, or a sheriff's deputy has discharged a firearm in the course of duty since January 1, 2004 (not including firearm practice or training), please:

a. describe the circumstances surrounding the firearm discharge, including the date, location (by city and county), the reason for the firearm discharge, and whether you, your predecessor(s), or deputy were fired upon;

**Response:** Sheriff Smith objects to this interrogatory on the ground that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection:

May 4, 2004 – During a pursuit in Fort Collins, inside Larimer County, the suspect wielded a simulated weapon. The deputy fired a single shot with a Glock Model 22 with a 15 round magazine. No one was injured.

August 25, 2004 – In Loveland, inside Larimer County, a suicidal individual fired a single shot from a .30-30 lever action shotgun. Deputies responded by firing 5 shots from an AR-15 with a 30 round magazine. The suspect was killed but no deputies were harmed.

November 2, 2004 – In Wellington, inside Larimer County, a suspect with an SKS loaded with a 20 round magazine was eluding police. The suspect did not fire, but deputies fired a single round from a Remington 700 bolt action rifle. The suspect was killed but no deputies were harmed.

August 18, 2005 – In Bellvue, inside Larimer County, a single suspect was wanted for menacing. The suspect fired 1 shot from a pump action shotgun. Deputies responded by firing 1 round from an AR-15 with a 20 round magazine and 1 round from a Colt 1911 with an 8 round magazine. The suspect was killed but no deputies were harmed.

January 12, 2005 – In Berthoud, in Larimer County, a suspect was wanted for a bank robbery and eluding. The suspect only had a simulated weapon. Deputies were forced to fire at the suspect with 4 rounds from a Colt 1911 with a 9 round magazine and 7 rounds with a Colt 1911 with an 8 round magazine. The suspect was killed but no deputies were harmed.

November 9, 2010 – There was a domestic violence issue in Berthoud inside Larimer County. The suspect fired 2 rounds from a .30-30 lever action shotgun. Deputies responded by firing 4 rounds from a Colt M4 with a 30 round magazine, 1

5

round from another Colt M4 with a 30 round magazine, and 5 rounds from another Colt M4 with a 30 round magazine. The suspect was killed and no deputies were injured.

October 20, 2012 – In Livermore, inside Larimer County, a suicidal suspect was menacing. He fired 1 round from an unknown pistol. Deputies responded by firing 1 round from an AR-15 with a 20 round magazine. The suspect committed suicide.

June 3, 2013 – Some neighbors had an issue in Livermore inside Larimer County. The suspect involved fired 11 rounds from an SKS with a 30 round magazine. Deputies responded by firing 5 rounds at the suspect from an AR-15 with a 30 round magazine. The suspect was killed and no deputies were injured.

A table provided along with these answers supplements the narrative above, and provides additional information responsive to all the questions in interrogatory 1.

b. if a firearm was fired by any person involved in the event, identify who fired the firearm, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:**  Sheriff Smith objects to this interrogatory on the ground that the word "event" is vague.  Subject to and without waiving this objection:

May 4, 2004 – The deputy fired a single shot with a Glock Model 22 with a 15 round magazine. No one was shot.

August 25, 2004 – The suspect fired a single shot from a .30-30 lever action shotgun. The deputies fired 5 shots from an AR-15 with a 30 round magazine. The suspect was killed but no deputies were harmed.

November 2, 2004 – The deputies fired a single round from a Remington 700 bolt action rifle. The suspect was killed but no deputies were harmed.

August 18, 2005 – The suspect fired 1 shot from a pump action shotgun. Deputies fired 1 round from an AR-15 with a 20 round magazine and 1 round from a Colt 1911 with an 8 round magazine. The suspect was killed but no deputies were harmed.

6

January 12, 2005 – Deputies fired at the suspect with 4 rounds from a Colt 1911 with a 9 round magazine and 7 rounds with a Colt 1911 with an 8 round magazine. The suspect was killed but no deputies were harmed.

November 9, 2010 – The suspect fired 2 rounds from a .30-30 lever action shotgun. Deputies fired 4 rounds from a Colt M4 with a 30 round magazine, 1 round from another Colt M4 with a 30 round magazine, and 5 rounds from another Colt M4 with a 30 round magazine. The suspect was killed and no deputies were injured.

October 20, 2012 – The suspect fired 1 round from an unknown pistol. Deputies fired 1 round from an AR-15 with a 20 round magazine. The suspect committed suicide.

June 3, 2013 – The suspect fired 11 rounds from an SKS with a 30 round magazine. Deputies fired 5 rounds from an AR-15 with a 30 round magazine. The suspect was killed and no deputies were injured

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**

May 4, 2004 – Suspect was killed by a deputy.

August 25, 2004 – Suspect was killed by a deputy.

November 2, 2004 – Suspect was killed by a deputy.

August 18, 2005 – Suspect was killed by deputies.

January 12, 2005 – Suspect was killed by deputies.

November 9, 2010 – Suspect was killed by deputies.

October 20, 2012 – Suspect committed suicide.

June 3, 2013 – Suspect was killed by deputy.

3. With respect to the allegations of paragraph 102 of the First Amended Complaint (doc. #22), describe every instance since January 1, 1973 in which you or your predecessors in office requested the armed assistance of able-bodied adults ("posse comitatus"). In your response, state in detail the circumstances surrounding each such request, including:

7

a. the reason for the request, the number of individuals who responded to the request, whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms in connection with their participation;

**Response:**

We do not have records available to fully respond to this request. However, it is believed that armed citizens were called to assist in maintaining order and assisting in recovery following the July 31, 1976, Big Thompson River flood. However, the sheriff during that time, Bob Watson, died in office on January 5, 1979. We have no one with the agency who was involved in those decisions to be able to verify this claim.

