**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-CV-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, Colorado, *et al.*

    Plaintiffs,

vs.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

    Defendant.

## RESPONSE OF DOUGLAS COUNTY SHERIFF DAVID WEAVER TO DEFENDANT'S INTERROGATORIES

Sheriff Weaver, by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 33(b), hereby responds to Defendant's Interrogatories as follows:

### GENERAL OBJECTIONS

Where no objection is interposed, the responses below reflect all responsive information and documents identified by Sheriff Weaver before the date of the responses, pursuant to a reasonable and diligent search and investigation conducted in connection with this discovery. To the extent the discovery purports to require more, Sheriff objects on the grounds that (a) the discovery seeks to compel him to conduct a search beyond the scope of permissible discovery contemplated by the Federal Rules of Civil Procedure, and (b) compliance with the discovery would be oppressive, and would impose an undue burden or expense.

Sheriff Weaver's discovery responses are also made subject to the ongoing discovery and trial preparation in this case. These discovery responses are made based on the best information, including facts available as of the date of such responses. Sheriff Weaver reserves the right to amend, supplement, or change these discovery responses as permitted or required under the Federal Rules of Civil Procedure based on additional information obtained through the discovery and trial preparation process.

Sheriff Weaver makes each individual response subject to and without waiving the conditions and objections that are stated in the sections of these responses entitled "General Objections" and "Objections to Instructions and

1

Definitions" and that are specifically referred to in that particular individual response.

Sheriff Weaver makes each individual response without adopting in any way (unless otherwise stated) the terms and phrases that Defendant purports to define in his discovery. When Sheriff Weaver uses words or phrases that Defendant has purported to define, those words and pshrases should be given either (a) the meaning set out by Sheriff Weaver in his responses, or in its objections to the specific definitions, or (b) the ordinary meaning of such words or phrases.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Defendant has purported to define several terms used in his discovery. In his responses, Sheriff Weaver gives ordinary words and phrases their ordinary meaning. By making this written response, Sheriff Weaver does not (a) adopt any purported definition, (b) waive or limit its objections to Defendant's purported definitions, or (c) concede the applicability of any such definition to any term or phrase that might be contained in written responses. Wherever these words are used in Defendant's interrogatories, these objections and these clarifications are incorporated, unless otherwise specified in the request.

Defendant purported to define "you" and "your" to include "counsel for Plaintiffs." Sheriff Weaver objects to this definition to the extent that it purports to require the disclosure of information, communications, or documents protected from disclosure by the attorney-client privilege, work product immunity, or any other privilege or immunity.

**RESPONSES**

1. With respect to each and every home invasion or "robbery in the home" to which your department has responded since January 1, 2004, please:

    a. describe the circumstances surrounding the home invasion/robbery in the home, including: the date and location (by city and county), the number of perpetrators involved, whether or not the perpetrator(s) carried firearms, and whether or not the perpetrator(s), victim(s), or others fired any shots;

**Response:**

We object to the questions in Interrogatory 1 and to the related request for production of documents. The Douglas County Sheriff's Office has records for 3,419 burglaries during the relevant time period. We have no means of identifying which of those involved firearms use, by suspects or victims, without reading every

2

incident report page by page. This would be unduly burdensome, and significantly interfere with the Office's law enforcement duties.

Based on discussions with commissioned staff, one incident was recalled:

2013-00073838. August 9, 2013. About 2118 hours, dispatch aired a kidnapping in progress at (Open Investigation). The victim was taken out of his house at gun point and forced to drive to an unknown location off (Open Investigation) Road. The victim was then released and drove back home where he called the Sheriff's Office.

He had been awakened to a loud bang followed by three to four men all dressed in black with black bandanas covering their faces wearing latex gloves standing in his bedroom. Two men had hand guns and one had a rifle. They started yelling at him as they were looking for someone and where was the money? The gun men ordered him to put on his clothes then took him and son to his car parked in the driveway. He was ordered to drive the car as one gunman sat in the front passenger seat and one sat behind him. At one point the two gun men exited his car and got into the SUV and the Mercedes and sped off. He went home and called the Sheriff's office.

> b. if a firearm was fired or otherwise used or displayed by any person, identify who used, displayed, or discharged the firearm, the manner in which they did so, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:** Sheriff Weaver objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous. Subject to and without waiving this objection:

As described and answered above.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**

None known.

