IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01300-MSK-MJW

John B. Cooke, Sheriff of Weld County, Colorado, *et al.*

    Plaintiffs,

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

    Defendant.

---

## REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLAIMS TWO, THREE, AND FOUR, AND TO DISMISS SHERIFFS AS PLAINTIFFS ACTING IN THEIR OFFICIAL CAPACITIES.

---

**COMES NOW** Defendant, Governor John Hickenlooper, by and through undersigned counsel, states as follows in support of his Motion to Dismiss Plaintiffs' Claims Two, Three, and Four, and to Dismiss Sheriffs as Plaintiffs Acting in Their Official Capacities [Doc. 69] (filed on 8/22/13):

### INTRODUCTION

This is not a Court of general jurisdiction. In order to invoke federal jurisdiction, Plaintiffs must establish standing under the Article III, section II prerequisite of case or controversy. In their responses, Plaintiffs propose an extraordinarily inclusive view of standing. Plaintiffs ask this Court to adjudicate Claims Two, Three, and Four because this Court must *assume* they face a credible threat of prosecution. They also insist that the Governor's affirmative assurance

regarding the reach of the challenged legislation, issued through the Additional

Technical Guidance, stops short of overcoming that presumption. In so doing,

Plaintiffs get the law backwards. Plaintiffs bear the burden of establishing

standing. And as explained in detail in the Motion to Dismiss, Plaintiffs have not

done so here. This Court should dismiss Claims Two, Three, and Four.

Plaintiffs' argument that Sheriffs should not be dismissed through their

official capacities under the political subdivision doctrine fares no better. Plaintiffs

strain to dissuade this Court from reaching the issue by arguing that it will have no

practical effect on the litigation. But that argument ignores that the political

subdivision doctrine is jurisdictional and must therefore be considered. On the legal

merits, Sheriffs assert that the political subdivision doctrine does not apply because

they have a "personal stake" through their official capacities. The Tenth Circuit has

already rejected that argument. Therefore, because Sheriffs are a political

subdivision of the State of Colorado, this Court should dismiss Sheriffs from this

case to the extent they are acting through their official capacities.

## ARGUMENT

### I.   Plaintiffs have not established a real and immediate threat of prosecution to merit standing on Claims Two, Three, and Four.

Plaintiffs have not established a credible threat of prosecution. As explained

in the Motion to Dismiss, Plaintiffs' claim of a real and immediate threat of

prosecution is far too speculative for the Court to allow Plaintiffs to seek declaratory

relief. And even if Plaintiffs assert more than a conjectural fear of prosecution, the Governor's Additional Guidance has resolved the issue. This Court should dismiss Claims Two, Three, and Four.

### A. Plaintiffs effectively concede they are unable to establish a credible threat of prosecution.

Although "standing for retrospective relief may be based on past injuries, ... claims for prospective relief require a continuing injury." *PeTA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002). In particular, "[t]o have standing, [a plaintiff] must show a real and immediate threat that [he or she] will be prosecuted under [the challenged statute] in the future." *Faustin v. City & County of Denver*, 268 F.3d 942, 948 (10th Cir. 2001).

Quite apart from establishing that they face a real and immediate threat of prosecution, Plaintiffs instead insist that "courts assume a credible threat of prosecution in the absence of compelling contrary evidence." Pls.' Resp. to Def.'s Mot. to Dismiss [Doc. 69], at 4. According to Plaintiffs, "[t]he lack of enforcement of a particular statute alone does not automatically preclude standing." Doc. 69, at 4. In their view, therefore, "if a plaintiff alleges that prosecution is even 'remotely possible,' then a finding of standing is appropriate." Doc. 69, at 4. Precedent rejects Plaintiffs' position at every turn.

At the outset, Plaintiffs' argument ignores their burden. "One of the most important doctrines within" the case or controversy requirement is the doctrine of standing, which "focuses upon whether a particular litigant is entitled to have a

federal court decide the merits of the particular dispute." *Raiser v. United States*, 325 F.3d 1182, 1183 (10th Cir. 2002). Indeed, "[t]o have standing, *a plaintiff bears the burden* of showing that (1) he suffered an injury in fact that is (a) concrete and particularized and (b) actual and imminent, not merely conjectural or hypothetical; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable decision is likely to redress his alleged injuries." *Hammer v. Sam's E., Inc.*, No. 12-cv-2618-CM, 2013 U.S. Dist. LEXIS 98707, at **4–5 (D. Kan. Jul. 16, 2013) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000)) (emphasis added).

