**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-CV-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, Colorado *et al.*,

      Plaintiffs

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

      Defendant.

---

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

---

Plaintiffs, by and through their counsel, file this Response to Defendant's Motion for Protective Order. For the reasons set forth below, the Motion should be denied.

## <u>INTRODUCTION</u>

Defendant contends that he is immune from having his deposition taken in this matter. He is wrong. The deposition of a high-ranking government official may be taken where, as here, the case involves a matter of exceptional public and constitutional importance and the government official is the only one with personal knowledge of the matters on which Plaintiffs seek to depose him. Defendant's cases to the contrary are inapposite.

Plaintiffs assure this Court that the purpose of their request to depose the Governor is not to harass or attract public attention. The nexus between a legitimate public safety goal and challenged gun legislation is the core issue in this case, and the Governor, speaking for the State, has made statements, and perhaps taken actions, that bear directly on whether that nexus exists.

## ARGUMENT

Fed. R. Civ. P. 30 sets forth the applicable rules for the taking of depositions by oral examination.  Rule 30(a)(1) states that "[a] party may, by oral questions, depose **any person, including a party**, without leave of court except as provided in Rule 30(a)(2)."  (Emphasis added.)  Rule 30(a)(2), in turn, provides that a party must obtain leave of court to take a deposition under certain circumstances not applicable here.  Defendant is unquestionably a party to this case.  Accordingly, Defendant is a proper deponent in this case under Rule 30.  His arguments to the contrary are without merit.

## I.  HIGH-RANKING OFFICIALS MAY BE DEPOSED WHERE THE CASE INVOLVES A MATTER OF HIGH PUBLIC IMPORTANCE, AND WHERE OFFICIALS HAVE PERSONAL KNOWLEDGE OF THE MATTERS ON WHICH THE PLAINTIFF SEEKS TO DEPOSE THEM

"It has long been settled law that the Governor of a state is subject to the process of the federal courts for the relief of private persons."  *Hadnott v. Amos*, 291 F. Supp. 309, 310-311 (M.D. Ala. 1968) (citing *Sterling v. Constantin*, 287 U.S. 378 (1932)).  The case law indicates that high-ranking officials may be deposed where the case involves a matter of substantial public importance, and the officials have personal knowledge of the matters on which the plaintiff seeks to depose them.  The instant case easily meets both of these factors.

### A.  This Case Presents a Matter of Substantial Public and Constitutional Importance

In *Hadnott v. Amos*, the court held that the Governor of Alabama was subject to a deposition in a case involving "substantial federal constitutional questions," including whether

the Governor's actions deprived the plaintiffs of their constitutional rights.[1]   *Id.* at 310. Similarly, other courts have noted that in determining whether a high-ranking public official should be subject to deposition, the court should consider "the substantiality of the case in which the deposition is requested."   *Monti v. State*, 563 A.2d 629, 632 (Vt. 1989).

The "substantiality" factor sets this case apart from all of the cases cited by Defendant.  This case is of tremendous significance to the citizens of Colorado.   As the Plaintiffs, including the 55 Sheriffs, have detailed in their Second Amended Complaint and their briefs, the stakes in this case are of the highest constitutional importance.  Plaintiffs allege that HB 1224 and HB 1229 directly endanger the lives and safety of law-abiding citizens, including but hardly limited to retired Sheriffs' deputies who are disabled.  At the very least, the personal exercise of Second and Fourteenth Amendment rights of at least several hundred thousand of Coloradoans – more likely millions – has been seriously infringed by the bills which Defendant signed.   Additionally, the rights of tens of thousands of Coloradoans (at least) under the Americans with Disabilities Act are being violated.  The instant case raises sufficiently important constitutional questions to trump any assertion by Defendant that the press of his executive duties preclude the taking of his deposition.

---

[1]   The court so held despite the Governor's protest that his scheduled executive duties made it difficult to appear at the time and place specified in the notice of deposition.  The court noted: "The rules of this Court make provisions for such conflicts . . . in the event the attorneys cannot agree upon a convenient time, this Court will direct that the deposition be continued to a more convenient time for the Governor." *Id.* at 310; *see also Clinton v. Jones*, 520 U.S. 681, 691-92, 707 (1997) (holding that a civil rights claim of sexual harassment against the sitting President of the United States was required to proceed; "We assume that the testimony of the President, both for discovery and for use at trial, may be taken at the White House at a time that will accommodate his busy schedule . . . .").

