IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, *et al.*,

Plaintiffs

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

Defendant.

---

## REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

---

Defendant John W. Hickenlooper, in his official capacity as Governor of the State of Colorado, by and through counsel, submits the following reply in support of his motion for a protective order.

1.      Plaintiffs' response demonstrates their failure to understand the nature of their own lawsuit, which was filed against the Governor in his official capacity, and which challenges the constitutionality of legislation that the Governor signed, but has no direct role in enforcing.  Contrary to Plaintiffs' argument, *in addition* to meeting the requirements of Fed. R. Civ. P. 30, they bear the burden of establishing that the Governor's testimony will likely lead to the discovery of admissible evidence, and that such evidence is essential to their case.  *Sweeney v. Bond,* 669 F.2d 542, 546 (8th Cir. 1982). Plaintiffs have made no such showing.

2.     Rather, Plaintiffs' position underscores precisely why the Governor should not be required to sit for a deposition.  Plaintiffs challenge the constitutionality of enacted legislation.  Their suit is against the Governor in his official capacity – not his individual capacity – and therefore, his personal thoughts and opinions have no bearing on the ultimate question of law of whether the challenged legislation meets constitutional standards.

3.     Tellingly, Plaintiffs do not cite a single case in which an executive who signed legislation has been required to sit for a deposition in order to explain what the law means or to justify his reasons for exercising the legislative prerogative.  Instead, Plaintiffs conflate this suit with cases in which courts have ordered the deposition of a sitting executive sued in his *personal capacity*.

4.     Plaintiffs primarily rely upon a 45-year old election law decision from the Southern District of Alabama that is inapposite at best. *Hadnott v. Amos*, 291 F. Supp. 309 (S.D. Ala. 1968).  First, unlike Governor Hickenlooper, the subject governor in *Hadnott* was not being sued in his official capacity.  Rather, the *Hadnott* complaint raised allegations against "Governor Albert P. Brewer, *not acting as Governor of Alabama but as a political candidate for the office of Presidential Elector*."  *Id.* at 310 (emphasis added).

5.     Second, unlike this case, the testimony sought in *Hadnott* was not irrelevant and privileged, nor did the subject governor argue that it was.

Instead, the *Hadnott* governor simply argued that principles of separation of powers rendered the federal court powerless to subpoena him. Governor Hickenlooper does acknowledge this Court's authority, but it is well-settled that there is a strong presumption against requiring the deposition of a high-level government official, *Sweeney, supra*, and Plaintiffs fail to rebut that presumption.

6.      Executives in the remaining cases that Plaintiffs cite were, like the *Hadnott* governor, involved in litigation in their personal capacities. *See Clinton v. Jones*, 520 U.S. 681, 691-92 (1997) (sexual harassment case and claim for damages filed against sitting President in his personal capacity). And even in the large majority of these decisions, courts granted protective orders. *See Monti v. State*, 563 A.2d 629 (Vt. 1989) (plaintiff "sought to depose Governor Kunin regarding the circumstances of her discharge"; appellate court affirmed issuance of protective order); *Bogan v. City of Boston,* 489 F.3d 417 (1st Cir. 2007) (plaintiff sought to depose Boston mayor*,* claiming that mayor had directed his subordinates to take action that affected their property rights; appellate court affirmed issuance of protective order).

7.      Additionally, "as a practical matter, a public official who is a defendant in a suit seeking an injunction is not 'on trial' at all. The suit seeks relief against him in his official capacity; he need not attend the trial, which will be conducted by attorneys representing the governmental body. If

3

he leaves office during the interim, he leaves the case behind and interim, he leaves the case behind and his successor becomes the party." *Hatfill v. Gonzales,* 519 F.Supp.2d 13, 23 (D.D.C. 2007), *citing Scott v. Lacy,* 811 F.2d 1153, 1153-54 (7th Cir. 1987). As a result, good cause exists to protect the Governor from personally participating in this case.

