### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No. 13-CV-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, Colorado *et al.*,

   Plaintiffs v.

JOHN W. HICKENLOOPER, Governor of the State of

   Colorado, Defendant.

---

### DEFENDANT'S RESPONSES TO PLAINTIFF 55 SHERIFFS AND DAVID STRUMILLO DISCOVERY REQUESTS TO DEFENDANT

---

Defendant John W. Hickenlooper, in his official capacity as Governor of the State of Colorado, by and through undersigned counsel, hereby submits his responses to the interrogatories and requests for admission propounded by the Plaintiff sheriffs and David Strumillo.

### AUTHENTICATION

The names and positions of each and every person who assisted in answering these requests for admission are as follows:

   (a) Kathleen Spalding, Senior Assistant Attorney General
   (b) Stephanie Scoville, Senior Assistant Attorney General
   (c) Matthew Grove, Assistant Attorney General
   (d) Jack Finlaw, Chief Legal Counsel, Office of the Governor

### GENERAL OBJECTIONS AND RESPONSES

The Governor makes the following general objections and responses to the instant discovery requests:

1.    The Governor objects to each Discovery Request to the extent that it:

   (a) is overly broad and/or unduly burdensome;

1

(b) is vague, ambiguous, and/or fails to describe with reasonable particularity the information sought;

(c) seeks information that exceeds the scope of, or is inconsistent with permissible discovery;

(d) seeks information that is neither relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence; and/or

(e) contains undefined terms which are ambiguous and/or prejudicial.

2.     The above-captioned written discovery requests do not, by their terms, exclude privileged or protected communications from production.  The Governor therefore objects to each discovery request to the extent that it seeks the disclosure of any information that is privileged or protected for any reason, including but not limited to information protected by the attorney-client privilege, the work product doctrine, the deliberative process privilege, and any other applicable privileges or protections.

3.     The Governor objects to each discovery request to the extent it seeks the disclosure of information gathered and/or documents prepared by or for the Governor or the Governor's attorneys in anticipation of litigation or in preparation for trial that contains or discloses the theories, mental impressions, or litigation strategy of the Governor's attorneys.

4.     The Governor objects to each discovery request to the extent it requests information not in the Governor's possession, custody or control.  The Governor further objects to each request for admission to the extent that it seeks information in the possession, custody, or control of others.  More specifically, Plaintiffs purport to define the terms "you," "your" and "defendant" to include all persons and departments within the executive branch of Colorado state government.  This definition inaccurately reflects the scope of this litigation.  Plaintiffs have sued the Governor in his official capacity.  The Court has recognized that for the purposes of this litigation, the Governor's Office does not include either executive departments or the thousands of state employees who work in those departments.  The Governor objects to the definition of "you," "your," and "defendant" to the extent that the definition purports to require the disclosure of information or documents from entities or persons who are not within the Governor's Office and not within the custody or control of the Governor's Office.

2

5.      The Governor objects to each discovery request to the extent it seeks the disclosure of any confidential information, and will seek an appropriate protective order prior to disclosing any such information (to the extent that the current protective order does not encompass such information).  However, attorney-client privileged communications and work product will not be disclosed.

6.      The Governor responds to the instant discovery requests as required by the Federal Rules of Civil Procedure and applicable case law.  The Governor therefore objects to each request for admission to the extent it seeks to impose obligations on the Governor other than those authorized by the Federal Rules of Civil Procedure and applicable case law.  Any purported instructions, definitions, requirements, or requests to the contrary are disregarded.

7.      By disclosing information and/or materials responsive instant discovery requests, the Governor does not stipulate or otherwise admit that any such information and/or materials is authentic, relevant, or admissible.  The Governor expressly reserves all objections to the admission of such information and/or materials as provided by the rules of procedure and evidence.

8.      The Governor's general objections and responses to the instant discovery requests shall be deemed continuing as to each Discovery Request and are not waived or in any way limited by the following specific objections and responses to each request for admission.  Further, the Governor's general objections and responses shall be deemed incorporated into the following specific objections and responses to each request for admission.

