IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-1300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, *et al.*,

Plaintiffs

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

Defendant.

---

**GOVERNOR'S RESPONSES TO NON-PROFIT AND INDIVIDUAL DISABLED PLAINTIFFS' FIRST SET OF INTERROGATORIES**

---

Defendant Governor Hickenlooper, by and through counsel and pursuant to Fed.R.Civ.P. 33(b), submits the following Responses to the Non-Profit and Disabled Plaintiffs' First Set of Interrogatories.

## AUTHENTICATION

The names and positions of each and every person who assisted in answering these requests for admission are as follows:

(a) Kathleen Spalding, Senior Assistant Attorney General
(b) Stephanie Scoville, Senior Assistant Attorney General
(c) Matthew Grove, Assistant Attorney General
(d) Jack Finlaw, Chief Legal Counsel, Office of the Governor
(e) Stephanie Donner, Senior Deputy Legal Counsel, Office of the Governor

## GENERAL OBJECTIONS

Plaintiffs purport to define the terms "you," "your" and "defendant" to include all persons and departments within the executive branch of Colorado state government. This definition inaccurately reflects the scope of this litigation. Plaintiffs have sued the Governor in his official capacity. The Court has recognized that for the purposes of this litigation, the Governor's Office does

not include either executive departments or the thousands of state employees who work in those departments.  The Governor objects to the definition of "you," "your," and "defendant" to the extent that the definition purports to require the disclosure of information or documents from entities or persons who are not within the Governor's Office and not within the custody or control of the Governor's Office.

Defendant objects to Plaintiffs' interrogatories to the extent they request all facts or information upon which Defendant may rely. Defendant's responses are made subject to the ongoing discovery and trial preparation in this case and are based on the best information presently available.

### OBJECTIONS AND RESPONSES TO INTERROGATORIES

1. Identify every person or entity to whom you have sent the May 16, 2013, Technical Guidance.  If you have sent it to any person or entity, specify the date(s) on which you did so.

    ***Response***:  The Governor's office forwarded the May 16, 2013 Technical Guidance to the Colorado Department of Public Safety on or about May 16, 2013.

2. Identify every person or entity to whom you have sent the July 10, 2013, Technical Guidance.  If you have sent it to any person or entity, specify the date(s) on which you did so.

    ***Response***:  The Governor's Office forwarded the July 10, 2013 Technical Guidance to the Colorado Department of Public Safety on or about July 10, 2013.

3. Describe in detail what you would do, or request to have done, if any law enforcement agency or officer sought or attempted to enforce HB 1224 in a manner contrary to the May 16, 2013, Technical Guidance or the July 10, 2013, Technical Guidance.

    ***Objection***:  This interrogatory calls for speculation.  "As a general rule, a party is not required to answer interrogatories calling for speculation."

> 10A Fed. Proc. L. Ed. § 26:581; *see also American Oil Co. v. Penn. Petroleum Prod. Co.,* 23 F.R.D. 680 (D.R.I. 1959); *Gregg v. Local 305 IBEW*, 2010 WL 556526, at *4 (N.D. Ind. Feb 9, 2010).
>
> ***Response:***  Subject to and without waiving the foregoing general and specific objections, the Governor's Office has no role in the enforcement of HB 1224.

    4.    Describe in detail what you would do, or request to have done, if any law enforcement agency or officer arrested and/or prosecuted an individual for conduct described as lawful in the May 16, 2013 Technical Guidance or the July 10, 2013 Technical Guidance.

> ***Objection***:  This interrogatory calls for speculation.  "As a general rule, a party is not required to answer interrogatories calling for speculation." 10A Fed. Proc. L. Ed. § 26:581; *see also American Oil Co. v. Penn. Petroleum Prod. Co.,* 23 F.R.D. 680 (D.R.I. 1959); *Gregg v. Local 305 IBEW*, 2010 WL 556526, at *4 (N.D. Ind. Feb 9, 2010).
>
> ***Response***: See response to interrogatory # 3.

    5.    Identify any documents (including studies, trade materials, reports, and articles) on which you relied in creating the First or Second Technical Guidance.

> ***Response***:  Subject to and without waiving the foregoing general objections, neither the First Technical Guidance nor the Second Technical Guidance was created by the Governor's office.  The Governor's Office is therefore unable to identify any documents responsive to this interrogatory.

    6.    Identify every instance known to you in which harm inflicted by an assailant armed with a firearm may have been reduced as a result of that person having to change the firearm's magazines.

> ***Objection***:  Defendant objects to this interrogatory on the grounds that the terms "harm inflicted" and "reduced" are vague and ambiguous.

