IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01300-MSK-MJW

COLORADO OUTFITTERS ASSOCIATION;
COLORADO FARM BUREAU;
NATIONAL SHOOTING SPORTS FOUNDATION;
MAGPUL INDUSTRIES;
COLORADO YOUTH OUTDOORS;
USA LIBERTY ARMS;
OUTDOOR BUDDIES, INC.;
WOMEN FOR CONCEALED CARRY;
COLORADO STATE SHOOTING ASSOCIATION;
HAMILTON FAMILY ENTERPRISES, INC. d/b/a FAMILY SHOOTING
CENTER AT CHERRY CREEK STATE PARK;
DAVID STRUMILLO;
DAVID BAYNE;
DYLAN HARRELL;
ROCKY MOUNTAIN SHOOTERS SUPPLY;
2ND AMENDMENT GUNSMITH & SHOOTER SUPPLY, LLC;
BURRUD ARMS INC. d/b/a JENSEN ARMS;
GREEN MOUNTAIN GUNS;
JERRY'S OUTDOOR SPORTS;
GRAND PRIX GUNS;
SPECIALTY SPORTS & SUPPLY;
GOODS FOR THE WOODS;

    Plaintiffs,

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

    Defendant.

---

## DEFENDANT'S RESPONSE TO MOTION FOR JOINDER AND FOR LEAVE TO FILE AMENDED COMPLAINT

---

Defendant John W. Hickenlooper, in his official capacity as Governor of

the State of Colorado, responds as follows to Plaintiffs' motion to join the

Sheriffs in their individual capacities, and for leave to file an amended complaint (Doc. 104).

1. The Governor opposes Plaintiffs' motion for joinder and for leave to once again amend their complaint. Although Defendant would not oppose joinder of the Sheriffs in their individual capacities consistent with the Court's prior orders, Defendant must oppose Plaintiffs' extensive amendments and additions to the complaint at this late date. Plaintiffs' proposed Third Amended Complaint not only introduces substantial new factual allegations that have not heretofore been offered in this litigation, but also attempts to resurrect claims that this Court has already dismissed. Because Plaintiffs are unable to satisfy the standards for a late amendment under Fed. R. Civ. P. 16 and 15, and because the Governor would be prejudiced by the proposed joinder and amendments, this Court should deny Plaintiffs' motion. In the alternative, this Court should amend the scheduling order to reopen discovery, and shift the costs associated with re-deposing the sheriffs to Plaintiffs.

**FACTUAL BACKGROUND**

2. Plaintiffs filed this lawsuit on May 17, 2013, naming as parties in their official capacities 54 of Colorado's elected sheriffs. Doc. 1. Plaintiffs added one more sheriff when they amended their complaint for the first time. Doc. 22.

3. On June 10, 2013, the Court issued its scheduling order, setting July 1, 2013, as the deadline for joinder of parties and amendment of pleadings. Doc. 36, p. 13.

4. Plaintiffs amended their complaint for a second time on July 1, 2013, adding cursory language to ¶ 104 indicating that the Sheriffs wished to pursue individual capacity claims in addition to the official capacity claims that had already been asserted. Doc. 43-0, 43-1. The Governor did not oppose this motion, and the Court granted it shortly thereafter. Doc. 58.

5. The Governor moved to dismiss parts of the Second Amended Complaint, challenging the Sheriffs' official capacity standing and arguing that several of Plaintiffs' claims did not allege a cognizable injury-in-fact. Doc. 64. The motion to dismiss was focused on the Sheriffs' official capacity claims rather than their standing as private individuals because the political subdivision question has ramifications beyond the claims in this particular case. Defendant has not conceded that any Sheriff (or any other party) has personal capacity Article III standing, nor could he, since this is a jurisdictional issue.

6. On November 27, 2013, this Court issued an order dismissing the Sheriffs from the suit in both their official and personal capacities. Doc. 96. Plaintiffs sought clarification of the Court's order with respect to the Sheriffs; this Court confirmed the Sheriffs' personal capacity dismissal, noting that the

Second Amendment complaint did not contain a "plausible claim stated by any individual currently serving as sheriff." Doc. 107.

7. The Court's order of November 27, 2013 gave the Sheriffs 14 days "in which to seek to join the action in an individual capacity." Doc. 96. at p. 22. Notably, the Court's order did not waive the requirements of Fed. R. Civ. P. 15 and 16, which together govern a plaintiff's attempt to amend a complaint outside the time contemplated by the scheduling order.

8. The Sheriffs have now sought the Court's leave to rejoin. Docs. 104-0, 104-1. The Sheriffs have submitted a proposed Third Amended Complaint that includes 82 paragraphs of new factual allegations spread over nearly 22 pages.

