IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01300-MSK-MJW

COLORADO OUTFITTERS ASSOCIATION, *et al.*

    Plaintiffs,

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

    Defendant.

### GOVERNOR'S MOTION TO DISMISS COUNT I AND CERTAIN PLAINTIFFS FOR LACK OF STANDING

**COMES NOW** Defendant John W. Hickenlooper, in his official capacity as the Governor of the State of Colorado, and moves for the dismissal of the Plaintiffs' first claim for relief with respect to all Plaintiffs for lack of standing.[1] In addition, the Governor seeks dismissal of the following Plaintiffs, with respect to all claims, for lack of standing:

- USA Liberty Arms
- Rocky Mountain Shooters Supply
- 2nd Amendment Gunsmith & Shooter Supply, LLC
- Burrud Arms d/b/a Jensen Arms

---

[1] The Governor's motion to dismiss [Doc. 64] challenged Plaintiffs' standing to raise what are now denominated as Counts II and III of the Fourth Amended Complaint. In its order on the motion to dismiss [Doc. 96], the Court ruled that Plaintiffs had standing on the third claim and that the first and second claims were merely alternative ways of challenging § 18-12-301 under the Second Amendment. The Governor maintains that Counts II and III are not justiciable, but acknowledges the Court's previous order and will not re-raise those arguments here.

1

- Green Mountain Guns
- Jerry's Outdoor Sports
- Specialty Sports and Supply
- Goods for the Woods
- Hamilton Family Shooting Center
- David Bayne

This brief will address standing of all Plaintiffs with respect to Counts I before turning to the standing of the individual Plaintiffs listed above.

## I. Count I should be dismissed because no Plaintiff has demonstrated standing to raise it.

Plaintiffs' first claim for relief challenges the constitutionality of C.R.S. § 18-12-301, which prohibits the new acquisition or transfer of large-capacity ammunition magazines – generally defined as magazines "capable of accepting, or…designed to be readily converted to accept, more than fifteen rounds of ammunition" – within the State of Colorado after July 1, 2013.

Before reaching the merits of this claim at trial, the Court should first consider whether it is properly justiciable under Article III. *See, e.g., Awad v. Ziriax*, 670 F.3d 1111, 1120 (10th Cir. 2012)*; Morgan v. McCotter*, 365 F.3d 882, 887 (10th Cir. 2004). A case "cannot proceed on the merits in the absence of . . . [a] case or controversy" under Article III of the U.S. Constitution. *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1223 (10th Cir. 2008). That showing requires a plaintiff to establish "injury in fact, causation, and redressability." *Id.* at 1224.

Plaintiffs assert that banning large-capacity magazines amounts to a "[p]rohibition on a class of firearms or their accessories that are in common use for self-defense and other lawful purposes," and that such a prohibition "is specifically prohibited by the Second Amendment pursuant to [*District of Columbia v.*] *Heller*, [554 U.S. 570 (2008)] and the incorporation of the Second Amendment right into the Fourteenth Amendment under *McDonald* [*v. City of Chicago*, 130 S.Ct. 3020 (2010)]." Doc. 116, ¶ 162.

### A. No Plaintiff is able to demonstrate any injury-in-fact associated with the limitation on magazine capacity.

Section 18-12-301 prohibits the acquisition and transfer of large-capacity magazines in the State of Colorado after July 1, 2013. Plaintiffs have not met their burden of demonstrating an injury in fact associated with this provision, and would be unable to establish any such injury at trial.

This is not to say that Plaintiffs fail to *allege* that § 18-12-301 injures them. Rather, the Governor maintains that Plaintiffs are unable to *prove* it. Plaintiffs claim that the limitation on magazine capacity injures them in two ways. First, the individual Plaintiffs[2] contend that they will be "unable to legally replace magazines that they owned prior to the effective date of HB 1224, as those magazines wear out, break, or are damaged" (individual claim) Doc. 116, ¶ 160. According to Plaintiffs, they use the grandfathered large capacity magazines for lawful purposes, including self-defense, sport shooting, and hunting. *Id.* at ¶ 159. Critically, however, no

---

[2] This group includes the Sheriffs, David Strumillo, David Bayne, Dylan Harrell, and the organizational Plaintiffs who assert associational standing on behalf of their members.

