**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-01300-MSK-MJW

JOHN B. COOKE, Sheriff of Weld County, Colorado, *et al.*

Plaintiffs,

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

Defendant.

---

**PLAINTIFF GOODS FOR THE WOODS' RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

---

Plaintiff Goods for the Woods, ("Plaintiff") by and through its counsel, Marc F. Colin and Jonathon M. Watson of Bruno, Colin & Lowe, P.C., make the following Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents:

**INTERROGATORIES**

**Interrogatory 1:** With respect to the allegations of paragraphs 128 – 137 of the Second Amended Complaint, list all items in your possession on or after July 1, 2013 that you contend you are barred from selling to Colorado individuals and entities (not including military or law enforcement entities) due to the provisions of HB 1224. With respect to each such item, please list:

a) the date of purchase and the purchase price;

b) the reason(s) you believe that you cannot sell each such item;

c) the damages, if any, you have suffered due to your inability to sell these items, explaining in detail how you calculated these damages;

d) the number of each such item you sold monthly from January 1, 2008 to the present;

Exhibit D

e) the number of each such item sold to Colorado individual or entities (excluding law enforcement or military entities) monthly since January 1, 2008;

f) the percentage of your monthly revenue from the sale of each such item since January 1, 2008.

**Response to Interrogatory 1:**

Plaintiff objects to Interrogatory 1 as overbroad and as not reasonably calculated to lead to the discovery of admissible evidence. In addition, it is unduly burdensome and oppressive. Plaintiff, however, does not object to the extent that it will not reply to the best of its abilities. Much of the information and date requested in Interrogatory 1 is simply unobtainable based on Plaintiff's systems and technology.

Without waiving the above objections, Plaintiff is barred from selling all magazines and associated firearms that hold greater than 15-rounds. Plaintiff has attempted to obtain lower capacity magazines that are compatible with all firearms. However, these magazines are not always available, either because they do not exist or they are difficult to obtain. Moreover, there is not a strong market for firearms with fewer than 16-round magazines when the firearm is designed for higher capacity magazines.

Plaintiff is also barred from selling magazines and associated firearms that hold 15 or fewer rounds and also have removable base plates due to HB 1224's "designed to be readily converted clause." Magazines and associated firearms that hold 15 or fewer rounds and also have removable base plates constitute greater than 95% of all magazines sold by Plaintiff. HB 1224 prohibits the sale of these magazines and associated firearms, and the non-binding Technical Guidance two does not relieve the Plaintiff from a credible threat of prosecution for the sale of these items.

Goods for the Woods is precluded by HB 1224 from selling magazines which hold more than 15 rounds of ammunition and the associated firearms which utilize magazines that hold more than 15 rounds. These firearms are typically delivered by the manufacturer with one or two magazines that hold more than 15 rounds and which are specifically designed for use with the associated firearm. In order to sell a firearm that is designed for use in conjunction with a magazine that holds 16 rounds or more, Goods for the Woods must purchase magazines that fit the associated firearm and which hold less than 16 rounds. As of July 1, 2013 Goods for the Woods had a substantial inventory of magazines that held 16 rounds of ammunition or more. Goods for the Woods was compelled to mitigate its damages by selling these magazines out of state which resulted in a loss of approximately $2,000. Further, in order to sell AR-15 style rifles and/or semi-automatic pistols which are designed to utilize magazines which carry 16 rounds of ammunition or more, it was necessary for Goods for the Woods to obtain replacement magazines with a capacity of 15 rounds or less which can be utilized with these firearms.

Exhibit D

Goods for the Woods obtained 10 round magazines which cost $15.56 apiece to facilitate the lawful sale of this style of firearm. The majority of firearms that fall in to this category and which were in inventory or delivered after July 1, 2013 had to be sold out of state to another FFL at a loss of approximately $4,000. Goods for the Woods now maintains a very small inventory of this style of firearm which it now offer for sale with accompanying10 round magazines. Since July 1, 2013, there is very little customer interest in purchasing a firearm designed to utilize 16 rounds or more with a magazine which holds 10 rounds of ammunition. As such, the sales of this style of firearm have decreased drastically since July 1, 2013. From January of 2008 through June 30, 2013 Goods for the Woods sold on average, 15 firearms a month which were designed to use a magazine holding 16 rounds or more. I am not able to provide the requested information with regard to magazine sales.

