IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01300-MSK-MJW

JOHN B. COOKE, SHERIFF OF WELD COUNTY, COLORADO, et al.,

Plaintiffs,

vs.

JOHN W. HICKENLOOPER, GOVERNOR OF THE STATE OF COLORADO,

Defendant.

---

**REPORTER'S TRANSCRIPT**
MOTION FOR PRELIMINARY INJUNCTION

---

Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 9:05 a.m., on the 10th day of July, 2013, in Courtroom A901, United States Courthouse, Denver, Colorado.

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

**APPEARANCES**

DAVID BENJAMIN KOPEL, Attorney at Law, Independence Institute, 13952 Denver West Parkway, #400, Golden, Colorado, 80401, appearing for the Sheriff Plaintiffs.

RICHARD A. WESTFALL, Attorney at Law, Hale Westfall, LLP, 1445 Market Street, Suite 300, Denver, Colorado, 80202, appearing for Colorado Outfitters Association, et al.

MARC F. COLIN, Attorney at Law, Bruno Colin & Lowe P.C., 1999 Broadway, Suite 3100, Denver, Colorado, 80202, appearing for the USA Liberty Arms, et al.

ANTHONY JOHN FABIAN, Attorney at Law, Anthony J. Fabian, P.C., 510 Wilcox Street, #C, Castle Rock, CO 80104, appearing for Colorado State Shooting Association.

DANIEL D. DOMENICO, Solicitor General, Colorado Attorney General's Office, 1300 Broadway, Denver, Colorado, 80203, appearing for the Defendant.

JONATHAN P. FERO, Assistant Solicitor General, Colorado Attorney General's Office, 1300 Broadway, Denver, Colorado, 80203, appearing for the Defendant.

KATHLEEN SPALDING and MATTHEW D. GROVE, Assistant Attorneys General, Colorado Attorney General's Office, 1300 Broadway, Denver, Colorado, 80203, appearing for the Defendant.

DAVID C. BLAKE, Deputy Attorney General, Colorado Attorney General's Office, 1300 Broadway, Denver, Colorado, 80203, appearing for the Defendant.

**P R O C E E D I N G S**

*THE COURT:* Court is convened today in Case No. 13-cv-1300, which is encaptioned in abbreviated form as Cooke v. Hickenlooper.

Could I have entries of appearance, please.

*MR. WESTFALL:* Good morning, Your Honor. Richard Westfall of Hale Westfall appearing today on behalf of a group of the plaintiffs.

*THE COURT:* Good morning and welcome.

*MR. KOPEL:* Good morning, Your Honor. David Kopel on behalf of 55 sheriffs and David Strumillo.

*THE COURT:* Good morning and welcome.

*MR. FABIAN:* Good morning, Your Honor. Anthony Fabian on behalf of Colorado State Shooting Association and Hamilton Family Enterprises.

*THE COURT:* Good morning and welcome.

*MR. COLIN:* Good morning, Your Honor. Marc Colin on behalf of the nine federally licensed firearms dealer plaintiffs.

*THE COURT:* Good morning, welcome.

*MR. DOMENICO:* Good morning, Your Honor. Dan Domenico, Solicitor General, appearing on behalf of Governor Hickenlooper. I'm joined by Assistant Attorney General Kit Spalding, Deputy Attorney General David Blake, Assistant Attorney General Matt Grove, and Assistant Solicitor General

John Fero, all representing the Governor.

*THE COURT:* Good morning and welcome.

This morning's hearing was set down to address a motion for preliminary injunction, that motion having been filed at Docket No. --

Ms. Glover, can you help me? I'm looking.

*COURTROOM DEPUTY:* I think it's No. 29.

*THE COURT:* I think so too. Docket No. 29.

Last evening at about 9:30, the parties filed a proposed stipulated preliminary injunction found at Docket No. 56-1.

I've had an opportunity to review the stipulated preliminary injunction. And while it reflects that the parties have resolved their dispute for purposes of interpretation of two portions of one of the statutes that is at issue in this case, I do not believe this court can enter a preliminary injunction as requested.