During last year's High Park Fire, we were able to utilize the assistance of the Colorado National Guard to assist us in providing armed security of evacuated areas. However, their ability to deploy was limited and they had to demobilize before the fire was fully contained. At that time (late June, early July 2012), I was prepared to exercise my powers to call armed citizens to our aid to secure these areas. However, the weather changed quickly and the fire was contained before armed citizens were necessary.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:** Given this information, we have no record of shots being fired by individuals as described.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Not applicable.

4. With respect to the allegations of paragraph 103 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 when you or your predecessors appointed deputies who were not certified peace officers. In your response, state in detail:

8

a. the date and duration of each individual's appointment, the circumstances surrounding the need for the "non-certified" deputy, whether the non-certified deputy was required to carry a firearm, whether the "non-certified" deputy carried a firearm he/she supplied or a firearm supplied by the sheriff's office, and whether any non-certified deputy ever discharged a firearm;

**Response:**

The Larimer County Sheriff's Office utilizes the authority to appoint non-certified deputies routinely in the hiring of deputies assigned to the jail division. Many of these deputies undergo firearms training and are authorized to carry a firearm in the performance of their duties. All jail deputies are authorized to make arrests, detain inmates and use force as authorized by law.

We do not have access to the historical records of how many were sworn in such capacity during a given year, but we can report the total number of non-certified deputies we had on our roles on those given years.

| Year | Non-Certified Jail Deputies |
|---|---|
| 2004 | 45 |
| 2005 | 56 |
| 2006 | 54 |
| 2007 | 54 |
| 2008 | 67 |
| 2009 | 67 |
| 2010 | 66 |
| 2011 | 63 |
| 2012 | 84 |
| 2013 | 76 |

Our agency requires deputies to purchase their own firearm. They are able to choose between several different handguns with varying standard magazine capacities, so we are not able to report, in a historical manner, what handguns these individuals carried. In some cases we cannot determine who was authorized to carry a firearm in the performance of their duties. We also do not have records of the capacities of the magazine(s) used by those deputies. Additionally, non-certified deputies routinely apply for and receive concealed handgun permits, so that they can continue to carry concealed weapons off-duty for self-defense. As you are aware, CRS 18-12-206 prohibits sheriffs from releasing the specifics of their concealed handgun permit records, except for specific criminal justice purposes.

Additionally, since I took office in 2011, every employee of the Sheriff's Office has been administered an oath of office and is considered to be a limited deputy for the performance of their duties within the Sheriff's Office. However, these individuals

9

are not granted arrest authority, nor are they authorized to carry a firearm in any official capacity. Some chose to exercise their right to carry a permitted concealed weapon.

b. the circumstances surrounding the discharge of the non-certified deputy's firearm, including: the date and location of the event, whether the non-certified deputy was fired upon, the number of rounds fired by the non-certified deputy, the number of rounds fired by others involved in the event, the capacities of magazines from which bullets were fired, and whether any individual was shot;

**Response:** I have no record of a non-certified deputy discharging a firearm in the course of their duties since 2004.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Not applicable.

5. Describe every occasion since January 1, 2004 when you, your predecessor sheriff(s), a sheriff's deputy, or a family member living with these individuals has discharged or otherwise used or displayed a firearm in defense of self, home, or other family members. In your response, describe the circumstances surrounding each event, including: the events leading to the use, display, or discharge of the firearm, the number of rounds fired by you or others, and the capacity of magazines used by firearms that were discharged. If any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Sheriff Smith objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous. Subject to and without waiving this objection:

This information is all but impossible to ascertain. We do not have formal records of these events unless they are duty related and that information has already been supplied in response to item 2.

The majority of our employees do not live within the unincorporated areas of Larimer County, instead choosing to live within towns or cities in our county or surrounding counties. Some also live in unincorporated areas of other counties. In those cases, we are not holders of those records.

For those who live within our primary response area, we have no way to flag them in our records system as being a deputy sheriff or being related to any employee of our office.

6. With respect to the allegations of paragraph 105 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 in which you or your predecessors in office requested armed citizen assistance for emergencies and natural disasters. In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, and whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms;

**Response:**
To the best of our knowledge, since 2004, we have not had an instance when the Sheriff had to deputize a non-law enforcement citizen and request them to arm themselves in our assistance as permitted by CRS 30-10-506 and defined under CRS 16-2.5-103

However, that does not preclude incidents where armed or unarmed citizens have come to the assistance of a deputy in need either because they were commanded by an officer per CRS 16-3-202 or because they were acting under the authority granted all citizens to make a citizen's arrest as authorized under CRS 16-3-201.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:**  Not applicable.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**  Not applicable.

**AS TO OBJECTIONS:**

                                        s/David B. Kopel
                                        INDEPENDENCE INSTITUTE
                                        727 E. 16th Avenue
                                        Denver, CO 80203
                                        Phone: (303) 279-6536
                                        Fax: (303) 279-4176
                                        david@i2i.org

                                        **ATTORNEY FOR SHERIFFS AND DAVID STRUMILLO**

**AS TO RESPONSES:**

        Pursuant to 28 U.S.C. § 1746, I, Justin Smith, do hereby verify under penalty of perjury that the foregoing responses to Defendant's Interrogatories are true and correct to the best of my information and belief.

        Dated this 12th day of August, 2013.

                                          _____
                                          s/Sheriff Justin Smith