2. With respect to each and every occasion when you, your predecessor(s) in office, or a sheriff's deputy has discharged a firearm in the course of duty since January 1, 2004 (not including firearm practice or training), please:

3

a. describe the circumstances surrounding the firearm discharge, including the date, location (by city and county), the reason for the firearm discharge, and whether you, your predecessor(s), or deputy were fired upon;

**Response:** Sheriff Weaver objects to this interrogatory on the ground that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection,

CONFIDENTIAL:

| Type of person | Name | Incident date | Gun type | Caliber | Shots fired | Results/notes | Location |
|---|---|---|---|---|---|---|---|
| Officer | Deputy Greg Black | 1/6/2004 | Pistol | .40 | 2 | 1-missed and 1 hit | CPN 7284 Lagae Road, King Soopers |
| Suspect | Former Deputy Eric Ostrowski White | | Pistol | .45 | multiple rounds | Suspect died later in custody of a blood clot | |
| Suspect | Donald Price | | | | | | |
| Officer | Deputy Tom Bruton | 2005 | Glock model 36 | .45 | 1 | Drug investigation. Deputy shot at driver of a car that was trying to run him over. | Roxborough |
| Suspect | Kevin McKnight | | | | | | |
| Officer | SWAT (Super 8) | 8/4/2007 | | | 32 | (Serve a search warrant for homicide) Multi-Agency. 32 total rounds-28 hit the target. | 6230 Pine Lane (Super 8), Parker |
| | Deputy Goolsby - negotiator | | Pistol | .45 | 3 | 22 other rounds between several officrers were fired outside of the 2 negotiators. | |
| | Deputy Garza - negotiator | | Pistol | .40 | 7 | | |
| | Deputy Pfannenstiel | | Rifle | .223 | | | |
| | Officer Tarr - PPD | | | | | | |
| | Officer Skinner - PPD | | | | | | |
| Suspect | Ronald Talmedge | | Ruger GP-100 | .357 | 0 | | |
| | | | Sig Sauer P229 | .40 | 1 | Did not hit any Officers | |
| Officer | Deputy Kevin Nichols | 2/5/2010 | Pistol | .45 | 3 | | Castle Rock - Caprice Street |
| | Deputy Jason Jarrett | | | | | | |
| Suspect | Reese Slade | | Pistol | .22 | 0 | Bullet fragment hit Slade in the head | |
| Officer | Deputy Mike Garcia | 8/8/2010 | Colt 1911 | .45 | 13 | 26 rounds fired total by Deputy & Suspect. Deputy was hit with 1 bullet right side tricep Deputy fired 13 rounds total. Fired 9 and then reloaded. | Hwy 83 & Bayou Gulch, Parker |

4

| Suspect | Suspect Richard Anderson | Sig Sauer P226 | 9mm | 13 | Suspect was hit by 2 rounds. 1 in the chest, 1 in the throat |
|---|---|---|---|---|---|

Explanation of document production:

b. if a firearm was fired by any person involved in the event, identify who fired the firearm, whether the firearm used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired by each individual, and whether any person was shot;

**Response:** Sheriff Weaver objects to this interrogatory on the ground that the word "event" is vague. Subject to and without waiving this objection:

The answers are provided in the chart above.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**

The answers are provided in the chart above.

3. With respect to the allegations of paragraph 102 of the First Amended Complaint (doc. #22), describe every instance since January 1, 1973 in which you or your predecessors in office requested the armed assistance of able-bodied adults ("posse comitatus"). In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms in connection with their participation;

**Response:**

We were not able to gather any specific case reports regarding a posse.

As told to me by Lt. Larry Noble of the Douglas County Sheriff's Office and member since 1975:  In 1975, we had a "reserve organization" and "Special Deputies" which were both reserves but different groups.  The "Special Deputies" would sometimes

5

be called out in the middle of the night.  They were used for backup on a call if needed.  At the time we only had 1 deputy working the road (patrol) per shift.  The reserves at the time were ranchers and most of them had horses.  Douglas County Sheriff's Office also had a "posse", which was an organized group mostly used for events.  So at the time there were three groups of reserve type deputies.
One recollection was that the posse was called out once for a search and rescue in the mountains because the posse were also ranchers who had horses and could search by horseback.

During Sheriff McKinster's (1972-1982) third term, Sheriff Miller at Arapahoe Sheriff's Office did away with the reserves.  Sheriff McKinster of Douglas County created another group of reserves who drove four wheel drive vehicles. These were the reserve deputies from Arapahoe County Sheriff's Office that still wanted to serve.  These reserve deputies used their own vehicle and fuel.  They mostly patrolled the river area.