Second, Plaintiffs' focus on the statute's age only serves to highlight the fundamental deficiency with their position: they are unable to meet their threshold burden of establishing a credible threat. Plaintiffs contend that because "HB 1224 has only been in effect for approximately seven weeks [it] mitigates in favor of finding a credible threat of prosecution." Doc. 69, at 7. That argument is beside the point. What matters is that Plaintiffs have never been arrested or threatened with arrest.

Third, Plaintiffs wrongly persist that if "a plaintiff alleges that prosecution is even 'remotely possible,' then a finding of standing is appropriate." Doc. 69, at 4 (citing *Babbit v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979)). Although Plaintiffs seize on dictum, the full line from *Babbit* does not go that far. Instead, it simply states that "[w]hen plaintiffs 'do not claim that they have ever been threatened with

prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Id.* (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)). Worse still, Plaintiffs' argument ignores that in *Younger*, the Court reversed the district court's judgment that a state law was unconstitutionally vague because plaintiffs lacked standing in part because "of the relative remoteness of the controversy." 401 U.S. at 53.

Fourth, Plaintiffs err in relying on *Babbit* and *Virginia v. American Booksellers Association*, 484 U.S. 383 (1988). Doc. 69, at 4. Both cases involved suits invoking First Amendment rights and, as *Booksellers* explained, criminal statutes infringing on First Amendment rights leads to "self-censorship, a harm that can be realized even without an actual prosecution." 484 U.S. at 393; *see Babbit*, 442 U.S. at 301 (explaining that the plaintiffs sought standing on the ground that "they must curtail their consumer appeals, and thus forgo full exercise of what they insist are their First Amendment rights"). Therefore, in both cases, the plaintiffs were able to demonstrate an actual injury *without* establishing a credible threat of prosecution. *See Am. Booksellers Ass'n.*, 484 U.S. at 393; *Babbit* 442 U.S. at 303 (reasoning plaintiffs demonstrated an injury for standing purposes because "it is clear that appellees desire to engage at least in consumer publicity campaigns prohibited by the Act").

Accordingly, nothing in *Babbit* or *Booksellers* helps Plaintiffs establish standing. At first cut, the standing requirements used in First Amendment cases

only apply to cases invoking First Amendment rights. *NRA of Am. v. Magaw*, 132 F.3d 272, 294 (6th Cir. 1997) ("Except for cases involving core First Amendment rights, the existence of a chilling effect has never been considered a sufficient basis, in and of itself, for prohibiting government action.") (internal quotation marks and citation omitted)); *see also D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004) (refusing to review under the standing standards for First Amendment claims because plaintiff "has not established such an injury"). Regardless, even assuming that a plaintiff may establish standing outside the First Amendment context by alleging that a criminal statute has chilled constitutionally protected conduct, Plaintiffs fail to meet that test in this case. Plaintiffs do not assert that the alleged vagueness in the statute has chilled their Second Amendment right. To the contrary, Plaintiffs explicitly state that they "*will continue to engage* in the conduct that is potentially criminalized under HB 1224 and subject to prosecution under the same." Doc. 69, at 5 (emphasis added).

In the end, therefore, Plaintiffs' claim that they "will continue to engage in the conduct that is potentially criminalized" only serves to belie their claim that they face a credible threat of prosecution. Doc. 69, p. 5. Rather, Plaintiffs' request "to anticipate whether and when these [plaintiffs] will be charged with crime . . . takes [the Court] into the area of speculation and conjecture." *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). As Plaintiffs have not demonstrated any credible threat of

prosecution, they lack Article III standing to assert Claims Two, Three, and Four even without considering the Additional Technical Guidance.

### B. Plaintiffs' attempt to manufacture factual disputes where there are none under the Additional Technical Guidance fail.

As explained in the Motion to Dismiss, the Additional Technical Guidance was issued as a compromise to directly resolve and address the grounds raised in Plaintiffs' request for a temporary injunction that are identical to those they assert in their request for declaratory relief. Doc. 69, at 3. To obtain a preliminary injunction, a moving party must establish that they will suffer irreparable injury unless the injunction issues. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Considering the Technical Guidance obviated Plaintiffs' concern that the legislation would create irreparable injury, there is no basis to reason that the Technical Guidance does not also satisfy the lesser standard of actual injury required for standing.