**B.     Defendant Has Personal Knowledge of the Matters on Which Plaintiffs Seek to Depose Him**

In addition, Defendant's motion purports to rely upon case law standing for the proposition that "[h]igh-ranking government officials generally have immunity from being deposed in matters *about which they have no personal knowledge*."  Motion ¶ 8 (emphasis added).  Unlike the cases Defendant has cited, Plaintiffs here seek to depose Defendant on matters on which he, and only he, possesses personal knowledge.  *See Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) ("Depositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated.").

For example, Defendant has made a number of post-signing public pronouncements that go to the heart of the claims in this case and reflect the Defendant's concerns over the constitutionality of the bills at issue and the public benefits gained by those bills.  Regarding the latter, Defendant was quoted recently as making comments that would call into question the public benefits obtained by HB 1224.  (See Lynn Bartels, *et al.*, *Democrats Giron and Morse Ousted*," Denver Post, Sept. 11, 2013, at 11A (never "fired up" about the magazine ban).  Only Defendant can explain his statements questioning the benefits of HB 1224.

Defendant has also made post-enactment statements about facts that would support HB 1224 that appear to be demonstrably false.  *See, e.g.,* Defendant's recent assertions that 31% to 41% of law enforcement officers killed are killed with magazines that are prohibited under HB 1224.  Plaintiffs, particularly the Sheriffs, are entitled to explore the Defendant's demonstrably incorrect beliefs about public safety.

Regarding HB 1229, the Governor's office has made statements regarding that bill's impact on one of the Plaintiffs, Colorado Youth Outdoors ("CYO"), expressly stating that the bill

will not have any impact on the CYO's mission or operations.  See Attached.  Plaintiffs are entitled to explore the bases for the Governor's beliefs.

The above examples are by way of illustration, not a comprehensive summary of the Defendant's post-signing statements and actions about which Plaintiffs seek to inquire during a deposition.  Moreover, Defendant is in charge of the executive branch agencies of the State of Colorado.  This includes the Department of Public Safety, whose Divisions include the Colorado State Patrol, the Colorado Bureau of Investigation, and the Division of Criminal Justice.  In the deposition, the Plaintiffs would seek information about what instructions the Defendant has given the various executive branch agencies about enforcing HB 1224 and 1229; what the Defendant knows about how the executive branch actually is enforcing those bills; and similar topics.[2]

The extent to which these matters are within the personal knowledge of Defendant also means that there is no alternative source of this information. There is only one chief executive in the Colorado system of government; he, and he alone, knows how the chief executive is enforcing HB 1224 and 1229, and his statements may be the only ones that can constitute an opposing party's statement (formerly admission against interest) pursuant to Fed. R. Evid. 801(d)(2).  *Corporation for Character v. United States*, 2013 WL 949500 (D. Utah 2013) (plaintiffs did not need to depose Federal Trade Commission attorneys because they could obtain the same information from alternative sources).

---

[2]   To the extent the Defendant may respond that Plaintiffs have already propounded written discovery on these same subjects, no answers have been received.  But more importantly, although answers to written discovery may provide a framework for a deposition, they do not preclude further legitimate inquiry on the same subjects.

By way of contrast, the cases cited by Defendant involve attempts to depose high-ranking government officials where the officials have no personal knowledge and are not named parties in the lawsuit.  For example, in *In re United States*, 985 F.2d 510 (11th Cir. 1993), a criminal defendant sought to depose Dr. David Kessler, then the commissioner of the Food and Drug Administration.  The defendant asserted a defense of selective prosecution, but the court pointed out that Dr. Kessler was not the commissioner at the time the defendant was investigated and the case referred to the Department of Justice.  *Id.* at 512-13.  Accordingly, Dr. Kessler could not possibly have any personal knowledge concerning defendant's prosecution.  *Id.*  Similarly, in *Warzon v. Drew*, 155 F.R.D. 183 (E.D. Wis. 1994), the governor had submitted an affidavit swearing that "he has no relevant information or knowledge concerning the facts and issues of [plaintiff's] underlying civil lawsuit."  *Id.* at 185.  The court therefore reasonably concluded that the governor's deposition would be unlikely to lead to the discovery of admissible evidence.  *Id.* at 186.

## II. DEFENDANT'S CLAIMS OF "IMMUNITY" FROM DEPOSITION ARE WITHOUT MERIT

### A. Defendant's Qualified Immunity Cases Are Inapposite

Defendant fails to acknowledge that the cases cited in his motion involve the question of whether government officials are entitled to qualified immunity.  *See Sweeney v. Bond*, 669 F.2d 542, 546 (8th Cir. 1982) ("[t]he district court held that the Governor's qualified immunity protected him from deposition"); *Warzon v. Drew*, 155 F.R.D. at 185 (reciting *Sweeney* qualified immunity standard).  The *Sweeney* standard in turn, is based on *Halperin v. Kissinger*, 606 F.2d 1192 (D.C. Cir. 1979), which involved an assertion of qualified immunity in a suit for damages

against several federal officials. *See id.* at 1209 & n.120 (discussing both qualified and official immunity from suit).