8.      Plaintiffs nevertheless assert that because this case is particularly important this Court should ignore the long-held presumption against requiring depositions of sitting chief executives. The Governor does not dispute that this is a significant case, but the same could be said of every challenge to the constitutionality of Colorado law. It can hardly be said that such cases are brought infrequently. Governor Hickenlooper is regularly named as an official capacity defendant in both state and federal court. Many of these cases involve direct challenges to the constitutionality of Colorado statutes or provisions of the Colorado Constitution, and yet the Governor has never been deposed in any of them. *See Kerr v. Hickenlooper,* 880 F. Supp. 2d 1112 (D. Colo. 2012); *see also Riddle v. Hickenlooper,* 927 F. Supp .2d 1092 (D. Colo. 2012); *Colorado Medical Society v. Hickenlooper*, ___P.3d___, 2012 COA 121 (Colo. App. 2012); *Freedom From Religion Found. v. Hickenlooper*, ___P.3d__, 2012 COA 81 (Colo. App. 2012); *Griffin v. Hickenlooper*, 2012 U.S. Dist. LEXIS 48103 (D. Colo. 2012); *Hotaling v. Hickenlooper,* 275 P.3d 723 (Colo. App. 2011). These relatively few published

decisions are substantially outnumbered by the unpublished dispositions in other cases and still others that remain pending.

9.     Plaintiffs next argue that the Governor's deposition should be ordered because he has "personal knowledge" of the challenged legislation, including statements about the bills that have been quoted in the press.  But any post-enactment statements that the Governor may have made concerning the challenged legislation are completely irrelevant.  *See, e.g., Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 132 (1974) ("post-passage remarks of legislators, however explicit, cannot serve to change the legislative intent of Congress expressed before the Act's passage. Such statements represent only the personal views of these legislators since the statements were [made] after passage of the Act.") (internal citations and quotations omitted).

10.     Courts treat statements by executives in a similar manner.  In *Coleman v. Schwarzenegger,* 2008 U.S. Dist. LEXIS 70224, 2008 WL 4300437 (E.D. Cal. 2008), for example, the plaintiffs sought to depose the California governor and his chief of staff concerning "the implementation of AB 900, the measures they have taken or proposed to alleviate prison conditions, and the statements they have made in regard to overcrowding and the progress of prison reform").  *Id.* at *21.  Plaintiffs "contend[ed] that they are entitled to question the Governor and his Chief of Staff about their actions and about the factual bases underlying their actions or statements." *Id.*  The court granted the protective order, finding that the plaintiffs had failed to

demonstrate the existence of the "extraordinary circumstances" that are a prerequisite to the deposition of a high-level government official." *Id.*

11.     Similarly, in *Marisol A. by Forbes v. Giuliani*, 1998 U.S. Dist. LEXIS 3719, 1998 WL 132810 (S.D.N.Y. 1998), the court refused to allow the New York mayor's deposition, notwithstanding that the plaintiffs sought to question the mayor concerning allegedly inconsistent public statements related to the subject matter of the litigation.

12.     Plaintiffs should not be permitted to rely on their own failure to perform adequate research as a basis for demanding the Governor's deposition.  For example, the Response accuses the Governor of making "demonstrably false" post-enactment statements about the large-capacity magazine restriction.  *See Response* at p.4.  The 31% to 41% that Plaintiffs complain about appears in Christopher S. Koper, *An Updated Assessment of the Federal Assault Weapons Ban: Impacts on Gun Markets and Gun Violence, 1994-2003* (2004), at p.18; and Christopher S. Koper, *America's Experience with the Federal Assault Weapons Ban, 1994-2004: Key Findings and Implications, 1994-2003*, in *Reducing Gun Violence in America: Informing Policy with Evidence* (Daniel S. Webser & Jan S. Vernick, eds. 2013), at p.162.

13.     Nor should this Court credit the Plaintiffs' assertion that the Governor would be the only source of information concerning "instructions" that he has allegedly "given the various executive branch agencies about

enforcing HB 1224 and 1229[.]" Response at 5.  It goes without saying that the recipient of any such "instructions" – even assuming that they exist and were personally formulated and conveyed by the Governor – would have precisely the information that Plaintiffs seek.  Plaintiffs have already indicated that they plan to depose Ronald Sloan, Director of the Colorado Bureau of Investigation.

14. Likewise, the letter that Plaintiffs attach and rely upon to assert that they are "entitled to explore the bases for the Governor's beliefs" *was not written or even signed by the Governor.*  Precisely how Plaintiffs intend to gather relevant evidence by deposing the Governor about documents that he had no hand in creating remains a mystery.