9.      The Governor's responses to the instant discovery requests are based upon information presently available and specifically known to the Governor in his official capacity.  The Governor is aware of his obligation under Fed.R.Civ.P. 26(e), and consistent therewith, will timely supplement any specific response with additional or corrective information if the Governor learns that in some material respect the original response was incomplete or incorrect.

10.      Defendant objects to Plaintiffs' interrogatories to the extent they request all facts or information upon which Defendant may rely. Defendant's responses are made subject to the ongoing discovery and trial preparation in this case and are based on the best information presently available.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES AND REQUESTS FOR ADMISSION

**Interrogatory No. 1:**  Explain how, in the absence of comprehensive registration of firearms, HB 1229 can be enforced. Your answer should specifically address how law enforcement officers in the field will be able to tell whether a firearm was unlawfully privately transferred or sold after July 1, 2013.

> Objection:  Defendant objects to this Interrogatory based on the Court's order of October 28, 2013 [Dkt. #91], which stated, "Governor Hickenlooper has no direct enforcement role."  As a result, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence and is unduly burdensome and oppressive.

> Response:  Without waiving and subject to this objection, Defendant refers Plaintiffs to the Technical Guidance letters dated May 17, 2013, and July 10, 2013.

**Interrogatory No. 2:**  Explain how, in the absence of comprehensive registration of magazines, HB 1224's ban on the possession of magazines can be enforced. Your answer should specifically address how law enforcement officers in the field will be able to tell whether a magazine is covered by the grandfather provision of HB 1224.

> Objection:  Defendant objects to this Interrogatory based on the Court's order of October 28, 2013 [Dkt. #91], which stated, "Governor Hickenlooper has no direct enforcement role."  As a result, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence and is unduly burdensome and oppressive.

> Response:  Without waiving and subject to this objection, Defendant refers Plaintiffs to the Technical Guidance letters dated May 17, 2013, and July 10, 2013.

**Interrogatory No. 3:**  Explain why you refused on March 4, 2013, to meet with any of the approximately 30 Sheriffs who had come to the State Capitol to express their concerns about HB 1224 and HB 1229.

> Objection:  Defendant objects to this Interrogatory on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence.  As the Court's order of October 28, 2013 [Dkt. #91] stated, the Governor's "personal thoughts, opinions, and beliefs, including any post-enactment statements, have no bearing on the ultimate questions of law on whether the challenged

4

legislation … meets constitutional standards…" As a result, the Interrogatory is irrelevant, and unduly burdensome and oppressive.

**Interrogatory No. 4:** On March 14, 2013, Larimer County Sheriff Justin Smith sent your office a letter requesting that you meet with Sheriffs to discuss the pending firearms bills. Please explain why you refused to meet with the Sheriffs.

> Objection: Defendant objects to this Interrogatory on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence. As the Court's order of October 28, 2013 [Dkt. #91] stated, the Governor's "personal thoughts, opinions, and beliefs, including any post-enactment statements, have no bearing on the ultimate questions of law on whether the challenged legislation … meets constitutional standards…" As a result, the Interrogatory is irrelevant, and unduly burdensome and oppressive.

**Interrogatory No. 5:** Identify every instance in which you have sought input from any Sheriff regarding magazine bans.

> Objection: The Governor is not required to respond to this Interrogatory because it calls for information concerning the role of the Governor's Office, if any, in deliberations concerning the ultimate content of HB 1224 and HB 1229. This information is protected from discovery by the deliberative process privilege, "which covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975). Defendant also objects to this Interrogatory on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence. As the Court's order of October 28, 2013 [Dkt. #91] stated, the Governor's "personal thoughts, opinions, and beliefs, including any post-enactment statements, have no bearing on the ultimate questions of law on whether the challenged legislation … meets constitutional standards…" As a result, the Interrogatory is irrelevant, and unduly burdensome and oppressive.

**Interrogatory No. 6:** Identify every instance in which you have sought input from any Sheriff regarding background checks on private transfers or sales of firearms.