Defendant further objects to the interrogatory on the grounds that a search for all incidents in which "harm may have been reduced" as the result of a shooter changing magazines is overly burdensome.

***Response***:  Subject to and without waiving the foregoing general and specific objections, the required pause to change magazines has provided an opportunity for bystander intervention and escape in a number of mass shooting incidents, including but not limited to:

- Long Island Railroad shooting, December 7, 1993.
- Springfield, Oregon, May 21, 1998.
- Tucson, Arizona, January 8, 2011.
- Aurora, Colorado, July 20, 2012.
- Newtown, Connecticut, December 14, 2012.

7. Describe in detail each benefit to public safety that you believe may result in HB 1224's 15-round limitation on firearm magazine capacity.

***Response***:  Subject to and without waiving the foregoing general objections, benefits to public safety associated with a limitation on firearm magazine capacity are, without limitation, identified in the following documents:

- The expert report of Jeffery Zax, Ph.D., submitted August 2, 2013.
- The supplemental expert report of Jeffery Zax, Ph.D., submitted September 13, 2013.
- The rebuttal expert report of Douglas S. Fuchs, submitted September 6, 2013.
- The rebuttal expert report of John Cerar, submitted September 5, 2013.
- Legislative history for H.B. 1224.
- Testimony of Laurence Tribe before the Senate Judiciary Committee, February 2013.
- Christopher S. Koper, *An Updated Assessment of the Federal Assault Weapons Ban: Impacts on Gun Markets and Gun Violence, 1994-2003*, Report to the National Institute of Justice, June 2004.

- Christopher S. Koper, *America's Experience with the Federal Assault Weapons Ban, 1994-2004, Key Findings and Implications,* in Reducing Gun Violence in America, D. Webster and J. Vernick, eds., Johns Hopkins University Press (2013).
- David S. Fallis and James V. Grimaldi, *In Virginia, High-Yield Clip Seizures Rise,* Washington Post, January 23, 2011, page A-1.
- David S. Fallis, *High-capacity magazines saw drop during ban, data indicate,* Washington Post, January 13, 2013, page A-4.
- Richmond T, Branas C, Cheney R, Schwab C. The case for enhanced data collection of gun type. *J Trauma,* 2004; 57(6):1356-1360.
- Reedy DC, Koper CS. Impact of handgun types on gun assault outcomes: a comparison of gun assaults involving semiautomatic pistols and revolvers. *Inj. Prev.,* 2003; 9(2):151-155.
- *Firearm Injury in the U.S.,* Firearm & Injury Center at Penn (Version 2011).
- Wintemute GJ. The relationship between firearm design and firearm violence. Handguns in the 1990s. *JAMA,* 1996; 275(22):1749-53.
- Gotsch KE, Annest JL, Mercy JA, Ryan GW. Surveillance for fatal and nonfatal firearm-related injuries—United States, 1993-1998. *MMWR,* 2001; 50(SS-2): 1-34.
- Hargarten SW, Karlson TA, O'Brien M, Hancock J, Quebbeman E. Characteristics of firearms involved in fatalities. *JAMA,* 1996; 275(1):42-5.

8.   Identify all studies, reports, articles, or other documents or information which you believe support that there are public safety benefits to limiting magazine capacity to 15 rounds.

*Response***:** Subject to and without waiving the foregoing general objections, see Defendant's response to Interrogatory No. 7.

9.   Describe in detail your basis for believing that there are public safety benefits resulting from HB 1229's requirements for the processing of temporary firearms transfers (when the transfer time exceeds 72 hours) for the following situations:

  a. Farmers and ranchers providing firearms to their employees as part of their work on the farm or ranch.

  b. Non-profit organizations loaning firearms to shooting program participants.

  c. Leaving firearms with a friend or family member not included in C.R.S. § 18-12-112(6)(b) or (i) to accommodate a military assignment, move, or storage.

  d. Loaning of firearms to a hunter for a hunting trip but where the transfer occurs days prior to and/or after the trip itself (i.e. not technically "while hunting").

  e. Loaning a firearm to someone else who lives in the same residence for personal protection when there is no threat of "imminent death or serious bodily injury."

***Response***: Subject to and without waiving the foregoing general objections, benefits to public safety associated with background checks are, without limitation, identified in the legislative hearings conducted on HB 1229.  Copies of the legislative proceedings on both HB 1224 and HB 1229 have been provided to Plaintiffs' counsel.