9. A hearing is scheduled for Thursday, December 19, 2013 at 3:00 p.m. on Plaintiffs' request for leave to rejoin.

**ARGUMENT**

10. Because Plaintiffs seek to join parties and amend their complaint well after the deadline set by the Scheduling Order, this Court should employ a two-step analysis, first determining whether Plaintiffs have shown "good cause" to modify the Scheduling Order under Rule16(b), then evaluating whether Plaintiff has satisfied the standard for amendment of pleadings under Rule

15(a).[1] *Carskadon v. Diva Int'l, Inc.*, 2013 U.S. Dist. LEXIS, Case No. 12-cv-01886-MSK-KMT (D. Colo. May 3, 2013) (Tafoya, J.).

*Plaintiffs have not shown good cause to amend the Scheduling Order.*

11. The "good cause" standard requires the moving party to show that despite its diligent efforts, it could not have reasonably met the scheduled deadline. *Pumpco, Inc., the Concrete Pumping Co. v. Schenker Int'l, Inc.* 204 F.R.D. 667, 668 (D. Colo. 2001). "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Colorado Visionary Academy v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000) (internal quotation omitted).

12. "In determining whether there is good cause to permit an amendment of a pleading after the deadline for amendments established in the scheduling order has passed, the court must consider four factors: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and

---

[1] Tenth Circuit precedent on the applicability of Rule 16 standards to amendments sought after the deadline set by the scheduling order is "in a state of flux." *Ross v. Colo. Dept. of Transportation,* 2012 WL 7700140 (D. Colo. August 22, 2012). The Tenth Circuit has considered the question only once, and declined to reach it because it had not been raised in the trial court. *Bylin v. Billings*, 568 F.3d 1224, 1231-32 (10th Cir. 2009). Nonetheless, Magistrate Judge recommendations in two cases before this Court have applied the two-step test in *Pumpco, Inc., the Concrete Pumping Co. v. Schenker Int'l, Inc.* 204 F.R.D. 667, 668 (D. Colo. 2001). *Carskadon, supra; Schneider v. City of Grand Junction,* 2011 U.S. Dist. LEXIS 97421, Case No. 10-cv-01719-MSK-KLM (D. Colo. April 25, 2011).

5

(4) the availability of a continuance to cure the prejudice." 3-16 Moore's Fed. Practice – Civil § 16.14. Plaintiffs do not – and cannot – justify their delay under any of these factors.

13. First, Plaintiffs' untimely amendment was not prompted by a change in circumstances, but instead by the facial insufficiency of their Second Amended Complaint. Although it contains a number of new factual allegations that would require additional discovery, neither the motion nor the proposed amended complaint suggests that Plaintiffs only recently discovered these facts. Nor does either pleading explain why Plaintiffs omitted these allegations of fact from their previous iterations. Plaintiffs have failed to adequately explain these material omissions that were known from the outset of the litigation or, for that matter, clarify why this level of precision was seemingly unimportant when Plaintiffs moved to amend with the express purpose of adding the Sheriffs in their individual capacities.

14. Second, the Sheriffs' participation in their personal capacities is of little importance as the case moves forward. None of Plaintiffs' legal or factual claims are unique to the Sheriffs. In fact, the Sheriffs' participation in their individual capacities is likely to confuse matters due to the potential applicability of the law enforcement exemption in C.R.S. § 18-12-302(3)(b). *See* Doc. 104-1, ¶¶ 173-176, 188.

15. Third, permitting the Sheriffs to rejoin as proposed will prejudice Defendant in a number of ways.

16. Written and oral discovery taken from the Sheriffs was tailored to the allegations made in the Second Amended Complaint. The proposed amendments contain a number of allegations for which the prior complaints provided no notice.

   a. For example, the Sheriffs have never previously alleged that they wish to make long-term loans of magazines to friends and family. Doc. 104-1, ¶¶ 179-180. Moreover, the Sheriffs making those allegations were not deposed based on Plaintiffs' representation that they would not testify.

   b. Another example is the new factual allegation about certain firearms that the Sheriffs "wish to have the option…[to] personally purchas[e]," including the "Springfield Armory XD handguns in 9mm and .40 caliber, the Kel-Tec PMR .22 caliber pistol, and the SRM Arms model 1216 shotgun[.]" Doc. 104-1, ¶ 185. However, the Sheriffs' depositions did not cover in detail the Sheriffs' alleged desire to purchase and own any specific firearms because none of the previous complaints made any allegations to that effect.