3

individual Plaintiff has ever alleged that § 18-12-301 has impaired his or her *current* ability to engage in self-defense.  Rather, due to the statute's grandfather clause all individual Plaintiffs may continue to equip firearms with LCMs that they owned before July 1, 2013.

Second, the business Plaintiffs[3] assert an economic injury. *Id.* at ¶ 78-80.  According to these plaintiffs, the "Federal Firearm Licensees…will be unable to sell many popular magazines or sell firearms in their standard configuration supplied by the manufacturers" (economic claim) *Id.* at ¶ 161.  Noticeably missing from either of these groups' allegations or evidence is a concrete and cognizable injury to their Second Amendment rights that flows from the statutory prohibition on future acquisitions and transfers of magazines holding 16 or more rounds.

### A.  Elements and Burden

"Plaintiffs bear the burden of proving standing with the manner and degree of evidence required at the particular stage of the litigation." *Hutchinson v. Pfeil*, 211 F.3d 515, 519 (10th Cir. 2000) (quotation omitted).  Discovery has been completed in this case.  Thus, this motion should be evaluated as would be a Fed. R. Civ. P. 56 motion for summary judgment.   To prevail, Plaintiffs must establish that there "exists no genuine issue of material fact as to justiciability, and mere allegations of injury, causation, and redressability are insufficient." *Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1280 (10th Cir.  2002) (quotation omitted), *cert. denied*, 123 S. Ct. 411 (2002).

---

[3] This group includes the federal firearms licensees and Hamilton Family Enterprises.

At "an irreducible constitutional minimum," a plaintiff must prove that he or she: (1) suffered an injury in fact that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical;' (2) of a causal connection between the injury and the complained-of conduct; and (3) that a favorable decision will likely redress the alleged injury." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An "injury in fact does not automatically occur by [t]he mere presence on the statute books of an unconstitutional statute . . . , even if [plaintiffs] allege an inhibiting effect on constitutionally protected conduct prohibited by the statute.'" *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1155-56 (10th Cir. 2006) (quoting *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006)).  The "complainant must allege an injury to himself that is 'distinct and palpable,' as opposed to merely 'abstract,' and the alleged harm must be actual or imminent**,** not 'conjectural' or 'hypothetical.'" *Finstuen v. Crutcher*, 496 F.3d 1139, 1143 (10th Cir. 2007) (quoting *Whitemore v. Arkansas*, 495 U.S. 149, 155 (1990).  When a law does not apply to a party, that party has suffered no invasion of a legally protected interest and may not question the law's constitutionality.  *See Warth v. Seldin*, 422 U.S. 490, 504 (1975) (reasoning that plaintiffs lacked standing to challenge ordinance because among other reasons, "none is himself subject to the ordinance's strictures").

> **B. Plaintiffs have not proven that they have or will suffer an actual and imminent injury of a protected right.**
>
> > **1. Plaintiffs have not asserted that they are currently suffering an actual injury to their Second Amendment right to self-defense.**

5

The challenged statute sets forth several exceptions to its prohibition of magazines that hold more than fifteen rounds. "A person may possess a large capacity magazine if he or she: (I) owns the large capacity magazine on" July 1, 2013, "and (II) maintains continuous possession of the large capacity magazine." C.R.S. § 18-12-302(2)(a). Although Plaintiffs contest this provision on vagueness grounds, they do not dispute that they may continue to legally own grandfathered high capacity magazines. *See* Doc. 116, ¶ 160. Plaintiffs have never alleged, and cannot prove, that HB 1224 *currently* violates their Second Amendment right to engage in self-defense. Significantly, Plaintiffs have never asserted that any member of their lawsuit, or anyone else, for that matter, does not already own one or more LCMs. On the contrary, various witnesses have alleged and/or admitted under oath that they are well-equipped with an adequate supply of grandfathered magazines:

Dylan Harrell: Mr. Harrell owns two 17-round magazines for a 9mm handgun, two 40-round magazines, thirteen 30-round magazines, and one 20-round magazine for his sporting rifles, and .22 caliber rifle with a large-capacity internal magazine. Exhibit A, Response to Interrogatory No. 4.