**Interrogatory 2:** If you contend you have sustained damage or loss due to the provisions of HB 1224 and HB 1229, describe the damages or losses in detail, and explain in detail how you calculated these damages or losses.

**Response to Interrogatory 2:**

As stated above**,** HB 1224 and HB 1229 have caused Plaintiff significant economic damages because Goods for the Woods has been unable to sell all magazines and related firearms that hold greater than 15-rounds, which amounts to a considerable amount of inventory. The economic damages associated with the loss of sales and the "dead" inventory as of July 1, 2013 is specifically described in response to Interrogatory 1 above. Examples of the magazines and firearms described above which Goods for the Woods was compelled to sell to out of state FFLs at a loss are:

Smith and Wesson M&P 9 mm-1
Smith and Wesson M&P 15- 3
Smith and Wesson M&P 15-15.56-3
Ruger SR9 9mm-1
Mossberg 591 12 gauge-5
AR-15 magazines-250
Rock River 308 magazines-97
Beretta 92, 25 round magazines-9
Butler Creek 10 22 cal. magazines-6

**Interrogatory 3:** Since June 30, 2013, have you have sold firearms that carry standard magazines larger than 15 rounds? If you have, please describe the items you have sold, and state:

a) whether the standard magazine was included in the sale;

  b) the number of each such firearm you have sold;

c) the number of each such firearm sold to Colorado individual or entities (excluding law enforcement or military entities);

d) the percentage of your monthly revenue from the sale of these firearms;

e) your purchase price and the price for which you sold each firearm;

f) whether each such firearm can be used with a magazine that carries fewer than 16 rounds.

**Response to Interrogatory 3:** As stated in response to Interrogatory number 1 above, Goods for the Woods sold its entire 16+ magazine inventory to an out of state FFL and the majority of its inventory of firearms designed for use with magazines which hold 16 rounds or more to an out of state FFL resulting in the losses reflected in response #1. Plaintiff has located 10 round magazines that will function appropriately in firearms designed for use with magazines which hold 16 rounds or more and has attempted to sell these firearms with the lower capacity magazines with little success.

**Interrogatory 4:** Since June 30, 2013, have you have sold magazines with removable floor plates or end caps? If you have, please describe the items you have sold and state:

a) the number of each such magazine you have sold;

b) the number of each such magazine sold to Colorado individual or entities (excluding law enforcement or military entities);

c) the percentage of your monthly revenue from the sale of these magazines;

d) your purchase price and the price for which you sold the magazines.

**Response to Interrogatory 4:** Plaintiff objects to Interrogatory #4 as calling for a response which is potentially criminally incriminating and Plaintiff asserts her 5th Amendment privilege against self-incrimination. Plaintiff believes that she continues to face a credible threat of criminal prosecution should she respond to this Interrogatory in light of the fact that Technical Guidance 2 is non-binding. Plaintiff will respond to this Interrogatory upon receipt of a grant of use immunity by the Attorney General.

Exhibit D

**Interrogatory 5:** For each month from January 1, 2008 to June 30, 2013, state the number of sales you made of firearms that carry standard magazines larger than 15 rounds. For each month, state:

a) whether the standard magazine was included in the sale;

b) the price you paid and the price for which the item sold;

c) the number of each such item you sold;

d) the number of each such item sold to Colorado individual or entities (excluding law enforcement or military entities);

e) the percentage of your monthly revenue from the sale of these firearms;

f) whether each such firearm can be used with a magazine that carries fewer than 16 rounds.