That is for several reasons. First of all, I've had the opportunity to study the briefing that has been submitted. And in doing so, I reviewed a number of applicable cases, some cited by the parties, some that I've reviewed upon my own research. A number of these pertain to standing. And while the parties here agree that some plaintiff has standing for purposes of the case, a separate standing requirement is applicable for a request for prospective injunctive relief with

regard to a penal statute.

I do not have the factual showing in order to find standing of any plaintiff for purposes of that relief. And as a consequence, I cannot determine that there is a case or controversy that falls within the jurisdiction of this Article III court. That does not mean that there is not a party that has standing for purposes of the lawsuit as a whole, only as to the motion for preliminary injunction.

The second problem that I run into is that paragraph 3 of the proposed stipulated preliminary injunction reflects the parties' agreement that the technical guidance memorandum prepared for and at the direction of the Governor by the Attorney General is the official written interpretation of the applicable statute and that it is binding and has the force of law. That being the case, there is nothing for this court to enjoin.

Finally, looking at paragraph 4 of the stipulation, the terms of the stipulation provide that "the Court hereby issues a preliminary injunction binding the Governor and any of his officers, agents, servants, employees, attorneys as follows."

To the extent that the subparagraphs reflect the terms of the technical guidance, it's already the law of the state, and there is nothing for me to enjoin. To the extent that it deviates from the technical guidance, I understand the

agreement between the parties to be that the Governor will direct amendment of the technical guidance in accordance with the parties' agreement.

That takes me to the question of counsel as to whether you would prefer me to deny the motion for preliminary injunction or whether you would prefer to withdraw it, there being no pending dispute between the parties as originally styled in Docket No. 29.

What is your pleasure?

*MR. WESTFALL:* Your Honor, as of yesterday, we were prepared to put on our full case. We had our witnesses prepared and ready to go. We had extensive negotiations. It went well into the evening last night --

*THE COURT:* I gather.

*MR. WESTFALL:* -- that reached the stipulation we presented to the Court. If I understood the Court's questions correctly, the choices are -- neither one very good from the plaintiffs' perspective -- either withdrawing or having our motion denied. I would respectfully request, if I think I understand where the Court is coming from, to allow us to do further briefing and submit affidavits. And we would be happy to do so in very prompt short order.

*THE COURT:* Well, I don't understand why that would be necessary. You've reached an agreement.

*MR. WESTFALL:* Because the technical guidance --

because there are two specific paragraphs within the proposed injunction that has been presented to this court that we believe fill the gap. We were prepared yesterday to present to the Court that there was still a delta between the technical guidance and what we believed to be proper injunctive relief to protect our clients.

*THE COURT:* Right. How the statute would be enforced. And I understand the Governor is now agreeing as to how the statute will be enforced.

*MR. WESTFALL:* It would have to be enforced, based upon the plaintiffs' perspective, based upon this court entering the injunction.

*THE COURT:* Well, let's walk down that path for just a minute.

Let's assume that I entered this proposed injunction. Let's assume I had jurisdiction to do it because there was someone who had standing to request this particular kind of relief, and let's assume it's issued.

How do you see this court enforcing the injunction?

*MR. WESTFALL:* The Governor is appearing -- and that's why I believe that there is the prefatory language that is in the earlier part of the proposed stipulation. The Governor is appearing not just as the Governor and as the chief executive, but represents the embodiment of the state. We have case law on that that we've already previously presented to this court.

As a result of that, the Court is declaring that the statute, House Bill 1224, as interpreted in the negotiated language that we agreed to last night, must be construed in the following manner. That, we believe from plaintiffs' perspective, gets us to where we need to be. And that if in fact any local jurisdiction -- I mean, certainly, it's binding on all state agencies, there is no question about that, the state patrol.

With respect to local jurisdictions -- we've done a lot of thinking and chewing on that. And we believe to keep this case streamlined and simple, that that binding interpretation by the Governor in a stipulated fashion, as an order entered by this court, would be the interpretation that every -- even though the technical guidance originally said it's not binding, that that non-binding quality becomes binding once this Court exercises its jurisdiction and enters the injunctive relief.

*THE COURT:* What jurisdiction does this court have over local jurisdictions if they're not already bound by the Governor?

*MR. WESTFALL:* This court -- the jurisdiction would naturally flow through, we believe, to the local jurisdiction.