All of these reserve type deputies provided their own vehicle, fuel, firearm, ammunition.  The firearm most used was either a .38 or .357,

When Sheriff Zotos (1983-2002) became Sheriff the posse was dissolved.  The special deputies group and the four wheel drive group all dissolved.  Sheriff Zotos created just one group which was called  "Reserve Deputies" that is still in place today.  The reserve deputies are commissioned.


b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

**Response:**

We do not have records or knowledge of such incidents.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

We do not have records or knowledge of such incidents.


**Response:**

6

4. With respect to the allegations of paragraph 103 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 when you or your predecessors appointed deputies who were not certified peace officers. In your response, state in detail:

a. the date and duration of each individual's appointment, the circumstances surrounding the need for the "non-certified" deputy, whether the non-certified deputy was required to carry a firearm, whether the "non-certified" deputy carried a firearm he/she supplied or a firearm supplied by the sheriff's office, and whether any non-certified deputy ever discharged a firearm;

**Response:**

Since 2004 all Douglas County Sheriff's Office Reserve Deputies are required to be Reserve P.O.S.T. Certified or fully P.O.S.T. Certified.

All of our Reserve Deputies are required to carry the same equipment. All Reserve Deputies are required by Colorado State Statute to be certified in firearms proficiency with the same frequency and subject to the same requirements as a full-time deputies in the Sheriff's Office.

We currently have 7 Reserve Deputies. There is no end date to their appointment to be a Reserve with Douglas County.

b. the circumstances surrounding the discharge of the non-certified deputy's firearm, including: the date and location of the event, whether the non-certified deputy was fired upon, the number of rounds fired by the non-certified deputy, the number of rounds fired by others involved in the event, the capacities of magazines from which bullets were fired, and whether any individual was shot;

**Response:**

None.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**

None.

5. Describe every occasion since January 1, 2004 when you, your predecessor sheriff(s), a sheriff's deputy, or a family member living with these individuals has

7

discharged or otherwise used or displayed a firearm in defense of self, home, or other family members. In your response, describe the circumstances surrounding each event, including: the events leading to the use, display, or discharge of the firearm, the number of rounds fired by you or others, and the capacity of magazines used by firearms that were discharged. If any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:** Sheriff Weaver objects to this interrogatory on the ground that the phrase "otherwise used or displayed" is vague and ambiguous. Subject to and without waiving this objection:

We have no records or knowledge of any display or use of a firearm by a sheriff, deputy, or family member in defense of self, home, or other family members

6. With respect to the allegations of paragraph 105 of the First Amended Complaint (doc. #22), describe every instance since January 1, 2004 in which you or your predecessors in office requested armed citizen assistance for emergencies and natural disasters. In your response, state in detail the circumstances surrounding each such request, including:

a. the reason for the request, the number of individuals who responded to the request, and whether such individuals were law enforcement officers or were deputized for the purposes of participating, and whether these individuals were required by you or your predecessors to carry firearms;

**Response:**

We have not specifically requested armed citizen assistance for emergencies or natural disasters.

The Colorado Mounted Rangers provided road block assistance to the Douglas and Jefferson County Sheriff's Offices on the forest service roads during the Lime Gulch Fire. They are strictly a volunteer organization. They are not directly under the Douglas County Sheriff's Office.

b. whether any individual who responded to the request to assist law enforcement or any individual(s) they encountered while assisting law enforcement discharged a firearm. If shots were fired, state the circumstances surrounding the discharge of the firearm(s), including: who discharged a firearm, whether the firearm(s) used a magazine, the capacity of any magazines from which bullets were fired, the number of rounds fired, and whether any person was shot;

8

**Response:**

None.

c. if any person was shot, identify the individuals who inflicted and suffered any gunshot injuries and state whether any individual was killed.

**Response:**

None.

**AS TO OBJECTIONS:**

s/David B. Kopel
INDEPENDENCE INSTITUTE
727 E. 16th Avenue
Denver, CO 80203
Phone: (303) 279-6536
Fax: (303) 279-4176
david@i2i.org

**ATTORNEY FOR SHERIFFS AND DAVID STRUMILLO**

**AS TO RESPONSES:**

Pursuant to 28 U.S.C. § 1746, I, David Weaver, do hereby verify under penalty of perjury that the foregoing responses to Defendant's Interrogatories are true and correct to the best of my information and belief.

Dated this 21st day of August, 2013.

_____
s/Sheriff David Weaver

9