Surprisingly, Plaintiffs now assert for the first time that the Additional Technical Guidance "left a significant delta between defendant's position and Plaintiffs' second, third, and fourth claims." Doc. 69, at 18–19. Plaintiffs argue that the Additional Technical Guidance fails to resolve four remaining issues. Doc. 69, at 19–21. They are wrong.

Initially, Plaintiffs assert that the statute's ban on magazines designed to be "readily converted" to hold 15 or more bullets could be ambiguous for magazines

that hold less than 15 bullets because "if the determination to be made is based not on whether a detachable box magazine is capable of being . . . converted to accept more than 15 rounds . . . but instead, [on whether] it has objective features that are specifically designed to make it readily convertible . . ." Doc. 69, at. 19 (internal citation omitted). Plaintiffs fail to explain how that makes the law vague. Regardless, Plaintiffs' alleged ambiguity is resolved by the Additional Technical Guidance, because it expressly provides that "[m]agazines with a capacity of 15 or fewer rounds are not large capacity magazines as defined" in the legislation "[w]hether or not they have removable base plates." Doc. 59, at 1.

Next, Plaintiffs assert that *under* the Additional Technical Guidance, HB 1224 will be "very difficult to enforce." Doc. 69, at 20 (emphasis added). Although Plaintiffs argue it is practically difficult for a law enforcement officer to determine whether a magazine—despite its marking—actually holds more than 15 rounds of ammunition, there is nothing vague about the statute's prohibition of magazines holding more than 15 rounds of ammunition. Rather, to the extent Plaintiffs are correct that law enforcement will have difficult time enforcing HB 1224 under the Additional Technical Guidance, their argument only demonstrates that the Additional Technical Guidance clearly defines the law.

Plaintiffs also assert that the Additional Technical Guidance fails to cure the alleged ambiguity prohibiting magazines "capable of accepting" more than 15 rounds because some rifles "will accept 13 rounds of one caliber may accept 18

rounds of a compatible shorter caliber." Doc. 69, at 20–21. But Plaintiffs only highlight that the statute is not vague. Indeed, they precisely identify what they believe the law prohibits.

Last, in regards to HB 1224's grandfather clause, Plaintiffs baldly submit that the Additional Technical Guidance fails to cover "the problem, described in the Second Amended Complaint and in other pleadings, of a grandfathered magazine owner who leaves the state and entrusts the magazine to a friend or neighbor for safe storage, a magazine with another person at a shooting event in which both were participating." Doc. 69, at 21. Yet under the Additional Technical Guidance, "continuous possession" is "only lost by a voluntary relinquishment of dominion and control." Doc. 59, at 2. Therefore, Plaintiffs' hypothetical owner who leaves a magazine in the control of a friend or shooting participant but without relinquishing dominion would not forfeit the Grandfather clause under the Additional Technical Guidance.

In sum, none of Plaintiffs' alleged ambiguities equate to a credible threat of prosecution, let alone any threat at all.

> **C.  Plaintiffs offer no reason why this Court should not credit Tenth Circuit precedent and hold that the Additional Technical Guidance forecloses any credible threat of prosecution.**

Plaintiffs alternatively argue that even if the Additional Technical Guidance covers their concerns, it "cannot wash away the credible threat of prosecution that

exists and continues to exist while HB 1224 remains in force because**,** although entitled to respect, formal attorney general opinions are not binding upon the court or law enforcement in general." Doc. 69, at 6. But that argument simply ignores controlling Tenth Circuit precedent. In the context of an affirmative assurance, "the 'possibility' of future enforcement need not be 'reduced to zero' to defeat standing . . . [because] it is 'not necessary for defendants [] to refute and eliminate all possible risk that the statute might be enforced' to demonstrate a lack of a case or controversy." *Mink v. Suthers*, 482 F.3d 1244, 1255 (10th Cir. 2007) (quoting *Winsness v. Yocom*, 433 F.3d 727, 731 (10th Cir. 2006)).