Qualified immunity, which protects government officials from liability for civil damages, is not at issue here. Plaintiffs do not seek damages against Defendant, and Defendant has not asserted any sort of immunity from suit in this case. Indeed, pursuant to Colorado decisional law, Defendant is the proper defendant here "due to his constitutional responsibility to uphold the laws of the state and to oversee Colorado's executive agencies." *Ainscough v. Owens*, 90 P.3d 851, 858 (Colo. 2004).

**B.      Defendant's Argument Concerning His Asserted Legislative Role Is Irrelevant**

Defendant argues at some length that he cannot be deposed in this case because Plaintiffs seek to depose him concerning his role in signing the legislation at issue in this case. As discussed above, however, the personal knowledge that Plaintiffs seek here involves his ***post***-signing actions and pronouncements that relate to concerns over the constitutionality and alleged benefit to public safety afforded by the challenged legislation.

In addition, Defendant's adoption of inconsistent and confusing "Technical Guidance" letters is another matter on which Plaintiffs seek to depose Defendant. Does Defendant, the chief executive of this State responsible for enforcement of the law, have any understanding of the meaning of the terms in HB 1224, as interpreted in the Technical Guidance? Will he change his mind about the meaning of those terms if a future Attorney General writes a new round of Technical Guidance which contradicts the first two? These matters have nothing to do with the legislative process leading to the enactment of the laws, and everything to do with their subsequent enforcement.

7

Defendant also claims that his signing statement is considered part of the legislative process and therefore any discovery concerning his signing statement is also off-limits. The case he cites for that proposition, however, says nothing of the sort. In *Perez v. Rent-A-Center, Inc.*, 892 A.2d 1255 (N.J. 2006), the New Jersey Supreme Court observed that "'the action of the governor upon a bill may be considered in determining legislative intent.'" *Id.* at 1272 (quoting *Sutherland Statutory Construction*, § 48.05 (6th ed. 2000). At most, the *Perez* decision suggests that Defendant's signing statement calling for "technical guidance" is further evidence that the bills are hopelessly vague and confusing.

### C.      The Deliberative Process Privilege Does Not Apply

Defendant bears the burden of proof that he is entitled to the deliberative process privilege. *Moreland Properties, LLC v. City of Thornton*, 2007 WL 2523385 at *3 (D. Colo. 2007); *see also Colorado Springs v. White*, 967 P.2d 1042, 1053 (Colo. 1998). Defendant cannot carry that burden, for two reasons.

First, the deliberative process privilege protects government decision makers from having to disclose communications among government officials which are "critical to the government's decision making process." *Id.* at 1051. The privilege "'serves to assure that subordinates within an agency will feel free to provide the decision maker with their uninhibited opinions . . . without fear of later being subject to public ridicule or criticism.'" *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). Thus, application of the privilege contemplates that the material sought to be discovered, through deposition or otherwise, has not already been made public. In addition, in light of the purposes for the privilege, "post-decisional

documents, communications made after the decision and designed to explain it, are not protected." *Colorado Springs v. White*, 967 P.2d at 1051.

Here, Plaintiffs do not seek to depose Defendant concerning private and heretofore undisclosed statements he might have had made to his staff concerning his decision to sign the bills. Rather, Plaintiffs seek to depose Defendant concerning the meaning of statements he has made publicly. Moreover, those public pronouncements all post-date Defendant's decision to sign the bills. In addition, Plaintiffs are seeking to depose Defendant about *how* Defendant has been enforcing HB 1224 and 1229. They seek to ask questions about the facts of enforcement, rather than who helped Defendant make any particular decision about enforcement. The deliberative process privilege clearly has no application under these circumstances.

Second, even assuming that the deliberative process privilege applied to some questions, the mere fact that an attorney taking a deposition *might* ask a question which could invade the deliberative process privilege is not a reason to prohibit a deposition:

> As for the third category of topics – those concerning the interpretation and meaning of certain regulatory terms and guidance and any confusion regarding the same – certain questions could conceivably call for information protected by the deliberative-process privilege. . . . Again, however, it would be speculative to prohibit the deposition on this basis. For example, the SEC has also set forth public guidance and communicated with third parties about these topics. This information would not be privileged and would likely form the basis for at least some of the deponent's answers. The SEC is free to raise privilege and work-product objections to specific questions during the deposition. Counsel may then explore background facts concerning the objection, and the deponent can substantiate the objection.