15. Finally, while Plaintiffs disclaim any interest in matters protected by the deliberative process privilege, this assertion is belied by their written discovery.  In fact, Plaintiffs' interrogatories offer a preview of what a deposition would actually look like, and demonstrate that they do not intend to ask questions that are even reasonably calculated – much less likely – to lead to the discovery of admissible evidence on the question of whether the challenged laws meet the standards of the Second Amendment. For example:

> a. "Explain why you refused on March 4, 2013, to meet with any of the approximately 30 Sheriffs who had come to the State Capitol

to express their concerns about HB 1224 and HB 1229." (Sheriffs' Interrogatory No. 3).

b. "On March 14, 2013, Larimer County Sheriff Justin Smith sent your office a letter requesting that you meet with Sheriffs to discuss the pending firearms bills. Please explain why you refused to meet with the Sheriffs." (Sheriffs' Interrogatory No. 4).

c. "At a press conference, on Sept. 11, 2013, you stated: 'I was never as fired up on the magazine checks.' [citation omitted]. Please detail all reasons why you were never so fired up." (Sheriffs' Interrogatory No. 10).

d. "Describe in detail what you would do, or request to have done, if any law enforcement agency or officer sought or attempted to enforce HB 1224 in a manner contrary to the May 16, 2013 Technical Guidance or the July 10, 2013 Technical Guidance." (Nonprofits' Interrogatory No. 3).

e. "Identify the laws—including statutes, regulations, or case law—of any other State on which HB 1224 and HB 1229 are based, in whole or in part." (Nonprofits' Interrogatory No. 11).

f. "Admit that HB 1224 and HB 1229 apply to all classes of people in Colorado." (FFLs RFA No. 6).

16.    This is a small but representative sample of the scores of written discovery requests propounded by Plaintiffs.  Even if the Governor did have

exclusive personal knowledge, and even if that knowledge were not privileged, these requests demonstrate that Plaintiffs do not seek to acquire information that: 1) likely to lead to the discovery of admissible evidence, 2) is essential to their case, and 3) cannot be acquired through alternative means. *Warzon v. Drew,* 155 F.R.D. 183, 185 (E.D. Wis. 1994). Rather, their written discovery demonstrates that they intend to ask questions that seek irrelevant and/or privileged answers.

17.    As with all chief executives, Governor Hickenlooper has pressing and significant state business to which he must attend, including leading the state's recovery efforts from the devastating recent floods. Courts regularly have recognized that the depositions of elected leaders should be presumptively disallowed because they are a serious distraction from an elected official's duties. *See, e.g., Giuliani*, 1998 U.S. Dist. LEXIS 3719 at *10-11; *see also Coleman*, 2008 U.S. Dist. LEXIS 70224, at *20-21. A deposition of the Governor in this case may serve Plaintiffs' political interests, but would distract the Governor from his official duties as well as the parties from the real legal issues.

18.    Plaintiffs contend that this Court should order the deposition to go forward and simply limit its scope to permissible questions. But "when no other information [i.e., information that is not privileged] is sought from a deposition, this privilege can bar the deposition" entirely. *Giuliani,* 1998 U.S.

Dist. LEXIS 3719 at *21.  Plaintiffs have not overcome the high burden of establishing the necessity of the Governor's deposition

WHEREFORE, because good cause exists for granting a protective order, the Governor respectfully requests that this Court enter such an order barring the Plaintiffs from taking his deposition in this matter.

JOHN W. SUTHERS
Attorney General

s/ *Matthew D. Grove*
DANIEL D. DOMENICO*
Solicitor General
DAVID C. BLAKE*
Deputy Attorney General
KATHLEEN SPALDING*
Senior Assistant Attorney General
MATTHEW D. GROVE *
Assistant Attorney General
JONATHAN P. FERO*
Assistant Solicitor General
JOHN T. LEE*
Assistant Attorney General
MOLLY MOATS*
Assistant Attorney General
STEPHANIE LINDQUIST
   SCOVILLE*
Senior Assistant Attorney General

> Attorneys for Governor John W.
>   Hickenlooper
> *Counsel of Record
> 1300 Broadway, 10th Floor
> Denver, Colorado 80203
> Telephone: 720-508-6000
> *Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on   October 8, 2013 I served a true and complete copy of the foregoing REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER upon all counsel of record including those listed below via the CM/ECF system for the United States District Court for the District of Colorado:

David B. Kopel                          david@i2i.org

Jonathan M. Anderson          jmanderson@hollandhart.com
Douglas L. Abbott                  dabbot@hollandhart.com

Richard A. Westfall               rwestfall@halewestfall.com
Peter J. Krumholz                 pkrumholz@halewestfall.com

Marc F. Colin                       mcolin@brunolawyers.com
Jonathan Watson                  jwatson@brunolawyers.com

Anthony J. Fabian               fabianlaw@qwestoffice.net


*s/Debbie Bendell*