> Objection: The Governor is not required to respond to this Interrogatory because it calls for information concerning the role of the Governor's Office, if any, in deliberations concerning the ultimate content of HB 1224 and HB 1229. This information is protected from discovery by the deliberative process privilege, "which covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated." *NLRB v. Sears, Roebuck &*

*Co.*, 421 U.S. 132, 150 (1975).  Defendant also objects to this Interrogatory on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence.  As the Court's order of October 28, 2013 [Dkt. #91] stated, the Governor's "personal thoughts, opinions, and beliefs, including any post-enactment statements, have no bearing on the ultimate questions of law on whether the challenged legislation … meets constitutional standards…"  As a result, the Interrogatory is irrelevant, and unduly burdensome and oppressive.

**Interrogatory No. 7:**  Does HB 1224 outlaw magazines which were manufactured to accept more than 15 rounds, and whose capacity has been reduced by the insertion of a limiter if the limiter is attached to the magazine via a pin? If the answer depends on specifically how the pin is attached, please specify which forms of attachment make the magazine legal

> Objection:  Defendant objects to this Interrogatory on the grounds that the phrase "via a pin" is too vague and ambiguous to permit a meaningful response. In addition, this is the subject of expert testimony in this case and is outside the scope of the Governor's knowledge.  This Interrogatory is, therefore, unduly burdensome and oppressive.

**Interrogatory No. 8:**  On July 22, 2013, you made the following statement to CNN  regarding  the Aurora theater murders:

> JOHN HICKENLOOPER: …. And, you know, if it wasn't one weapon, it would have been another. I mean, he was diabolical. If you look at what he had in his apartment and what his intentions were, I mean even now it makes the hair on the back of my neck stand up. . . .

> CANDY CROWLEY: What I hear from you is that you would be open to people who want to suggest a gun law or something that might prevent this sort of thing, but at the moment, you can't imagine what that would be.

> JOHN HICKENLOOPER:  Yeah.  I mean, I'm  happy to look at anything. But, it's -- again, this person if we had, if there were no assault weapons available, and no this or no that, this guy is going to find something, right. He's going to know how to create a bomb. He's going to -- I mean, who knows where his mind would have gone clearly very intelligent individual, however twisted.  (Transcript available at 2012 WLNR 23824286.) Do your comments indicate that additional gun laws would not have prevented the Aurora murders? If this is not true, please explain what you meant.

> Objection: Defendant objects to this Interrogatory on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence.  As the Court's order of October 28, 2013 [Dkt. #91] stated, the Governor's "personal

thoughts, opinions, and beliefs, including any post-enactment statements, have no bearing on the ultimate questions of law on whether the challenged legislation … meets constitutional standards…"  As a result, the Interrogatory is irrelevant, and unduly burdensome and oppressive.

**Interrogatory No. 9:**  On Dec. 16, 2012, you made the following statement to CNN  regarding  the Aurora theater and Newtown murders:

CANDY CROWLEY: And I think we talked that time [referring to your July 22 conversation] about the culture of guns and kind of the culture that  we  live in now and that there's very little you can do to stop a determined person. Do you still feel that way?

JOHN HICKENLOOPER: Well, unfortunately, I think that's true. I mean,  and you can't  really  argue  those  facts.  What  you  can  do  is expand your capacity, your  framework  within a state or within the country to have more people paying attention and trying to detect folks that are unstable, on the verge of real trouble, trying to catch them at a sooner level.  (Transcript is available at 2012 WLNR 27125174.) Do your comments indicate that additional gun laws would not have prevented the Aurora and Newtown murders? If this is not true, please explain what you meant.

Objection: Defendant objects to this Interrogatory on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence.  As the Court's order of October 28, 2013 [Dkt. #91] stated, the Governor's "personal thoughts, opinions, and beliefs, including any post-enactment statements, have no bearing on the ultimate questions of law on whether the challenged legislation … meets constitutional standards…"  As a result, the Interrogatory is irrelevant, and unduly burdensome and oppressive.

**Interrogatory No. 10:**  At a press conference, on Sept. 11, 2013, you stated: "I was never as fired up on the magazine  checks." (See Denver Post article on  the  press conference,  at http://www.denverpost.com/breakingnews/ci_24070521/gov-hickenlooper- disappointed-by-outcome-recalls-democrats?IADID=Search-www.denverpost.com-www.denverpost.com.) Please  detail  all  reasons  why  you were never so fired up.