10. What recourse does a person have under HB 1229 or any other laws of the State of Colorado if he or she wants to transfer a firearm but cannot find a Federal Firearms Licensee ("FFL") either available or willing to perform the required background check?

***Objection***: This is a hypothetical that calls for speculation. "As a general rule, a party is not required to answer interrogatories calling for speculation."  10A Fed. Proc. L. Ed. § 26:581; *see also American Oil Co. v. Penn. Petroleum Prod. Co.,* 23 F.R.D. 680 (D.R.I. 1959); *Gregg v. Local 305 IBEW*, 2010 WL 556526, at *4 (N.D. Ind. Feb 9, 2010).

> ***Response*:** Subject to and without waiving the foregoing general and specific objections, the provisions of HB 1229 speak for themselves.

11. Identify the laws – including statutes, regulations, or case law – of any other State on which HB 1224 and HB 1229 are based, in whole or in part.

> ***Objection:*** This interrogatory calls for information concerning the role of the Governor's Office, if any, in deliberations concerning the ultimate content of HB 1224 and HB 1229. This information is protected from discovery by the deliberative process privilege, "which covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975).

12. Identify all communications between you (which as defined in instruction 3, includes inter alia, the Colorado Bureau of Investigation and the Colorado Department of Natural Resources) and any governmental entity concerning how those entities should apply HB 1224 or HB 1229.

> ***Objection*:** Communications between and among executive agencies are not within the custody and control of the Governor's Office. This interrogatory may seek information that is protected by the attorney-client privilege and the work product doctrine.

> ***Response*:** Subject to and without waiving the foregoing general and specific objections, see responses to interrogatories 1 and 2 and letters dated August 21, 2013 and July 10, 2013 from Stephanie Donner to Loveland city council members and Mayor Cecil Gutierrez, attached hereto.

13. Identify all FFLs who have conducted background checks for private sales or non-sale transfers pursuant to HB 1229 from July 1, 2013 to the present day.

> ***Objection*:** The information requested is not within the custody and control of the Governor's Office.

*Response*: Subject to and without waiving the foregoing general and specific objections, the Governor's Office is unable to identify any documents responsive to this interrogatory.

14. Identify and describe in detail your bases for why a physically disabled person should not be allowed to possess a magazine with a capacity of 16 rounds or more for personal protection.

*Response*: Subject to and without waiving the foregoing general objections, benefits to public safety associated with a limitation on firearm magazine capacity are, without limitation, identified in the documents cited in response to Interrogatory #7.

**AS TO OBJECTIONS:**

JOHN W. SUTHERS
Attorney General

s/ *Kathleen Spalding*
DANIEL D. DOMENICO
Solicitor General*
DAVID C. BLAKE*
Deputy Attorney General
KATHLEEN SPALDING*
Senior Assistant Attorney General
MATTHEW D. GROVE *
Assistant Attorney General
JONATHAN P. FERO*
Assistant Solicitor General
JOHN T. LEE*
Assistant Attorney General
MOLLY MOATS*
Assistant Attorney General
Attorneys for Governor John W. Hickenlooper

*Counsel of Record
1300 Broadway, 10th Floor
Denver, Colorado  80203
Telephone:  720-508-6000

**AS TO RESPONSES:**

Pursuant to 28 U.S.C. § 1746, I, Jack Finlaw, do hereby verify under penalty of perjury under the laws of the United States of America that the foregoing responses to the Non-Profit and Individual Disabled Plaintiffs' First Set of Interrogatories are true and correct to the best of my information and belief.

Dated this 25th day of October, 2013.

                                                s/ *Jack Finlaw*  
                                                Chief Legal Counsel  
                                                Office of the Governor  
                                                State of Colorado

# CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2013 I served a true and complete copy of the foregoing **GOVERNOR'S RESPONSES TO NON-PROFIT AND INDIVIDUAL DISABLED PLAINTIFFS' FIRST SET OF INTERROGATORIES** upon all counsel of record including those listed below via the CM/ECF system for the United States District Court for the District of Colorado:

| | |
|---|---|
| David B. Kopel | david@i2i.org |
| Jonathan M. Anderson | jmanderson@hollandhart.com |
| Douglas L. Abbott | dabbot@hollandhart.com |
| Richard A. Westfall | rwestfall@halewestfall.com |
| Peter J. Krumholz | pkrumholz@halewestfall.com |
| Marc F. Colin | mcolin@brunolawyers.com |
| Jonathan Watson | jwatson@brunolawyers.com |
| Anthony J. Fabian | fabianlaw@qwestoffice.net |

　　　　　　　　　　　　　　　　*s/Kathleen Spalding*