   c. Plaintiffs' previous complaints suggested only in passing that HB 1229 was vague, and did not contain any claim of vagueness with

respect to HB 1229 in the claims for relief. Doc. 62, ¶¶ 208, 253-259. But Plaintiffs now offer a number of hypotheticals that are intended to suggest that HB 1229, along with HB 1224, is vague and unenforceable. These allegations assert an entirely new legal theory, and one which defense counsel has had no opportunity to explore in discovery.

    d. Plaintiffs submit no fewer than 12 affidavits from various Sheriffs that posit those Sheriffs' enhanced need for self-defense in their personal capacities. The factual allegations in these affidavits are entirely new. Even more troubling, however, is that all 12 of the Sheriffs who have submitted affidavits are among the group that the parties had agreed would neither testify nor be deposed.

17. In some instances, the allegations attempt to resuscitate claims that this Court has already dismissed.

    a. For example, Plaintiffs assert that "unanswered, unknown vagaries of HB 1224 and 1229," will interfere with the Sheriffs' activities "on-duty," and will affect "the personal decisions that Sheriffs must make regarding firearms and magazines that they personally handle *in the course of their employment.*" Doc. 104-1, ¶ 188 (emphasis added). The Sheriffs' concerns about how either statute

affects them in their official capacities are no longer at issue in this litigation.

b. Likewise, many of the hypotheticals that Plaintiffs claim remain unanswered relate directly to the Sheriffs' official capacity use or possession of large-capacity magazines. For example, the Sheriffs complain that they have no answer to the following request for admission: "Admit that HB 1229 forbids law enforcement officers from taking a citizen's firearm for temporary safe-keeping for more than 72 hours, unless the transfer is processed by a FFL pursuant to HB 1229's requirement for background check and for FFL record-keeping. By way of illustration, this question includes a situation in which a citizen is the victim of a crime or accident, is therefore unconscious, and is therefore unable to safeguard a firearm which the citizen was carrying or transporting." Doc. 104-1, ¶ 188. Such allegations are irrelevant to the Sheriffs' participation in their individual capacities, and serve only to further confuse the remaining issues before the Court.

c. In addition to attempting to re-raise official capacity claims, Plaintiffs also make an effort to revive their challenge to the "designed to be readily converted" language in HB 1224. They do so by asserting that "some nominally 15-round magazines are in fact

'capable of accepting' 16 rounds; due to variations in manufacturing tolerances, some springs for 15-round magazines are so compressible that 16 rounds will fit in the magazine." Doc. 104-1, ¶ 177. Plaintiffs now claim that it is "legally perilous to acquire a new a [sic] 15 round magazine," and suggest that the Sheriffs are impacted by this circumstance because they "wish to own such magazines, now and after they retire from law enforcement." Doc. 104-1, ¶ 178.

    d. That Plaintiffs' proposed amendments attempt to resuscitate claims that have been dismissed is demonstrated by their failure to amend their claims for relief. This Court dismissed Plaintiffs' second and third claims for relief, which asserted that HB 1224's "designed to be readily converted" language was vague and effectively banned all magazines. Yet these claims remain unaltered in the proposed amended complaint. Doc. 104-1, ¶¶ 303-311, 312-318.

18.    Defendant would be prejudiced both by the assertion of new factual allegations and the revival of claims for relief that this Court has already dismissed. While a continuance for additional discovery would be theoretically possible, it would be inconsistent with Plaintiffs' insistence that this case move forward to a disposition as quickly as possible. The Governor concurs that a speedy resolution of this dispute is desirable, and thus would oppose a

continuance for the purpose of reopening discovery to allow for Plaintiffs' attempt to raise new claims and revive old ones.

*Plaintiffs cannot show that they should be granted leave to amend under Rule 15.*

19. Assuming *arguendo* that Plaintiffs are able to establish good cause for modifying the scheduling order, they must also satisfy the requirements of Rule 15(a) for amending the pleadings. Under Rule 15(a), a court should allow a party to amend its pleadings "when justice so requires." Fed.R.Civ. P. 15(a). Denying leave to amend is proper if the proposed amendments are unduly delayed, unduly prejudicial, futile, or sought in bad faith. *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993).

20. In the Tenth Circuit, untimeliness alone may be a sufficient basis for deny a party leave to amend. *Duncan v. Manager, Dep't of Safety,* 397 F.3d 1300, 1315 (10th Cir. 2005); *Hayes v. Whitman,* 264 F.3d 1017, 1026 (10th Cir. 2001). The important inquiry is not simply whether a plaintiff has delayed, but whether such a delay is undue. *Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1206 (10th Cir. 2006). Delay is undue "when the party filing the motion has no adequate explanation for the delay." *Frank,* 3 F.3d at 1365-66.