David Bayne: Mr. Bayne owns an AR15, and has "approximately four magazines that have a 30-cartridge capacity and three that have a 20-cartridge capacity." Exhibit B, Response to Interrogatory No. 4.

David Strumillo: Mr. Strumillo alleges that he carries firearms for his personal safety, and that those firearms "use magazines larger than 15 rounds."

6

Doc. 116, ¶ 61.  Mr. Strumillo confirmed this statement in his interrogatory responses, stating that he "owns several magazines of more than 15 rounds for [his] AR-15 type rifles and for the Glock 17."  Exhibit C, Response to Interrogatory No. 4 (responses marked "confidential" by Mr. Strumillo redacted).

Women for Concealed Carry:  Women for Concealed Carry alleges that its members currently "use and carry magazines which would be banned under HB 1224.  Doc. 116, ¶ 107.  The four "directors of WCC" – which comprise the group's entire membership – own two pistol magazines with 17-round capacity, two AR-15 magazines with 40-round capacities, fifty-four AR-15 magazines with 30-round capacities; three S&W 9mm magazines with 17-round capacities; two USP magazines with 18-round capacities, four Mini 14 magazines with 20-round capacities; and two M1 magazines with 16-round capacities.  Exhibit D, Responses to Interrogatories 1 and 4 (irrelevant material redacted).

John B. Cooke:  Mr. Cooke alleges that "he personally owns…magazines that accept more than 15 rounds of ammunition."  Doc. 116, ¶ 38.  At his deposition, Mr. Cooke confirmed that he owns "four or five…30-round magazines."  Exhibit E, Cooke Dep. 19:12-13 (testimony marked "confidential" by counsel during deposition redacted).

Remaining Sheriffs:  The remaining Plaintiff sheriffs were not deposed pursuant to agreement of the parties.  However, each of them has admitted through the allegations in the Fourth Amended Complaint that he or she currently owns one

7

or more magazines accepting more than 15 rounds of ammunition.  Doc. 116, ¶¶ 39-48.

Nor has any Plaintiff alleged or established that Colorado's law has prevented them from acquiring or possessing magazines that they currently deem necessary for self-defense.  *See generally* Doc. 116 (Fourth Amended Complaint). As already noted, grandfathered magazines are legal to possess; moreover, all of the Sheriffs are currently exempt from restrictions on LCM purchases and will remain so as long as they remain in office or are otherwise employed by a law enforcement agency.  C.R.S. § 18-12-302(3)(b)(II).  And anyone can purchase unlimited numbers of magazines that hold fifteen rounds or fewer.

The Second Amendment does not protect a right to carry "any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 570 U.S. at 626.  Rather, *Heller* focused on the right to personal self-defense, the core of which is the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." *United States v. Reese,* 627 F.3d 792, 800 (10th Cir. 2010). Even if the Court were to credit Plaintiffs' claim that LCMs are necessary for self-defense as a general matter, the undisputed evidence in this case establishes that Colorado's limitation on magazine capacity for future acquisition and transfer has had no *present* impact on any of the individual Plaintiffs' ability to defend themselves.  Whether this condition will continue into the foreseeable future – that is, whether Plaintiffs' alleged injury is concrete and imminent – is thus the operative question.

8

### 2. Plaintiffs' claims that § 18-12-301 will violate their Second Amendment rights rest on several steps of attenuation that are too speculative to merit standing.