**Response to Interrogatory 5:**

Plaintiff objects to Interrogatory 5 on the basis that the price paid, price sold, and profits for magazines and associated firearms that hold greater than 15-rounds is irrelevant. Plaintiff's standing to challenge HB 1224 with regard to the sale of magazines and associated firearms which utilize magazines which carry more than 15 rounds has not been challenged and as such Plaintiff's economic damages caused by HB 1224's ban on magazines which hold more than 15 rounds is irrelevant. Given that Defendant has 11th Amendment immunity which prevents an award of economic damages suffered by this Plaintiff, the specific economic losses suffered by the Plaintiff as the result of HB 1224's ban on magazines which carry more than 15 rounds is irrelevant.

**Interrogatory 6:** For each month from January 1, 2008, state the number of sales you made of magazines with removable floor plates or end caps. For each month, state:

a) the price you paid and the price for which the magazine sold;

b) the number of each such magazines you sold;

c) the number of each such item sold to Colorado individual or entities (excluding law enforcement or military entities);

d) the percentage of your monthly revenue from the sale of these magazines.

Exhibit D

**Response to Interrogatory 6:**

Plaintiff objects to Interrogatory 6 as overbroad and as not reasonably calculated to lead to the discovery of admissible evidence. In addition, it is unduly burdensome and oppressive. Much of the information and date requested in Interrogatory 6 is simply unobtainable based on Plaintiff's systems and technology. Goods for the Woods did not and does not keep a record of the individual sales of magazines with removable floor plates or end caps or which differentiate the sale of magazines which hold 15 rounds or less from those which hold 16 rounds or more. I would estimate that roughly 95% of the sales of magazines during the relevant time period involved the sale of a magazine which had a removable floor plate or end cap. Goods for the Woods does not maintain monthly sales figures of these items. Between January 2008 and June 30, 2013 I would estimate that Goods for the Woods sold approximately 12,000 magazines in total, approximately 95% of which utilized a removable floor plate or end cap system. Thus, in the 54 months since January of 2008 the average monthly sales of magazines with removable floor plates or end caps was approximately 180 magazines a month..

**Interrogatory 7:** For each month from January 1, 2008 to the present, state the number of sales of magazines that carry (without modification) 16 or more rounds, and for each month, please state:

a) the price you paid and the price for which the magazine sold;

b) the number of each such magazine you sold;

c) the number of each such item sold to Colorado individual or entities (excluding law enforcement or military entities);

d) the percentage of your monthly revenue from the sale of these magazines.

**Response to Interrogatory 7:**

It appears that Interrogatory 7 and Interrogatory 5 are redundant. Just as with Interrogatory 5, Plaintiff objects to Interrogatory 7 on the basis that the price paid, price sold, and profits for magazines and associated firearms that hold greater than 15-rounds is irrelevant. Plaintiff's standing to challenge HB 1224 with regard to the sale of magazines and associated firearms which utilize magazines which carry more than 15 rounds has not been challenged and as such Plaintiff's economic damages caused by HB 1224's ban on magazines which hold more than 15 rounds is irrelevant. Given that Defendant has 11th Amendment immunity which prevents an award of economic damages suffered by this Plaintiff, the specific economic losses suffered by the Plaintiff as the result of HB 1224's ban on magazines which carry more than 15 rounds is irrelevant.

Exhibit D

**Interrogatory 8:** Describe all communications you have had with firearm or magazine manufacturers or suppliers concerning HB 1224 or the effect of any provision of HB 1224 with respect to the shipment, purchase, or sale of firearms and magazines. In your response, please include:

a) the substance of the communication;

b) the date and means (e.g. phone, letter, e-mail) of each communication;

c) the name of the person(s) engaged in the communication, their job titles or capacities with your business and with the business of the manufacturer/supplier, and the name of the manufacturer/supplier;

d) whether you had any communication in connection with returning firearms or magazines that do not comply with the provisions of HB 1224 to the manufacturer or supplier.

**Response to Interrogatory 8:**

I have communicated with Dawn, the Springfield representative, Taylor, the Sig Sauer representative and Jay Vier, the representative from Smith and Wesson regarding the matters enumerated in this Interrogatory. These communications were conducted over the phone.

The substance of my communication with Dawn was the availability of magazines with a capacity of 15 rounds or less for use in conjunction with firearms manufactured by Springfield for use with higher capacity magazines. Dawn advised that Springfield would not be providing these lower capacity magazines for their firearms.