*THE COURT:* Right. So if the Governor says, this is how it's going to be enforced, what does an injunction by this court add to that?

*MR. WESTFALL:* If this court doesn't enter the injunction, then the critical language that we agreed to last night will not have force of law.

*THE COURT:* Well, I understand the Governor to have agreed to that language, and that means that the Governor is going to direct enforcement in accordance with these terms.

*MR. WESTFALL:* If the Court's -- I'm trying to understand the Court's concern. If the Court's concern is that the Court still does not have a proper proffer on the basis to say that injunctive relief is appropriate to fill this gap between what the Governor has agreed to and what we've negotiated last night, we would be happy to submit additional proffer to this court.

*THE COURT:* That's not the problem. We've got two problems. One is standing, which you haven't yet addressed. I still do not have a person who falls within the definition of a person with standing for prospective relief to enjoin pre-enforcement of a penal statute, number one. Without that, I can't enter a preliminary injunction, even on the agreement of the parties, because you can't consent to jurisdiction.

Secondly, this particular injunction simply says that the Governor has agreed that, one, the technical guidance has the force and effect of law, and, two, that the additional provisions that you put in here are going to be the guidance for enforcement. So why do you need the Court to enter an

injunction? If that's what the Governor is saying, and that is what the Governor is going to direct law enforcement officers to do, why do you need an injunction?

*MR. WESTFALL:* See if I can collect my thoughts on the second point by answering the first point first. And maybe my co-counsel can help me out here.

With respect to standing, two of the people that we were to have testify today, David Bayne and Elisa Dahlberg, would have clearly individual standing on both issues presented on the preliminary injunction, both the design to be readily converted language and the continuous possession issue. And I'd be prepared to make a proffer to the Court today or submit a supplemental briefing to show that those two people alone, who were prepared to testify today, have standing for the Court to issue the injunctive relief that is being requested.

With respect to the second point, we already have had an issue in discussion, wanting to make sure that the Governor's power is the embodiment of the state in defending against our motion for preliminary injunction and our request for injunctive relief. The Governor is saying, yes, this is the proper interpretation. But to have that in fact binding, which is to be done in a manner to protect the Second Amendment rights of our plaintiffs and the Fourteenth Amendment rights of our plaintiffs, that believe that injunctive relief should be entered to ensure, so that the power of this federal court

premised upon the Second Amendment and the Fourteenth Amendment of the Constitution is saying, these provisions must be interpreted in the manner in which we agreed to last night.

And I think that's a lot more legal and enforceable than simply the Governor's representation.

And co-counsel, Mr. Kopel, would obviously like to address the Court as well.

*THE COURT:* I see.

*MR. KOPEL:* Thank you, Your Honor. I think the difference between the technical guidance being amended to reflect last night's agreement and an injunction from this court -- if a person were prosecuted in Denver, arrested by the Denver Police Department and then prosecuted by the Denver District Attorney's Office, the function of the technical guidance under Colorado state law is that that defendant would have an affirmative defense of mistake of law. That is the legal effect under the Colorado Revised Statutes of the technical guidance.

In contrast, we believe that an injunction from this court by enjoining the Governor himself, as Mr. Westfall has said, as the embodiment of the state law in this case, would have necessarily a binding effect on the application of that law, directly on all law enforcement within the state of Colorado.

*THE COURT:* Well, let's walk through the practical

effect. Let's use that hypothetical.

Someone is arrested in a jurisdiction. And the arrest is not the significant point; it is the prosecution of a violation of this law that becomes the operative issue. So the district attorney in the appropriate -- or county attorney in the appropriate location brings charges under the statute. The Governor has issued a technical guidance memorandum consistent with these terms, or agrees that it should be interpreted consistent with the terms you've just given me. Why do you need an injunction? How does an injunction in this case help that person who has been arrested, who is being prosecuted?

*MR. KOPEL:* Because in that case, Your Honor, without the injunction, the district attorney is free to say, well, yes, when this case goes forward, the person -- the defendant can raise the issue of mistake of law so he will maybe get off in this case, but I, the district attorney, say that the technical guidance is incorrect and is not the correct interpretation of the law, although I recognize that immunizes in this particular case. But going forward, the district attorney could argue that the technical guidance is wrong, and, for example, magazines with removable base plates are in fact banned.