Plaintiffs also fail to offer a persuasive response to this Circuit's cases holding that a plaintiff fails to meet the credible threat requirement when there are affirmative assurances of non-prosecution from a governmental actor responsible for enforcing the challenged statute. *See Bronson v. Swensen*, 500 F.3d 1099, 1111–12 (10th Cir. 2007); *D.L.S.*, 374 F.3d 971; *Mink*, 482 F.3d 1244. Plaintiffs argue that *Bronson* and *D.L.S.* are distinguishable because the defendants expressly stated that the challenged statues would not be enforced against the plaintiffs. Doc. 69, at 8. In a similar vein, Plaintiffs contend *Mink* is inapplicable because the plaintiff in that case "admitted that he could not constitutionally prosecute the plaintiff." Doc. 69, at 9. But an assurance, such as here, that a statute does not apply to the conduct at all, is more compelling than an assurance that a person will not be prosecuted for conduct that is covered by a statute. Indeed, as even Plaintiffs

acknowledge in *Faustin*, the Tenth Circuit has found no credible threat "based on the city's prosecutor's determination that the plaintiff did not, in fact, violate the city's sign-posting ordinance." Doc. 69, at 9 (citing 268 F.3d 942, 948 (10th Cir. 2001)).

Additionally, as explained in the Motion to Dismiss, the Additional Technical Guidance provides for an affirmative defense. *See* Colo. Rev. Stat. § 18-1-504(2)(c). Plaintiffs' argument that the affirmative defense has no bearing on whether they face a credible threat of "potential prosecution" misunderstands Colorado law. Doc. 69, at 12. In Colorado, an affirmative defense "becomes an additional element" of the crime and the prosecution must "prov[e] beyond a reasonable doubt that the affirmative defense is inapplicable." *People v. Pickering*, 276 P.3d 553, 555 (Colo. 2011). Thus, Plaintiffs are undoubtedly wrong in arguing that the affirmative defense created by the Additional Technical Guidance is irrelevant to the question of whether Plaintiffs face a credible threat of prosecution. Under state law, a person acting in compliance with the Additional Technical Guidance would not meet the elements of the crime now set forth in HB 1224.

### D. Plaintiffs' attempt to assert standing based on past or future economic loss is unavailing.

Plaintiffs also fail to save their vagueness claims by invoking alleged economic losses of the firearms dealers and the Family Shooting Center. As explained in detail above, Plaintiffs have failed to establish that they face any credible threat of prosecution. For the same reasons, therefore, the firearm dealers

and the Family Shooting Center are foreclosed from arguing that they will suffer economic harm because their customers will not buy or use their services in fear of a credible threat of prosecution that does not exist.

In any event, Defendant does not challenge the standing of these or any Plaintiffs other than the 55 Sheriffs through their official capacities, to challenge HB 1224's prospective prohibition of magazines holding *more* than fifteen rounds. The only economic loss that could constitute an injury-in-fact for the challenged vagueness claims would be future lost sales of magazines capable of accepting no more than 15 rounds. Yet Plaintiffs concede the Second Technical Guidance Letter has "abated those economic injuries." Doc. 69, at 14.

To the extent that Plaintiffs argue they have standing because they have *already* suffered economic loss, past economic loss is not a continuing injury. *Rasmussen*, 298 F.3d at 1202 (holding that claims for prospective relief "require a continuing injury"). Plaintiffs also do not seek damages. As such, the declaratory judgment they seek would in no way redress any of their past economic losses, and Plaintiffs have not established standing. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 75 n.20 (1978) (in order to satisfy the "redressability" requirement for standing, a plaintiff must show that there is at least a "'substantial likelihood' that the relief requested will redress the injury claimed . . . ."); *accord Baca v. King*, 92 F.3d 1031, 1036 (10th Cir. 1996).

**E.    In the event this Court agrees with Plaintiffs that the Additional Technical Guidance does not apply to law enforcement, Plaintiffs necessarily establish that their claims are not redressable.**

Plaintiffs do not seriously engage Defendant's argument that to the extent they stake their claim for standing on the notion that law enforcement agencies are not bound by the Governor's Additional Technical Guidance, Plaintiffs should have included those agencies in this suit. *See Bronson,* 500 F.3d 1099. Instead, Plaintiffs simply proclaim that under *ACLU v. Johnson*, 194 F.3d 149 (10th Cir. 1999), a declaratory injunction against Defendant "will bind all district attorneys and therefore redress Plaintiffs' alleged injuries." Doc. 69, at 17. In *Johnson*, the Tenth Circuit determined that an injunction against the Governor and the Attorney General of New Mexico could extend to the state district attorneys. 194 F.3d at 1163.