*S.E.C. v. Kovzan*, 2013 WL 653611 (D. Kan. 2013) (citing *Miller v. Union Pacific R.R. Co.*, 2008 WL 4724471, at *6 (D. Kan. 2008) (appropriate procedure is to raise privilege and work-product objections during the deposition)). Thus, any claims of privilege by Defendant's

attorneys "can properly be asserted during the deposition, as appropriate." *E.E.O.C. v. Burlington Northern*, 2008 WL 4845308 *3 (W.D. Okla. 2008); *see also Scott v. PPG Indus., Inc.*, 142 F.R.D. 291 (N.D.W.Va.1992) (EEOC trial attorney could invoke the deliberative process privilege in the investigator's deposition).

In short, it is premature to make a blanket assertion of the deliberative process privilege before any questions have been asked. *E.E.O.C. v. Corrections Corp. of America*, 2007 WL 4403528 (D.Colo. 2007) (citing *United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974) and *EEOC v. Albertson's LLC*, 2007 WL 1299194 (D. Colo. 2007)).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that Defendant's Motion for Protective Order should be denied.

Respectfully submitted this 4th day of October, 2013.

s/Richard A. Westfall
Richard A. Westfall
Peter J. Krumholz
HALE WESTFALL LLP
1445 Market Street, Suite 300
Denver, CO 80202
Phone: (720) 904-6022
Fax: (720) 904-6020
rwestfall@halewestfall.com
**ATTORNEYS FOR DISABLED CITIZENS, OUTDOOR BUDDIES, INC. THE COLORADO OUTFITTERS ASSOCIATION, COLORADO FARM BUREAU, AND WOMEN FOR CONCEALED CARRY**

s/David B. Kopel
INDEPENDENCE INSTITUTE
727 E. 16th Avenue
Denver, CO 80203
Phone: (303) 279-6536
Fax: (303) 279-4176
david@i2i.org
ATTORNEY FOR SHERIFFS AND DAVID STRUMILLO

s/Douglas Abbott
Jonathan M. Anderson
Douglas Abbott
HOLLAND & HART LLP
Post Office Box 8749
Denver, CO 80201-8749
Phone: (303) 295-8566
Fax: (303) 672-6508
jmanderson@hollandhart.com
ATTORNEYS FOR MAGPUL INDUSTRIES AND THE
NATIONAL SHOOTING SPORTS FOUNDATION

s/Marc F. Colin
BRUNO COLIN JEWELL & LOWE PC
1999 Broadway, Suite 3100
Denver, CO 80202-5731
Phone: (303) 831-1099
Fax: (303) 831-1088
mcolin@bcjlpc.com
ATTORNEY FOR LICENSED FIREARMS DEALERS

s/Anthony J. Fabian
LAW OFFICES OF ANTHONY J. FABIAN PC
510 Wilcox Street, Suite C
Castle Rock, CO 80104
Phone: (303) 663-9339
Fax: (303) 713-0785
fabianlaw@qwestoffice.net
ATTORNEY FOR COLORADO STATE SHOOTING
ASSOCIATION AND HAMILTON FAMILY
ENTERPRISES, INC. D/B/A FAMILY SHOOTING
CENTER AT CHERRY CREEK STATE PARK

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2013, I served via email a true and complete copy of the foregoing pleading upon all counsel of record listed below via the CM/ECF system for the United States District Court for the District of Colorado:

| | |
|---|---|
| Jonathan M. Anderson | jmanderson@hollandhart.com |
| Douglas Abbott | dabbott@hollandhart.com |
| Marc F. Colin | mcolin@bcjlpc.com |
| Anthony J. Fabian | fabianlaw@qwestoffice.net |
| David B. Kopel | david@i2i.org |
| Peter J. Krumholz | pkrumholz@halewestfall.com |
| Richard A. Westfall | rwestfall@halewestfall.com |
| Matthew Groves | matt.grove@state.co.us |
| Kathleen Spalding | kit.spalding@state.co.us |
| Jonathan Fero | jon.fero@state.co.us |
| David Blake | david.blake@state.co.us |
| Daniel D. Domenico | dan.domenico@state.co.us |
| John T. Lee | jtlee@state.co.us |
| Molly Moats | Molly.Moats@state.co.us |
| Stephanie Scoville | Stephanie.Scoville@state.co.us |

s/Christopher M. McNicholas
Christopher M. McNicholas