Objection: Defendant objects to this Interrogatory on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence.  As the Court's order of October 28, 2013 [Dkt. #91] stated, the Governor's "personal thoughts, opinions, and beliefs, including any post-enactment statements, have no bearing on the ultimate questions of law on whether the challenged legislation … meets constitutional standards…"  As a result, the Interrogatory is irrelevant, and unduly burdensome and oppressive.

**Interrogatory No. 11:**  At a press conference, on Sept. 11, 2013, you stated that between 31% and 41% of magazines used in the killings of police officers in the last decade involved magazines of more than 15 rounds.  (See press conference video at http://www.denverpost.com/breakingnews/ci_24070521/gov-hickenlooper-disappointed-by-outcome-recalls-democrats?IADID=Search-www.denverpost.com-www.denverpost.com at 5:53). Please provide the source(s) for your assertion.

> Objection:  Defendant objects to this Interrogatory on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence.  As the Court's order of October 28, 2013 [Dkt. #91] stated, the Governor's "personal thoughts, opinions, and beliefs, including any post-enactment statements, have no bearing on the ultimate questions of law on whether the challenged legislation … meets constitutional standards…"  As a result, the Interrogatory is irrelevant, and unduly burdensome and oppressive.

**Interrogatory No. 12:**  On April 4, 2013, on the Mike Rosen Show, on KOA 850 AM radio, the following exchange took place:

> MIKE ROSEN: So what kind of a magazine then would be...uh...illegal?

> JOHN HICKENLOOPER: Well there are certain magazines that are actually, uh, designed and have uh, uh, specific holes and attachments to be, to be extended and those specific magazines, uh, where there's, uh, a, certain level of design specifically just for extension rather than just cleaning. Uh...but that's not very many of them. Most of them...they may just have a slot which something could slide in and out, but again, that's not something that's specifically designed. And by using the narrow construction, by making sure that we have that in a letter coming out of the governor's office...uh...we felt that there was a good way of...that that was a good way of protecting people's rights to hold on to these things right, and even new ones that were designed properly.  (The audio is available on the KOA website, in the Mike Rosen Show archives.) Please explain what "specific holes and attachments" are part of "a certain level of design specifically just for extension."

> Objection:  Defendant objects to this Interrogatory on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence.  As the Court's order of October 28, 2013 [Dkt. #91] stated, the Governor's "personal thoughts, opinions, and beliefs, including any post-enactment statements, have no bearing on the ultimate questions of law on whether the challenged legislation … meets constitutional standards…"  As a result, the Interrogatory is irrelevant, and unduly burdensome and oppressive.

**Interrogatory No. 13:** On the same radio program referenced in Interrogatory 12, the following exchange took place:

MIKE ROSEN: There was additional wording in that bill that said the original owner of the magazine must keep it in continuous possession. So for example, if you died and your wife now has your magazines, she wasn't the original owner, if you're dead and it isn't buried with you, you won't be in continuous possession. How in the world is that going to be enforced? Somebody had said well that means the wife will have to call the sheriff or police and hand over that magazine.

JOHN HICKENLOOPER: Right...I...I think that would be very hard to enforce. I'm not going to argue that. It would be close to impossible to enforce.

MIKE ROSEN: Which is why some people have said that with these weaknesses in the bill why not veto it?

JOHN HICKENLOOPER: Because they...I think ultimately the...and this was certainly not my favorite bill...uh...in any session...uh...you know, there is...uh...an issue...uh...for a lot of people, especially in urban and suburban areas about...uh...these large capacity magazines and even though it may be very difficult or impossible to enforce, setting a law does put some constraints on things.  Please specify the "constraints on things" which you believe to be created by the provisions in HB 1224 which you consider to be very difficult or impossible to enforce.