21. Denial of an amendment is also appropriate when "the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint." *Las Vegas Ice & Cold Storage Co. v. Far West Bank,* 893 F.2d 1182,

1185 (10th Cir. 1990) (quoting *State Distribs., Inc. v. Glenmore Distilleries Co.,* 738 405, 416 (10th Cir. 1984)); *see also Federal Ins. Co. v. Gates Learjet Corp.,* 823 F.2d 383, 387 (10th Cir. 1987) ("Courts have denied leave to amend in situations where the moving party cannot demonstrate excusable neglect. For example, courts have denied leave where the moving party was aware of facts on which the amendment was based for some time prior to the filing of the motion to amend." (citations omitted).

22. Here, Plaintiffs do not assert that their proposed amendments are based on newly discovered facts, and offer no explanation as to why they did not allege those facts in previous versions of their complaint. Their delay is therefore undue.

23. As outlined above, Defendant will suffer substantial prejudice if the proposed amendments are permitted. The parties invested significant time and resources to conduct extensive discovery on the allegations in the Second Amended Complaint on a very expedited basis. In all, the parties conducted 38 depositions in the span of less than two months. Discovery closed in this case more than six weeks ago, and counsel for Defendant has invested considerable amounts of time researching and drafting a dispositive motion based on the evidence adduced during the discovery period. Unless discovery is reopened, Defendant will have no opportunity to test Plaintiffs' new theories and allegations prior to trial.

24. Reopening discovery, however, would not only increase the already substantial costs of litigating this case, but also would delay the proceedings further.

25. Accordingly, Defendant respectfully requests that this Court deny Plaintiffs' motion to amend their complaint.

26. In the alternative, in the event that the Court grants Plaintiffs' motion in whole or in part, Defendant respectfully requests that the Court permit additional discovery with respect to the proposed amendments. The need for additional written discovery would likely depend on the scope of the amendment permitted, but any reopened discovery period should certainly include an opportunity to depose any and all witnesses who intend to testify or otherwise provide evidence in support of the new allegations.

27. In the event that the proposed amendments are accepted and discovery is reopened, Defendant respectfully requests that the Court require the Sheriffs bear the costs of additional depositions.

28. In conclusion, Defendant understood the Court's order allowing the Sheriffs to seek leave to rejoin the suit individually as contemplating a simple amendment that would specifically incorporate and connect the factual allegations that Defendant had notice of and was able to explore in discovery to the individual capacity Sheriffs. The Governor would not have opposed such an amendment. Rather than submitting an amendment that is limited in scope,

however, Plaintiffs have taken advantage of the opportunity to add dozens of new factual allegations (many from witnesses whom the parties already agreed would not submit evidence), to resurrect claims that this Court has already dismissed, and to shoehorn additional factual allegations into the claims that were not dismissed. Permitting the Plaintiffs to amend their complaint in this fashion at this late date would change the nature of this litigation, impose substantial additional costs on the parties, and prejudice Defendant's ability to defend the constitutionality of a duly adopted state statute. Accordingly, Defendant respectfully requests that this Court deny the Plaintiffs' motion for joinder and to amend the complaint.

Respectfully submitted this 18th day of December, 2013.

JOHN W. SUTHERS
Attorney General

s/ *Matthew D. Grove*

DANIEL D. DOMENICO
Solicitor General*
DAVID C. BLAKE*
Deputy Attorney General
KATHLEEN SPALDING*
Senior Assistant Attorney General
MATTHEW D. GROVE *
Assistant Attorney General
JONATHAN P. FERO*
Assistant Solicitor General
JOHN T. LEE*
Assistant Attorney General
MOLLY MOATS*

Assistant Attorney General
Attorneys for Governor John W. Hickenlooper
*Counsel of Record
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6000

# CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2013 I served a true and complete copy of the foregoing RESPONSE TO MOTION FOR JOINDER AND LEAVE TO FILE AMENDED COMPLAINT upon all counsel of record listed below via the CM/ECF system for the United States District Court for the District of Colorado:

| | |
|---|---|
| David B. Kopel | david@i2i.org |
| Jonathan M. Anderson | jmanderson@hollandhart.com |
| Richard A. Westfall | rwestfall@halewestfall.com |
| Peter J. Krumholz | pkrumholz@halewestfall.com |
| Marc F. Colin | mcolin@bcjlpc.com |
| Anthony J. Fabian | fabianlaw@qwestoffice.net |

*s/ Matthew D. Grove*