Standing "is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.,* 454 U.S. 464, 486 (1982). Rather, the standing requirement focuses on whether "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Id.* at 472.  Therefore, a "threatened injury must be 'certainly impending' to constitute injury in fact." *Nova Health Systems v. Gandy,* 416 F.3d 1149, 1155 (10th Cir. 2005); (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158 (2005)); *see also Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005).

Because they all currently own grandfathered LCMs that they have admitted are sufficient for their self-defense needs, the individual Plaintiffs stake their individual challenges to § 18-12-301 on an assertion that they will be "unable to legally replace magazines that they owned prior to the effective date of HB 1224, as those magazines wear out, break, or are damaged." Doc. 116, ¶ 160.  That claim creates an insufficient basis for standing as a matter of law.  While the Supreme Court has recognized that a plaintiff "does not have to await the consummation of threatened injury to obtain preventative relief," *Pennsylvania v. West Virginia,* 262 U.S. 553, 593 (1923), this does not relieve a plaintiff of his burden of establishing an imminent injury in fact.  *Gandy,* 416 F.3d at 1155.  While imminence is "a

9

somewhat elastic concept," it is nevertheless a necessary showing in order "to ensure that the alleged injury is not too speculative for Article III purposes — that the injury is 'certainly impending.'" *Lujan*, 504 U.S. at 564 n.2. What is required is a showing that an injury *will* occur at a certain time in the future.

Plaintiffs lack standing to raise their first claim because it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotations omitted). The number of large capacity magazines in Colorado is in the millions (Doc. 119, p.22, ¶ 26), and each of the individual Plaintiffs has admitted to possessing an adequate current supply of them. *See supra,* pp.6-8. While magazine parts could conceivably wear out over time, it is undisputed that magazines can be repaired. Exhibit F (Deposition of Plaintiffs' expert Michael Shain), 196:15-24. Accordingly, even taking the Plaintiffs' allegations at face value, they will only suffer an injury to their self-defense right in the event that they lose or irreparably break the magazines that they already possess. In the meantime, the individual Plaintiffs are free to use the magazines that they have.

While it could be imagined that one or more Plaintiffs may run out of their current stock of grandfathered LCMs at some point in the future, the manifestation of that injury – even assuming that it would amount to a constitutional injury at all – is at this point speculative and conjectural. As Plaintiffs have admitted, "[t]he lifespan of any firearm magazine cannot be known." Doc. 119, p.23, ¶ 30. Indeed, "[d]epending upon use and maintenance, magazines may operate properly for

10

decades or more." *Id.* Without more, even those individual Plaintiffs who are not currently exempt from § 18-12-301 due to their status as law enforcement officers are unable to establish an invasion of the interest protected by the Second Amendment. *See, e.g., Colorado Interstate Gas Co. v. FERC*, 83 F.3d 1298, 1300 (10th Cir. 1996) (refusing to find standing because court unwilling to base its "exercise of jurisdiction on speculation regarding what may or may not occur in future rate-making proceedings.").

Plaintiffs may point to the amended allegations of the Sheriffs that they wish to "purchase…16-round and larger magazines, now and after retirement." Doc 116 (4th Amended Complaint), ¶¶ 38-48. Because these allegations were newly introduced as part of the 4th Amended Complaint, the Governor had no opportunity to conduct discovery on them. Nonetheless, the prohibition on the acquisition of new LCMs after July 1, 2013, cannot on its own injure the Second Amendment rights of a plaintiff who – by his own admission – is already adequately equipped for self-defense. Even assuming *arguendo* that a large-capacity magazine qualifies as an "arm," and therefore falls within the scope of the Second Amendment's guarantee, the Second Amendment does not protect an individual's right to purchase a specific firearm or even a specific type of firearm. *See, e.g. Walters v. Wolf,* 660 F.3d 307, 317-18 (8th Cir. 2011) (plaintiff not entitled to return of seized firearm under Second Amendment because the city seized only one of his firearms, and "did not prohibit Walters from retaining or acquiring other firearms"); *Robertson v. City & County of Denver,* 874 P.2d 325, 333 (Colo. 1994) (upholding ban