The substance of my communication with Taylor was the availability of magazines with a capacity of 15 rounds or less for use with firearms manufactured by Sig Sauer which were designed to be utilized with higher capacity magazines. Taylor advised that Sig Sauer was willing to provide a magazine manufactured by Sig Sauer that would function properly with a firearm designed for use with a higher capacity magazine however Sig Sauer has not yet provided such magazines to Goods for the Woods.

The substance of my communication with Jay Vier was the availability of magazines with a capacity of 15 rounds or less for use with firearms manufactured by S & W which were designed to be utilized with higher capacity magazines. Jay advised that S & W was willing to provide a magazine manufactured by S & W that would function properly with a firearm designed for use with a higher capacity magazine. S & W has provided a few lower capacity magazines to Goods for the Woods for this purpose.

I do not know the precise dates and times of these communications however the bulk of them occurred in the spring and summer of 2013.

**Interrogatory 9:** Describe in detail the items that you sold prior to July 1, 2013 that you no longer sell due directly or indirectly to the provisions of HB 1224. For each such item, please state:

a) why you no longer sell each such item;

b) if applicable, why you believe that the sale of each item violates (or may violate) the provisions of HB 1224.

**Response to Interrogatory 9:**

Plaintiff is barred from selling all magazines and associated firearms that hold greater than 15-rounds. Plaintiff has attempted to obtain lower capacity magazines that are compatible with all firearms. However, these magazines are not always available, either because they do not exist or they are difficult to obtain. Moreover, there is not a strong market for firearms with fewer than 16-round magazines when the firearm is designed for higher capacity magazines.

After July 1, 2013, Goods for the Woods no longer sells magazines with a capacity of 16 rounds of ammunition or more due to the prohibitions in HB1224. As noted above, Goods for the Woods also no longer sells firearms designed to carry magazines with a capacity of 16 rounds or more absent the ability to locate magazines which carry 15 rounds or less which function in one of these firearms. Goods for Woods no longer engages in background checks arising from the private sale of firearms.

With regard to the sale of magazines with removable floor plates or end caps with a capacity of 15 rounds or less since July 1, 2013, Plaintiff asserts her 5th Amendment privilege against self- incrimination. Plaintiff believes that she continues to face a credible threat of criminal prosecution should she respond to this Interrogatory in light of the fact that Technical Guidance 2 is non-binding. Plaintiff will respond to this Interrogatory upon receipt of a grant of use immunity by the Attorney General.

**Interrogatory 10:** From January 1, 2008 to June 30, 2013, have you sold magazine extension products or readily fabricated magazine extensions? If you have sold these items, please describe the items you sold during this period and state the dates (by year) the items were sold.

**Response to Interrogatory 10:**

No

**Interrogatory 11:** Since January 1, 2008, have you charged fees for completing ATF Form 4473? If you have charged a fee, for each month, please state:

a) the amount of any fee(s) charged to complete Form 4473 in situations **that did not involve a profitable sale**, the number of these transactions, and whether that fee was charged to every such customer;

b) the amount of the fee(s) you charged to complete Form 4473 in situations **that involved a profitable sale**, the number of these transactions, and whether that fee was charged to every such customer.

**Response to Interrogatory 11:**

Goods or the Woods began charging fees for completing ATF Form 4473 in mid-March of 2013 at a cost of $10 per customer. Goods for the Woods does not offer this service for private (non-profitable) transfers. Since mid to late March of 2013, Goods for the Woods has performed approximately 400 background checks utilizing Form 4473 and has paid the State approximately $4,000 in fees. Roughly 200-250 of these background checks have been performed since July 1, 2013.

**Interrogatory 12:** State by month the number of instances, since January 1, 2008, when you charged no fee for completing ATF Form 4473, and state whether, in each instance, the transaction involved a profitable sale.

**Response to Interrogatory 12:**

Not applicable

**Interrogatory 13:** State your yearly sales revenues beginning January 1, 2008 to the present, and with respect to this revenue, state the percentage of sales to:

a) out-of-state transferees;

b) the United States government, or branches of the U.S. armed forces;

c) the State of Colorado or its departments, agencies, or subdivisions.