*THE COURT:* Sounds like you don't trust the Governor.

*MR. KOPEL:* We believe that the district attorney in this hypothetical is bound by an injunction and may not deviate

from that to even initiate the prosecution in the first place, as opposed to having the option of initiating a prosecution and then the defendant raises the issue of mistake of law. Because, of course, mistake of law is a mistake. It's saying, I was wrong about the law.

*THE COURT:* Mr. Kopel, the DA is not a party here in this lawsuit; and I'm not able to do anything about that prosecution even if an injunction is issued. So there really is no difference in an injunction being issued in this case and relying on the agreement of Governor Hickenlooper in accordance with the stipulation that you've entered.

*MR. KOPEL:* Your Honor, if I could ask one -- on standing, would I be correct in presuming that your view on the criminal standing, standing in general for all parties in this preliminary injunction, is based on following the -- in accordance with the D.C. Circuit's interpretation of standing?

*THE COURT:* I'm guided by Tenth Circuit law.

*MR. KOPEL:* Okay.

*THE COURT:* And Tenth Circuit law includes a number of cases which you've not addressed in your briefing. For instance, *Diaz v. The City and County of Denver*, at 567 F.3d 1169, a Tenth Circuit 2009 case.

*MR. KOPEL:* Thank you very much, Your Honor.

*THE COURT:* All right. Let me hear from the Solicitor General.

*MR. DOMENICO:* Yes, Your Honor.

Our view on standing, I believe, was that there was a live case or controversy because the plaintiffs had alleged, including for purposes of the injunction, that they were engaging or were going to engage in conduct that under their interpretation of the statute -- or at least under one interpretation of the statute, their view was, they would be subject to prosecution. We, I think, viewed that as adequate to provide the Court with jurisdiction.

*THE COURT:* For purposes of the case or purposes of being --

*MR. DOMENICO:* For purposes of prospective -- both -- I mean, the entire case, I believe, is prospective injunctive relief, whether it's preliminary or permanent injunctive relief, seeking to invalidate the statute, declare the statute unconstitutional.

The second question I think is, we've been willing to -- we have suggested previously that the guidance is as binding on us as anything else is going to be --

*THE COURT:* Are there differences between the guidance and what is contained in the subparagraphs of paragraph 4 in this --

*MR. DOMENICO:* Our view is that they are consistent with one another. I think you might view it as, the new paragraph sort of maybe put meat on the bones of the original

guidance. We don't view them as inconsistent at all. Our view is that they're perfectly consistent with what the guidance was saying. But they do add, I think, some substance to it that has been important to the plaintiffs.

*THE COURT:* And is the Governor prepared or -- to amend or extend the technical guidance to incorporate this clarification?

*MR. DOMENICO:* I'm not sure we have had the actual discussion with the Governor, with our client, about that; but I don't see why we would not be.

*THE COURT:* Seems to me, if you have authority to enter into this, you have authority to commit that the Governor would stand behind this.

*MR. DOMENICO:* I would think we would do that.

*THE COURT:* All right.

Now, tell me how you think an injunction is necessary in light of the agreement that the technical guidance will be enforced in accordance with what you've written down.

*MR. DOMENICO:* Well, we only represent the Governor. We can't -- we can't speak for DAs or police officers. And so our position -- we did read the *ACLU v. Johnson* case that the plaintiff cited for the proposition that an injunction, even against the Governor, would be effectively binding as if -- that's a Tenth Circuit case.

*THE COURT:* Uh-huh.

*MR. DOMENICO:* Would effectively be the same as if the DAs themselves were here. So under that case, it seems that there may be some additional comfort that the plaintiffs would have from an injunction as opposed to simply the guidance.

As far as the state and the law enforcement apparatus of the state that we represent, I think we are in the same position. We intend for them to be bound by the guidance. I mean, the -- there is perhaps a difference between an affirmative defense and being able to come in and ask you to hold someone in contempt --

*THE COURT:* Who would I be holding in contempt?