*Johnson* necessarily holds that New Mexico's district attorneys are either officers, agents, servants, employees, or attorneys of their governor, or are in active concert or participation with him. *Id.* (quoting Fed. R. Civ. P. 65(d)). While Defendant maintains that Colorado's district attorneys exercise independent authority, Plaintiffs nonetheless lack standing. There cannot exist both a credible threat of prosecution and an injury fairly traceable to and redressable against this particular Defendant. An injunction or declaratory judgment against the Governor only could bind Colorado's district attorneys and local law enforcement agencies if,

13

as in New Mexico, those entities are the Governor's officers, agents, servants, employees, or attorneys, or are in active concert or participation with him. The Governor's additional Technical Guidance, then, would foreclose any credible threat of prosecution. Plaintiffs cannot escape this reality. Either the district attorneys and local law enforcement agencies are bound, or they are not. If they are, the Governor's Technical Guidance controls and there is no actual and imminent injury. If they are not bound, the Governor as the only named Defendant cannot redress Plaintiffs' alleged injury.

## II. The Political Subdivision doctrine applies here.

The rule is that a political subdivision may not challenge the validity of an act by a fellow political subdivision. While Sheriffs present a flood of arguments contending they have standing, those arguments ignore that those inquiries are irrelevant if the political subdivision doctrine applies. Because Sheriffs are a political subdivision, and considering that the political subdivision doctrine applies to this case, this Court should bar the 55 Sheriffs from bringing suit through their official capacities.

### A. The political subdivision doctrine is jurisdictional and must be considered.

In an attempt to avoid the application of the political subdivision doctrine, Sheriffs argue that "this Court need not decide whether Sheriffs have standing through their official capacity," because other plaintiffs "clearly have standing to raise all the claims at issue." Pls.' Opp. to Def.'s Mot. to Dismiss [Doc. 70], at 3. To

support its argument, Sheriffs point to the Colorado Attorney General's Brief in the

Affordable Care Act litigation arguing that Colorado's standing "was irrelevant,

since other plaintiffs had standing." Doc. 70, at 3.

That analogy offers no help to Sheriffs' argument. As a factual matter, unlike

the instant case, the State of Colorado was not a political subdivision of the Federal

Government in the Affordable Care Act litigation. Regardless, the political

subdivision doctrine is independent from prudential standing inquiries. *See, e.g.,*

*Bd. of County Comm'rs v. Geringer*, 297 F.3d 1108, 1112–13 (10th Cir. 2002).

"Under the doctrine of political subdivision standing, federal courts lack jurisdiction

over certain controversies between political subdivisions and their parent states."

*City of Hugo v. Nichols*, 656 F.3d 1251, 1255 (10th Cir. 2011) (citing *Branson Sch.*

*Dist. RE-82 v. Romer*, 161 F.3d 619, 623 (10th Cir. 1998)). Therefore, as an initial

matter, this Court must consider whether the political subdivision doctrine bars

Sheriffs from bringing suit through their official capacities.

### B.   A political subdivision does not have standing simply by having a personal stake.

The majority of Sheriffs' standing arguments turn on their contention that

the political subdivision doctrine does not apply when a political subdivision

establishes a "personal stake." Relying on what they term the "*Allen* rule," Doc. 70,

at 7, Sheriffs assert they have standing through their official capacities because

they have a personal stake in:  (1) adhering to their oath of office; (2) preserving

*posse comitatus*; (3) not having to do background checks before transferring

weapons; and (4) effectively performing the duties of their office. Doc. 70, at 7, 8–15, 16–21, 22–25, 26–37. In a footnote in *Board of Education v. Allen*, 392 U.S. 236, 242 n.5 (1968), the majority explained that though there was no challenge to the standing of the school board member Appellees (presumably a political subdivision), they had standing because "they are in the position of having to choose between violating their oath and taking a step—refusal to comply with [the challenged statute]—that would be likely to bring their expulsion from office and also a reduction of funds for their school districts. 392 U.S. at 242 n.5.