Objection:  Defendant objects to this Interrogatory on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence.  As the Court's order of October 28, 2013 [Dkt. #91] stated, the Governor's "personal thoughts, opinions, and beliefs, including any post-enactment statements, have no bearing on the ultimate questions of law on whether the challenged legislation … meets constitutional standards…"  As a result, the Interrogatory is irrelevant, and unduly burdensome and oppressive.

**Interrogatory No. 14:** What information, if any, leads you believe that magazines of 15 or fewer rounds are commercially available for any of the following semi-automatic handguns.
   a. FNH FN 5.7 model 3868929120.
   b. Keltec PMR 30.
   c. Ruger SR9 models 3301 and 3331
   d. Sig Sauer model 226Tac Ops in .40S&W.
   e. Springfield Armory models XDM95259, XDM9389, XDM9211, XDM9201, XDM9202, and XDM95254.

Response:

a. According to the Shooter's Bible, 105th Edition, the FNH USA FN 5.7 model semi-automatic pistol is sold with 10 or 20 round magazines. Information provided in the Shooter's Bible, 105th Edition is corroborated by 2013 Standard Catalog of Firearms, 23rd Edition. See attached.

b. A commercially manufactured 15 cartridge or less magazine cannot be identified for the Kel-Tec PMR 30. The PMR 30 is specifically designed and marketed as a .22 semi-automatic pistol with a high-capacity 30 round magazine. To produce a model with a magazine holding less than 30 rounds is apparently a market decision made by Kel-Tec. However, the Kel-Tec PMR 30 is sold in New York with permanently altered magazines that hold only 10 rounds.

c. According to the Ruger website (http://www.ruger.com/products/sr9/models.html) the SR9 model 9mm semi-automatic pistol is sold directly by the manufacturer with either a 17 cartridge capacity magazine or a 10 cartridge capacity magazine.

d. According to the Sig Sauer website(http://www.sigsauer.com/CatalogProductDetails/p226-tactical-operations.aspx)the p226 Tac Ops, in both .40 and 9mm is sold from the manufacturer with either 10 and 15 round cartridge capacities. See attached.

e. A commercially manufactured 15 cartridge or less magazine cannot be identified for the XDM series semi-automatic pistol manufactured by Springfield Armory. Again, this model pistol is marketed to hold high-capacity magazines. To produce a model with a magazine holding less than 15 rounds is apparently a market decision made by Springfield Armory. However, there are commercially available magazine 10 and 15 cartridge capacity limiters available for the XDM 9mm model series. See attached.

## REQUESTS FOR ADMISSION

**Request for Admission No. 1:** Admit that HB 1224's exceptions pertaining to lawful possession of banned magazines after July 1, 2013, do not include any provision allowing retailers to possess banned magazines for the purposes of selling such magazines to law enforcement officers within Colorado.

Objection: The Governor objects to Request for Admission No. 1 because it calls for an improper legal conclusion. Requests for admissions seeking legal conclusions are not proper, and a party may not demand that the

10

other party admit the truth of a legal conclusion. *Disability Rights Council v. Wash. Metro Area,* 234 F.R.D. 1, 3 (D.D.C. 2006), *citing Lakehead Pipeline Co. v. Am. Home Assurance Co.,* 177 F.R.D. 454, 458 (D. Minn. 1997); *see also Utley v. Wray,* 2007 U.S. Dist. LEXIS 68413, 2007 WL 2703094 at *3 (D. Kan. Sept. 14, 2007).

**Request for Admission No. 2:** Admit that HB 1224's exceptions pertaining to lawful possession of magazines after July 1, 2013, do not include any provision allowing Coloradoans to purchase banned magazines for the purposes of sending them to relatives who are serving overseas in the United States Armed Forces, and who wish to acquire such magazines for their military duties.

Objection: The Governor objects to Request for Admission No. 1 because it calls for an improper legal conclusion. Requests for admissions seeking legal conclusions are not proper, and a party may not demand that the other party admit the truth of a legal conclusion. *Disability Rights Council v. Wash. Metro Area,* 234 F.R.D. 1, 3 (D.D.C. 2006), *citing Lakehead Pipeline Co. v. Am. Home Assurance Co.,* 177 F.R.D. 454, 458 (D. Minn. 1997); *see also Utley v. Wray,* 2007 U.S. Dist. LEXIS 68413, 2007 WL 2703094 at *3 (D. Kan. Sept. 14, 2007).