11

on assault weapons because "there are literally hundreds of alternative ways in which citizens may exercise the right to bear arms in self-defense"); Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L.Rev. 1443, 1486 (2009) ("Not all restrictions on the use of some devices to exercise a constitutional right are unconstitutional burdens on that right. And it's likewise possible to forbid certain kinds of guns without running a substantial risk of materially interfering with the ability to use arms in self-defense.")

Even assuming the truth of Plaintiffs' allegation that LCMs are necessary in order for them to adequately engage in their constitutional right of self-defense, the individual Plaintiffs cannot establish that they face an imminent injury associated with Colorado's restriction on capacity for magazines acquired after July 1, 2013. The Governor is thus entitled to judgment on Count 1. *See Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (agreeing with the proposition that "purely speculative harm does not amount to irreparable injury" and holding "that a plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative").

> **3. The business Plaintiffs' economic claims fail to confer standing because it does not present an injury to a legally protected interest.**

The FFLs and the shooting range lack standing because their asserted injury is grounded in alleged injury to their businesses. But the Second Amendment protects the individual right to self-defense; it does not recognize or protect the right

12

of corporations or other business entities to sell firearms or accessories. Indeed, no case has held that the Second Amendment encompasses a right to sell a firearm, let alone LCMs. At the outset, "*Heller* said nothing about extending Second Amendment protection to firearm manufacturers or dealers. If anything, *Heller* recognized that firearms manufacturers and dealers are properly subject to regulation . . . ." *Mont. Shooting Sports Ass'n v. Holder*, CV-09-147-DWM-JCL, 2010 U.S. Dist. LEXIS 104301, 2010 WL 3926029, at *21 (D. Mont. Aug. 31, 2010), *adopted by* CV-09-147-DWM-JCL, 2010 U.S. Dist. LEXIS 104286, 2010 WL 3909431, at *1 (D. Mont. Sept. 29, 2010). As the Fourth Circuit explained when it addressed the alleged right to sell a firearm, there is no authority "that remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to sell a firearm." *United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. 2011) (unpublished). Drawing from First Amendment law, the Fourth Circuit in *Chafin* cited the Supreme Court's decision in *United States v. 12 200-Foot Reels of Super 8mm. Film* for the proposition that "the protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to have someone sell or give it to others." 413 U.S. 123, 128 (1973). Likewise, an individual's ability to *sell* a certain type of magazine does not directly bear on the individual's capacity to possess operable firearms in their own right. *See Teixeira v. County of Alameda*, 2013 U.S. Dist. LEXIS 128435 (N.D. Cal. 2013); *United States v. Conrad*, 923 F. Supp. 2d 843, 2013 U.S. Dist. LEXIS 19145, 2013 WL 546373, at *7-8 (W.D. Va. Feb. 13, 2013).

The business Plaintiffs may counter that they should be permitted to assert the Second Amendment rights of their customers. But they have never asserted that they are attempting to do so in this case. Rather, the FFLs and Hamilton complain only that the magazine capacity limitations will hurt their businesses:

- The FFLs allege that they have "invested significant money in existing inventories of firearms with standard magazines larger than 15 rounds," and that "that investment will be lost without compensation if that inventory cannot be sold." Doc. 116, ¶ 78.

- Hamilton makes a similar claim, asserting that "approximately fifty percent of [its] gross revenue currently derives from the sale of firearms equipment, accessories, and ammunition," and that the limitation on magazine capacity has "already adversely impacted [its] business and income and will continue to do so in the future." Doc. 116 ¶ 94-95. Hamilton also claims that its customers "have already expressed concerns over the impact that HB 1224 and HB 1229 will have" on their ability to patronize the establishment "for fear of running afoul of the new laws."[4] Doc. 116 ¶ 95.