**Response to Interrogatory 13:**

a) Over this time span I would estimate 5%
b) 1%

**Exhibit D**

c) 2%

**Interrogatory 14:** Have you ever been sued or suffered damages for processing a background check? If so, please provide details of any claims made against you, the date of the claim(s), the resolution of the claims, and any damages you sustained.

**Response to Interrogatory 14:**

No

**Interrogatory 15:** How many total background checks have you requested (by month) since January 1, 2008 and how many of these background checks resulted in the denial of a sale?

**Response to Interrogatory 15:**

Goods for the Woods does not maintain this information in any readily retrievable form, nor does it keep monthly records with this data. Goods for the Woods maintains log books for each year which would contain this information however to do a hand search of every entry since January of 2008 to ascertain total monthly background checks and results would be unduly burdensome. I would estimate that Goods for the Woods performed approximately 8,700 background checks during this time period for an average of 131 background checks per month. I cannot provide information regarding denials however I would estimate that roughly 200 background checks over this time period resulted in denials.

**REQUESTS FOR PRODUCTION**

**Request for Production 1:** Provide all documents supporting your response to Interrogatory #1.

**Request for Production 2:** Provide all documents supporting your response to Interrogatory #2.

**Request for Production 3:** Provide all documents supporting your response to Interrogatory #3.

**Request for Production 4:** Provide all documents supporting your response to Interrogatory #4.

**Request for Production 5:** Provide all documents supporting your response to Interrogatory #5.

**Exhibit D**

**Request for Production 6:** Provide all documents supporting your response to Interrogatory #6.

**Request for Production 7:** Provide all documents supporting your response to Interrogatory #7.

**Request for Production 8:** Provide copies of all documented correspondence to which you have referred in your response to Interrogatory #8.

**Request for Production 9:** Provide copies of documents describing and stating the quantity of magazine extension products or readily fabricated extensions you sold from January 1, 2008 to June 30, 2013.

**Request for Production 10:** Provide all documents supporting your response to Interrogatory #13.

**Request for Production 11:** Provide all documents describing or pertaining to any claims brought against you for processing a background check.

Dated this 9th day of October, 2013 as to form, content and objections.

*s/ Marc F. Colin*
Marc F. Colin
Jonathon M. Watson
BRUNO, COLIN & LOWE, P.C.
1999 Broadway, Suite 3100
Denver, Colorado 80202
Tel: (303) 831-1099
Fax: (303) 831-1088
E-mail:mcolin@brunolawyers.com
jwatson@brunolawyers.com
*Attorney for Plaintiffs Attorney for Defendants:(USA) Liberty Arms, LLC; Rocky Mountain Shooter's Supply, LLC; 2nd Amendment Gunsmith & Shooter Supply, LLC; Burrud Arms Inc. d/b/a Jensen Arms; Green Mountain Guns;Jerry's Outdoor Sports; Grand Prix Guns; Specialty Sports & Supply; and Goods for the Woods*

**VERIFICATION**

STATE OF COLORADO )
) ss.
COUNTY OF ____________)

I do solemnly swear to affirm under the penalty of perjury that I have read the foregoing answers to written Interrogatories made and answered by me and that the said answers are true, complete and accurate to the best of my knowledge.

Exhibit D

____________________________________

Subscribed and sworn to before me this _____ day of October, 2013, by ____________________________________.

[SEAL]

____________________________________
Notary Public

My commission expires: __________

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of October, 2013, I electronically served the foregoing on the following:

Matt.Grove@state.co.us
Kit.Spalding@state.co.us
Jon.Fero@state.co.us
David.Blake@state.co.us
Dan.Domenico@state.co.us
DAbbott@hollandhart.com
david@i2i.org
PKrumholz@halewestfall.com
RWestfall@halewestfall.com

Exhibit D

fabianlaw@qwestoffice.net

*s/ Marc F. Colin*
Marc F. Colin
Jonathon M. Watson

**Exhibit D**