*MR. DOMENICO:* Well, we don't intend to do anything contrary to the guidance, so it would I hope not be any state law enforcement officers. And, again, I don't represent DAs or police departments.

*THE COURT:* I understand you don't represent them. But I don't have any more authority over them than the Governor has over them.

*MR. DOMENICO:* I agree with that.

*THE COURT:* Okay.

Anything else you want me to know?

*MR. DOMENICO:* No, ma'am.

*THE COURT:* Thank you.

Anything else anybody else wants me to know?

*MR. COLIN:* If I may, Your Honor.

*THE COURT:* Sure. Would you go to the lectern.

*MR. COLIN:* I will.

Your Honor, I suspect that the licensed firearms dealers have, perhaps, the most obvious prospective standing in these issues. There are -- they're in the awkward position, a Hobson's choice, if you will, of being placed in a circumstance where there is uncertainty regarding a particular statute, and their choice is to either risk criminal prosecution by selling items that they are prohibited from selling or losing their businesses because they stopped selling items because of the uncertainty of the statute. And so that was one of the areas in which we were prepared to establish standing, had we proceeded today.

I would ask if we could have, perhaps, a short recess so that counsel can confer as to the appropriate response to the Court's question.

*THE COURT:* I'm happy to take a recess if you'd like to confer, and I'm happy to reconvene and take a proffer as to standing. I don't think that's going to resolve what is before me today, but I'm happy to do that if you'd like.

*MR. COLIN:* Okay.

*THE COURT:* It's 9:30 right now, 9:31, according to the court clock. How long would you like for a recess?

*MR. COLIN:* 15 minutes?

*THE COURT:* All right. We'll stand in recess for 15

minutes.

(Recess from 9:31 a.m. to 9:52 a.m.)

*THE COURT:* Counsel.

*MR. WESTFALL:* Your Honor.

We have talked among ourselves, and we hope we have a proper resolution that would hopefully be consistent with the Court's concerns.

The Attorney General has agreed to redraft the technical guidance along the lines with the agreement that we had reached last night. When we have that in hand, we will jointly file a motion to withdraw the motion for preliminary injunction.

*THE COURT:* I think, actually, the motion that you filed was entitled that, motion to withdraw the motion for preliminary injunction. Do you just want me to grant that?

*MR. WESTFALL:* We would want -- we would like to withdraw that motion and refile a slightly modified motion to withdraw, if that would be acceptable to the Court.

*THE COURT:* Sure.

Okay. So your current motion is Docket No. 56. It's a request for withdrawal of the plaintiffs' motion for preliminary injunction and a stipulated motion for preliminary injunction. Do you want to withdraw that, right?

*MR. WESTFALL:* Yes, Your Honor.

*THE COURT:* Okay. Is the Governor in agreement with

that?

*MR. DOMENICO:* Yes, Your Honor.

*THE COURT:* All right. And it sounds like what you are going to be doing then is filing a motion requesting what?

*MR. WESTFALL:* We would be merely asking for a motion for the Court to grant the motion, the revised motion that we intend to file.

*THE COURT:* What's that motion going to request?

*MR. WESTFALL:* The motion is merely going to say, based upon the revised technical guidance that -- with the terms that have been modified by the -- by the agreement of the parties that will be attached to our revised motion to withdraw, we will merely ask that the Court grant that motion to withdraw.

*THE COURT:* Okay. I understand.

I think based on that, we can vacate the hearing today on Docket No. 29, which is the motion for preliminary injunction, and Docket 56 is withdrawn.

There will be no hearing on the motion for preliminary injunction, the parties having resolved that matter by settlement and based upon their representation that the technical guidance memorandum, one, will govern enforcement of the statute, and, two, will be amended to cover the terms that the parties have agreed to.

*MR. WESTFALL:* Yes.

*THE COURT:* Anything further?

*MR. COLIN:* No, Your Honor.

*MR. KOPEL:* No, Your Honor.

*MR. DOMENICO:* No, Your Honor.

*THE COURT:* Thank you. Then that will conclude this matter, and we'll stand in recess.

(Recess at 9:55 a.m.)

REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated at Denver, Colorado, this 12th day of July, 2013.

s/Therese Lindblom

______________________________

Therese Lindblom,CSR,RMR,CRR