As a factual matter, nowhere in the opinion is the political subdivision doctrine ever mentioned. Thus, it is by no means clear that the *Allen* court intended to carve out an exception to the political subdivision doctrine. More fundamentally, *Allen* never stated that the school board members had standing through their *official capacities*. Plaintiffs' reliance on *Allen* to argue that they have standing through their official capacity is entirely misplaced.

Regardless, Plaintiffs' argument fails on the already-invalidated reading of *Allen* they rely upon. Recently, the Tenth Circuit determined that standing in *Allen* was based on "the individual board members' personal stake in losing their jobs." *Hugo,* 656 F.3d at 1256; *see* Doc. 70, at 7 (acknowledging same). As Sheriffs cannot, and have not, asserted that compliance with HB 1224 and HB 1229 will result in their termination from office, Sheriffs' laundry list of "personal stake" claims do nothing to stop the application of the political subdivision doctrine.

### C.      Sheriffs are political subdivisions of the state.

Sheriffs also attempt to brush aside the political subdivision doctrine by arguing that they are not a political subdivision of the state. Counties are political subdivisions of the state. Although Sheriffs insist they are not an officer of the county because a "Sheriff [and not the county] has plenary authority over the hiring, firing, and retention of deputies," Doc. 70, at 42, the Colorado Constitution lists sheriffs as county officers. Colo. Const. Art. XIV, § 8 Under Colorado law, counties are political subdivisions of the state. *Beaver Meadows v. Bd. of County Comm'rs*, 709 P.2d 928, 932 (Colo. 1985); *Pennobscot, Inc. v. Bd. of County Comm'rs*, 642 P.2d 915, 918 (Colo. 1982); *Colorado State Bd. of Social Services v. Billings*, 487 P.2d 1110, 1112 (1971). And under the Colorado Constitution, a Sheriff's salary is to be paid by "fees, perquisites and emoluments of their respective offices, or from the general county fund." Colo. Const. Art. XIV, § 8.

Sheriffs also err in asserting they are not political subdivisions of the state because their offices were created by the People of Colorado. Doc. 70, at 40. Sheriffs have not explained, nor is Defendant able to determine, under what exact official capacity Sheriffs seek to bring their claims if they are not officers of the state. That argument ignores the principle that the political subdivision doctrine applies not only to a subdivision that is directly subject to another political subdivision, but a "political subdivision of a state may not challenge the validity of an act by a *fellow* political subdivision . . . ." *Housing Authority of Kaw Tribe of Indians v. Ponca City*,

952 F.2d 1183, 1190 (10th Cir. 1991) (emphasis added). Regardless, the People of Colorado, through the Colorado Constitution, *are* the State of Colorado. Colo. Const. Art. II, § 1 ("[a]ll political power is vested in and derived from the people; all government, of right, originates from the people . . ."); Colo. Const. Art. II, § 2 ("The people of this state have the sole and exclusive right of governing themselves, as a free, sovereign and independent state . . . ."). Thus, Sheriffs' argument presents no distinction at all. The political subdivision doctrine applies.

> **D.      Sheriffs remaining claims of third-party standing are not properly before the Court and are without legal foundation.**

In a last-ditch attempt to save standing through their official capacities, Sheriffs insist they have third-party standing. Specifically, Sheriffs argue that they have third-party standing to assert claims for the: (1) Colorado mounted rangers and potential posse members; (2) sheriffs and deputies who wish to purchase large capacity magazines; and (3) current and former Sheriffs who are disabled under the Americans with Disabilities Act. Doc. 70, at 30–37, 44–48. Those arguments fail as a matter of logic, procedure, and law.

As an initial matter, Sheriffs claim for third-party standing ignores that Defendant has not moved to dismiss Sheriffs through their individual capacities. Doc. 64, at 15 n.3. Defendant has never disputed that Sheriffs can bring the claims through their individual capacities. As such, the question of whether they have

third-party standing is irrelevant to whether they can bring suit through their official capacities.