**Request for Admission No. 3:** Admit that HB 1229 contains no exception pertaining to the permanent acquisition of firearms by law enforcement officers for law enforcement purposes.

Objection: The Governor objects to Request for Admission No. 1 because it calls for an improper legal conclusion. Requests for admissions seeking legal conclusions are not proper, and a party may not demand that the other party admit the truth of a legal conclusion. *Disability Rights Council v. Wash. Metro Area,* 234 F.R.D. 1, 3 (D.D.C. 2006), *citing Lakehead Pipeline Co. v. Am. Home Assurance Co.,* 177 F.R.D. 454, 458 (D. Minn. 1997); *see also Utley v. Wray,* 2007 U.S. Dist. LEXIS 68413, 2007 WL 2703094 at *3 (D. Kan. Sept. 14, 2007).

**Request for Admission No. 4:** Admit that HB 1229 contains no exception pertaining to the temporary acquisition of firearms by law enforcement officers for law enforcement purposes.

Objection: The Governor objects to Request for Admission No. 1 because it calls for an improper legal conclusion. Requests for admissions seeking legal conclusions are not proper, and a party may not demand that the other party admit the truth of a legal conclusion. *Disability Rights Council v. Wash. Metro Area,* 234 F.R.D. 1, 3 (D.D.C. 2006), *citing Lakehead Pipeline Co. v. Am.*

*Home Assurance Co.,* 177 F.R.D. 454, 458 (D. Minn. 1997); *see also Utley v. Wray,* 2007 U.S. Dist. LEXIS 68413, 2007 WL 2703094 at *3 (D. Kan. Sept. 14, 2007).

**Request for Admission No. 5:** Admit that HB 1229 forbids the return of a stolen firearm to the rightful owner, unless the return is processed by a FFL pursuant to HB 1229's requirement for background check and for FFL record-keeping.

Objection: The Governor objects to Request for Admission No. 1 because it calls for an improper legal conclusion. Requests for admissions seeking legal conclusions are not proper, and a party may not demand that the other party admit the truth of a legal conclusion. *Disability Rights Council v. Wash. Metro Area,* 234 F.R.D. 1, 3 (D.D.C. 2006), *citing Lakehead Pipeline Co. v. Am. Home Assurance Co.,* 177 F.R.D. 454, 458 (D. Minn. 1997); *see also Utley v. Wray,* 2007 U.S. Dist. LEXIS 68413, 2007 WL 2703094 at *3 (D. Kan. Sept. 14, 2007).

**Request for Admission No. 6:** Admit that HB 1229 forbids Chief Law Enforcement Officers from transferring agency firearms to a law enforcement officer for more than 72 hours, unless the transfer is processed by a FFL pursuant to HB 1229's requirement for background check and for FFL record-keeping.

Objection: The Governor objects to Request for Admission No. 1 because it calls for an improper legal conclusion. Requests for admissions seeking legal conclusions are not proper, and a party may not demand that the other party admit the truth of a legal conclusion. *Disability Rights Council v. Wash. Metro Area,* 234 F.R.D. 1, 3 (D.D.C. 2006), *citing Lakehead Pipeline Co. v. Am. Home Assurance Co.,* 177 F.R.D. 454, 458 (D. Minn. 1997); *see also Utley v. Wray,* 2007 U.S. Dist. LEXIS 68413, 2007 WL 2703094 at *3 (D. Kan. Sept. 14, 2007).

**Request for Admission No. 7:** Admit that HB 1229 forbids law enforcement officers from taking a citizen's firearm for temporary safe-keeping for more than 72 hours, unless the transfer is processed by a FFL pursuant to HB 1229's requirement for background check and for FFL record-keeping. By way of illustration, this question includes a situation in which a citizen is the victim of a crime or accident, is therefore unconscious, and is therefore unable to safeguard a firearm which the citizen was carrying or transporting.