---

[4] Even if this could be construed as an attempt to assert its customers' rights, rather than a forecast of lost profits, it would be inadequate to establish Hamilton's standing. "Generally, a party cannot challenge laws or regulations that burden someone else's rights." *Trans-High Corp. v. State of Colorado,* 2014 U.S. Dist. LEXIS 19378 (D. Colo. Feb. 14, 2014) at * 6. While some courts have recognized a limited exception to this general rule arising in the First Amendment context, *see Penny Saver Publications, Inc. v. Village of Hazel Crest,* 905 F.2d 150, 153-54 (7th Cir. 1990), it has never been applied in a Second Amendment case. In any event, Hamilton is the only business Plaintiff who even remotely references its customers'

The business Plaintiffs may also attempt to assert that the ruling in *Illinois Ass'n of Firearms Retailers v. City of Chicago*, 2014 WL 31339 (N.D. Ill., Jan. 6, 2014) ("*IAFR*"), establishes that a corporation's loss of business due to firearms regulation could amount to an injury-in-fact in the Second Amendment context. But *IAFR,* which considered a challenge by "[t]hree Chicago residents and an association of Illinois firearms dealers" to the City of Chicago's outright ban on "virtually all sales and transfers of firearms inside the City's limits," does not support this contention. The opinion did not explicitly address standing at all, and the only injury identified by the court was an infringement on a law-abiding citizen's Second Amendment right to acquire a firearm. *Id.* at *30 (noting the under the challenged ordinance, "any new would-be gun owners cannot exercise their right to acquire a gun for self-defense within Chicago itself. This is a serious burden on that right."). Indeed, nothing in the opinion suggests that the plaintiff retail association asserted any economic injury on behalf of its members. In any event, nothing in the opinion supports the notion that a business or trade group could assert standing under the Second Amendment based on an allegation of economic injury cause by a regulatory requirement on commercial sales. *Cf. Heller*, 554 U.S. at 626-27 ("nothing in our opinion should be taken to cast doubt on…laws imposing conditions and qualifications on the commercial sale of arms").

Even if the Court were to hold that the individual Plaintiffs had standing on Count I, a ruling that the business Plaintiffs lacked standing with respect to the

---

asserted rights. The remainder of the FFL Plaintiffs simply complain that the limitation on magazine capacity will hurt their businesses.

same claim would streamline the trial consistent with Fed. R. Civ. P. 1 by affirming the irrelevance of the business Plaintiffs' assertions of economic injury. Because the business Plaintiffs stake their first claim for relief solely on the alleged financial impacts caused by Colorado's limit on magazine capacity, they failed to establish an injury in fact that is cognizable under the Second Amendment. Because none of the Plaintiffs have standing with respect to Count I, this Court should enter judgment in favor of the Governor.

## II. Several Plaintiffs lack standing to assert any claim in this case, and should be dismissed entirely.

Several Plaintiffs have asserted no cognizable injury and should be dismissed from the case outright prior to trial.

### A. Licensed firearms dealers and Hamilton Family Shooting Center.

For the reasons outlined *supra*, the licensed firearms dealers[5] and Hamilton Family Shooting Center cannot prove that the magazine capacity limitation burdens any conduct falling within the scope of what the Second Amendment guarantees to them as business entities. Accordingly, because they have not suffered an injury-in-fact to a legally protected interest, they do not have standing under Article III. *Lujan*, 504 U.S. at 560.