Sheriffs' argument for third-party standing is further precluded as a procedural matter. Unlike a factual attack[1], a facial attack may not rely on documentary evidence outside the complaint. *See Paper, Allied-Industrial, Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292–93 (10th Cir. 2005). In the Second Amended Complaint, Sheriffs never mentioned the Colorado mounted rangers, the rights of posse members to be in a posse, or that sheriffs and their deputies would experience difficulty in purchasing standard capacity magazines. Sheriffs also never asserted that they were bringing claims on behalf of current and former employees that are disabled. The third-party interests Sheriffs raise for the first time in their Opposition to the Motion to Dismiss are not properly before the Court. *Compare* Doc. 62, ¶ 102–05 (asserting first-party standing for *posse comitatus*), *with, e.g.,* Doc. 62, ¶ 65 (asserting third-party standing on behalf of Women for Concealed Carry).

In any event, Sheriffs' claims are also readily divorced from the law. With respect to their claim for third-party standing on behalf of the Colorado mounted rangers and the employees of Sheriffs' departments who are purportedly having difficulty purchasing large capacity magazines, Sheriffs contend that "[w]hen a political subdivision meets the standard tests for third-party standing, the rule

---

[1] As expressly explained, the Defendant's argument requesting dismissal claims 2, 3, and 4 is brought as a factual attack. Doc. 64, p. 4.

against political subdivision standing does not apply." Doc. 70, at 29. But in support

of that claim, Sheriffs only cite *state cases* from California and Ohio addressing

whether the political subdivision doctrine applied as a matter of state law. Doc. 70,

at 29–30; *see*, e.g., *City of E. Liverpool v. Columbiana County Budget Comm'n*, 870

N.E.2d 705, 711–12 (Ohio 2007). But in Federal Court, political subdivisions may

not sue because the Fourteenth Amendment "was written to protect individual

rights, as opposed to collective or structural rights." *Branson*, 161 F.3d at 628.

Likewise, Sheriffs attempt to assert third-party standing under the American

with Disabilities Act and for potential posse members is missing the necessary legal

premise. "Third-party standing requires not only an injury in fact and a close

relation to the third party, but also a hindrance or inability of the third party *to*

*pursue his or her own claims*." *Terrell v. INS*, 157 F.3d 806, 809 (10th Cir. 1998)

(emphasis added). Here, several disabled Plaintiffs and the non-profit group

Outdoor Buddies are *already* plaintiffs in the suit. Doc. 62, at 19–12, 28–29. Thus,

as disabled plaintiffs are part of the suit, Sheriffs have not established that third-

party disabled citizens face a hindrance or inability to pursue their own claims. To

the extent Sheriffs belatedly assert they have third-party standing on behalf of

potential posse members, that argument suffers from the same defect: individual

citizens are plaintiffs in this case, and Sheriffs do not explained why they did not, or

could not have, raise that claim.

## CONCLUSION

For the reasons and authorities stated above, Defendant asks this Court to dismiss Claims Two, Three, and Four in Plaintiffs' Second Amended Complaint. Defendant also asks this Court to dismiss the 55 Sheriffs as Plaintiffs in their official capacities.

Respectfully submitted,

JOHN W. SUTHERS
Attorney General

*s/ John T. Lee*
**Daniel D. Domenico***
Solicitor General
**David C. Blake***
Deputy Attorney General
**Jonathan P. Fero***
Assistant Solicitor General
**Kathleen Spalding***
Senior Assistant Attorney General
**Matthew D. Grove***
Assistant Attorney General
*Counsel of Record
**John T. Lee***
Assistant Attorney General
*Counsel of Record
**Molly Moats***
Assistant Attorney General
*Counsel of Record

Attorneys for Governor John W. Hickenlooper
1300 Broadway, 10th floor
Denver, Colorado  80203
Telephone:  720-508-6000
*Counsel of Record

**CERTIFICATE OF SERVICE**

I hereby certify that on  August 5, 2013 I served a true and complete copy of the foregoing REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLAIMS TWO, THREE, AND FOUR, AND TO DISMISS SHERIFFS AS PLAINTIFFS ACTING IN THEIR OFFICIAL CAPACITIES upon all counsel of record including those listed below via the CM/ECF system for the United States District Court for the District of Colorado:

David B. Kopel                          david@i2i.org

Jonathan M. Anderson              jmanderson@hollandhart.com

Richard A. Westfall                   rwestfall@halewestfall.com
Peter J. Krumholz                     pkrumholz@halewestfall.com

Marc F. Colin                            mcolin@bcjlpc.com

Anthony J. Fabian                     fabianlaw@qwestoffice.net


                                              *s/ Jonathan P. Fero*