Objection: The Governor objects to Request for Admission No. 1 because it calls for an improper legal conclusion. Requests for admissions seeking legal conclusions are not proper, and a party may not demand that the other party admit the truth of a legal conclusion. *Disability Rights Council v. Wash.*

*Metro Area,* 234 F.R.D. 1, 3 (D.D.C. 2006), *citing Lakehead Pipeline Co. v. Am. Home Assurance Co.,* 177 F.R.D. 454, 458 (D. Minn. 1997); *see also Utley v. Wray,* 2007 U.S. Dist. LEXIS 68413, 2007 WL 2703094 at *3 (D. Kan. Sept. 14, 2007).

**Request for Admission No. 8:** Admit that HB 1224 contains no exemption for long-haul truckers transporting banned magazines from another state through Colorado for delivery to another state.

<u>Objection</u>: The Governor objects to Request for Admission No. 1 because it calls for an improper legal conclusion. Requests for admissions seeking legal conclusions are not proper, and a party may not demand that the other party admit the truth of a legal conclusion. *Disability Rights Council v. Wash. Metro Area,* 234 F.R.D. 1, 3 (D.D.C. 2006), *citing Lakehead Pipeline Co. v. Am. Home Assurance Co.,* 177 F.R.D. 454, 458 (D. Minn. 1997); *see also Utley v. Wray,* 2007 U.S. Dist. LEXIS 68413, 2007 WL 2703094 at *3 (D. Kan. Sept. 14, 2007).

**Request for Admission No. 9:** Admit that HB 1224 contains no exception for travelers passing through Colorado who possess a banned magazine which was acquired on or after July 1, 2013.

<u>Objection</u>: The Governor objects to Request for Admission No. 1 because it calls for an improper legal conclusion. Requests for admissions seeking legal conclusions are not proper, and a party may not demand that the other party admit the truth of a legal conclusion. *Disability Rights Council v. Wash. Metro Area,* 234 F.R.D. 1, 3 (D.D.C. 2006), *citing Lakehead Pipeline Co. v. Am. Home Assurance Co.,* 177 F.R.D. 454, 458 (D. Minn. 1997); *see also Utley v. Wray,* 2007 U.S. Dist. LEXIS 68413, 2007 WL 2703094 at *3 (D. Kan. Sept. 14, 2007).

**AS TO OBJECTIONS:**

JOHN W. SUTHERS
Attorney General

s/ *Matthew D. Grove*

DANIEL D. DOMENICO
Solicitor General*
DAVID C. BLAKE*
Deputy Attorney General
KATHLEEN SPALDING*
Senior Assistant Attorney General
MATTHEW D. GROVE *
Assistant Attorney General
JONATHAN P. FERO*
Assistant Solicitor General
JOHN T. LEE*
Assistant Attorney General
MOLLY MOATS*
Assistant Attorney General
Attorneys for Governor John W. Hickenlooper
*Counsel of Record
1300 Broadway, 10th Floor
Denver, Colorado  80203
Telephone:  720-508-6000

**AS TO RESPONSES:**

Pursuant to 28 U.S.C. § 1746, I, Jack Finlaw, do hereby verify under penalty of perjury under the laws of the United States of America that the foregoing responses to the Non-Profit and Individual Disabled Plaintiffs' First Set of Requests for Admission are true and correct to the best of my information and belief.

Dated this 1st day of November, 2013.

*s/ Jack Finlaw*
Chief Legal Counsel
Office of the Governor
State of Colorado

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on  <u>  November 1</u>, 2013 I served a true and complete copy of the foregoing Discovery Responses upon all counsel of record including those listed below via email:

David B. Kopel                                          david@i2i.org

Jonathan M. Anderson                          jmanderson@hollandhart.com
Douglas L. Abbott                               dabbot@hollandhart.com

Richard A. Westfall                            rwestfall@halewestfall.com
Peter J. Krumholz                             pkrumholz@halewestfall.com

Marc F. Colin                                   mcolin@brunolawyers.com
Jonathan Watson                              jwatson@brunolawyers.com

Anthony J. Fabian                            fabianlaw@qwestoffice.net


<u>  s/Matthew Grove  </u>

16