The business Plaintiffs are also included in Count V, which challenges the constitutionality of Colorado's expanded background check requirement. Plaintiffs

---

[5] Although they have not sought an order under Fed. R. Civ. P. 41(a), the Plaintiffs have dropped Grand Prix Guns from the caption and body of the Fourth Amended Complaint. However, Grand Prix Guns was identified as a Plaintiff in the Court's most recent order. Doc. 127 at 1.

assert that FFLs are "reluctan[t]" to conduct private background checks, but they assert no injury at all, economic or otherwise, associated with the implementation of § 18-12-112. Indeed, the FFL Plaintiffs cannot, by definition, be injured by the expanded background check requirement for two reasons. First, an FFL's decision to perform (or decline to perform) background checks for private sales is entirely voluntary. Section 18-12-112 does not oblige an FFL to participate if it does not wish to do so. An FFL may oppose the expanded background check requirement in principle, or may conclude that providing checks would be inconsistent with its business model. But neither of these reasons could amount to an injury-in-fact at all, much less one that is cognizable under the Second Amendment.

Second, the challenged statute explicitly exempts licensed gun dealers. § 18-12-112(1)(a). In other words, Colorado FFL may acquire a firearm from a private seller or other type of transferor without first having to conduct a background check.

The exemption for FFLs does not apply to the Family Shooting Center, which is not a licensed firearms dealer. Nonetheless, the Family Shooting Center has expressly disclaimed that it has suffered any injury associated with the expanded background check requirement. As its representative testified during his deposition: "the transfer of firearms…as it relates to 1229, is not something that we really get involved with[.]" Exhibit G, Hamilton Dep. 48:10-12.

Accordingly, neither the licensed firearms dealers nor the Family Shooting Center are able to demonstrate an injury-in-fact with respect to any of the claims

17

for relief in the Fourth Amended Complaint. They therefore lack standing to remain as Plaintiffs in this litigation. Representatives of Hamilton Family Shooting Center, Burrud Arms d/b/a Jensen Arms, and Rocky Mountain Shooters' Supply have all been listed by the Plaintiffs as witnesses at trial, and Plaintiffs have indicated their intent to introduce voluminous lists regarding, among other things, "Plaintiffs' sales [and] inventories." Doc. 125 (Exhibit 15). The dismissal of these entities as Plaintiffs would be consistent with Rule 1 insofar as it will streamline the trial by affirming that the Plaintiff business entities cannot demonstrate a Second Amendment injury by presenting evidence about lost profits and any effect of the challenged legislation on Plaintiffs' businesses.

### B.  David Bayne

During his deposition, Plaintiff David Bayne revealed that he no longer lives in Colorado and has no plans to return. Exhibit H, Bayne Dep., 7:9-20; 8:7-12. Because he does not currently reside in the State of Colorado and has no intent to return, Mr. Bayne is under no credible threat of future prosecution, and must be dismissed as a Plaintiff. *Dias v. City and County of Denver,* 567 F.3d 1169, 1176 (10th Cir. 2009).

### CONCLUSION

Based on the foregoing reasoning and authorities, the Governor respectfully requests that the Court dismiss Count I of the Fourth Amended Complaint for lack of standing by any Plaintiff to assert it, and to dismiss the FFLs and Hamilton Family Shooting Center from this action entirely.

Respectfully submitted this 7th day of March, 2014.

JOHN W. SUTHERS
Attorney General

s/ *Matthew D. Grove*

**Matthew D. Grove\***
Assistant Attorney General
**Kathleen Spalding\***
Senior Assistant Attorney General
**Stephanie Scoville\***
Senior Assistant Attorney General
**LeeAnn Morrill\***
First Assistant Attorney General

\*Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2014, I served a true and complete copy of the foregoing **MOTION TO DISMISS COUNT I AND CERTAIN PLAINTIFFS FOR LACK OF STANDING** upon all counsel of record listed below via the CM/ECF system for the United States District Court for the District of Colorado:

| | |
|---|---|
| David B. Kopel | david@i2i.org |
| Jonathan M. Anderson | jmanderson@hollandhart.com |
| Richard A. Westfall | rwestfall@halewestfall.com |
| Peter J. Krumholz | pkrumholz@halewestfall.com |
| Marc F. Colin | mcolin@bcjlpc.com |
| Anthony J. Fabian | fabianlaw@qwestoffice.net |

*s/ Matthew D. Grove*