1                    THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLORADO
2
    Civil Action No. 13-CV-1300-MSK-MJW
3

    COLORADO OUTFITTERS ASSOCIATION,
4   COLORADO FARM BUREAU,
    NATIONAL SHOOTING SPORTS FOUNDATION,
5   MAGPUL INDUSTRIES,
    COLORADO YOUTH OUTDOORS,
6   USA LIBERTY ARMS,
    OUTDOOR BUDDIES, INC.,
7   WOMEN FOR CONCEALED CARRY,
    COLORADO STATE SHOOTING ASSOCIATION,
8   HAMILTON FAMILY ENTERPRISES, INC.,
    d/b/a FAMILY SHOOTING CENTER AT CHERRY CREEK STATE PARK
9   DAVID STRUMILLO,
    DAVID BAYNE,
10  DYLAN HARRELL,
    ROCKY MOUNTAIN SHOOTERS SUPPLY,
11  2ND AMENDMENT GUNSMITH & SHOOTER SUPPLY, LLC,
    BURRUD ARMS INC. D/B/A JENSEN ARMS,
12  GREEN MOUNTAIN GUNS,
    JERRY'S OUTDOOR SPORTS,
13  SPECIALTY SPORTS & SUPPLY,
    GOODS FOR THE WOODS,
14  JOHN B. COOKE,
    KEN PUTNAM,
15  JAMES FAULL,
    LARRY KUNTZ,
16  FRED JOBE,
    DONALD KRUEGER,
17  STAN HILKEY,
    DAVE STONG,
18  PETER GONZALEZ,
    SUE KURTZ,
19  DOUGLAS N. DARR,

20       Plaintiffs,

21  vs.

22  JOHN W. HICKENLOOPER, GOVERNOR OF THE STATE OF COLORADO,

23       Defendant.
    _____
24
                        **REPORTER'S TRANSCRIPT**
25                   LAW AND MOTION HEARING
    _____

                                                                                                    2

 1              Proceedings before the HONORABLE MARCIA S. KRIEGER,

 2   Judge, United States District Court for the District of

 3   Colorado, commencing at 3:06 p.m., on the 19th day of December,

 4   2013, in Courtroom A901, United States Courthouse, Denver,

 5   Colorado.

 6

 7                              **APPEARANCES**

 8          PETER J. KRUMHOLZ, Attorney at Law, Hale Westfall,
     LLP, 1600 Stout Street, Suite 500, Denver, Colorado, 80202,
 9   appearing for the Plaintiffs.

10          DOUGLAS ABBOTT, Attorney at Law, Holland & Hart, LLP,
     555 17th Street, Suite 3200, Denver, Colorado, 80202, appearing
11   for the Plaintiffs.

12          JONATHON MICHAEL WATSON, Attorney at Law, Sherman &
     Howard, 633 17th Street, Suite 3000, Denver, Colorado, 80202,
13   appearing for the Plaintiffs.

14          ANTHONY JOHN FABIAN, Attorney at Law, 510 Wilcox
     Street, Castle Rock, Colorado, 80104, appearing for the
15   Plaintiffs.

16          DAVID BENJAMIN KOPEL, Attorney at Law, Independence
     Institute, 727 East 16th Avenue, Denver, Colorado, 80203,
17   appearing for the Plaintiffs.

18          MATTHEW DAVID GROVE, MOLLY ALLEN MOATS, JOHN TIEN YAU
     LEE, KATHLEEN L. SPALDING, and STEPHANIE LINDQUIST SCOVILLE,
19   Assistant Attorneys General, Colorado Attorney General's
     Office, Ralph L. Carr Colorado Judicial Center, 1300 Broadway,
20   Denver, Colorado, 80203, appearing for the Defendant.

21

22

23

24                  THERESE LINDBLOM, Official Reporter
                   901 19th Street, Denver, Colorado 80294
25             Proceedings Reported by Mechanical Stenography
                   Transcription Produced via Computer

3

1                       **P R O C E E D I N G S**

2              *THE COURT:*  Court is convened today in Case No.

3     13-cv-1300.  This is encaptioned, Colorado Outfitters

4     Association, et al. v. John W. Hickenlooper.

5              Could I have entries of appearance, please.

6              *MR. KRUMHOLZ:*  Good afternoon, Your Honor.  Peter

7     Krumholz on behalf of David Bayne, Dylan Harrell, Colorado Farm

8     Bureau, Colorado Outfitters Association, Colorado Youth

9     Outdoors, Outdoor Buddies, Inc., and Women for Concealed Carry.

10             *THE COURT:*  Good afternoon.  Welcome.

11             *MR. KOPEL:*  Good afternoon, Your Honor.  David Kopel

12    on behalf of David Strumillo and 55 individual law enforcement

13    officers in their personal capacities, who happen to be

14    sheriffs.

15             *THE COURT:*  Good afternoon and welcome.

16             *MR. KOPEL:*  Thank you.

17             *MR. WATSON:*  Good afternoon, Judge.  Jonathon Watson

18    on behalf of the federally licensed firearms dealers.

19             *THE COURT:*  Good afternoon and welcome.

20             *MR. ABBOTT:*  Doug Abbott on behalf of Magpul and the

21    National Shooting Sports Foundation.

22             *THE COURT:*  Good afternoon and welcome.

23             *MR. FABIAN:*  Good, Your Honor.  Anthony Fabian on

24    behalf of Colorado State Shooting Association and Hamilton

25    Family Enterprises.

1          *THE COURT:*  Good afternoon and welcome.

2          *MR. GROVE:*  Matthew Grove, Your Honor.  With me at

3     counsel table are Molly Moats, John Lee, Kathleen Spalding,

4     Stephanie Scoville on behalf of the Governor.

5          *THE COURT:*  Good afternoon and welcome.

6          I set this matter down on the law and motion calendar

7     at the time that Docket No. 97, motion for extension of time to

8     file dispositive motions, was filed; and there has been a lot

9     of activity since the filing of that particular motion.  In

10    particular, there has been filed a motion for joinder and for

11    leave to file a Third Amended Complaint, briefing with regard

12    to that in response, briefing in reply.  And the reply suggests

13    that the plaintiffs -- actually, that the clients of Mr. Kopel

14    seek to join and that -- I guess all the plaintiffs seek to

15    amend the Complaint with yet another version of an Amended

16    Complaint, what I would call a Fourth Amended Complaint.

17         Do I correctly understand where we are as far as

18    posture on that particular motion?

19         *MR. KOPEL:*  Well -- Your Honor, the motion for joinder

20    and then the filing of exhibits, a proposed Third Amended

21    Complaint, and then of yesterday, replacing that with the

22    Fourth Amended Complaint was filed by me on behalf of my

23    clients.  We have -- that is our filing.  And the other parties

24    in the case may wish to state their own positions on that, but

25    that was a filing by me on behalf of my clients.

1           THE COURT:  All right.  Raises an interesting

2    procedural question.

3           MR. KOPEL:  It does, Your Honor.

4           THE COURT:  Ordinarily, when there is a circumstance

5    such as this, a motion for joinder is not the preferred

6    mechanism.  It is a motion to intervene.  But here, it doesn't

7    make any difference whether it's a motion to intervene or a

8    motion to join.  I understand that your clients wish to

9    participate in this litigation to assert individual claims and

10   that you would like to be able to have those claims reflected

11   in a form of Complaint which is and has been tendered as the

12   Fourth Amended Complaint.

13           Is that correct?

14           MR. KOPEL:  Exactly, Your Honor.

15           THE COURT:  All right.  Thank you.

16           Then let me hear from those parties who wish to

17   address that motion.  The reply, essentially, becomes a new

18   motion.  I've not heard from the defendants with regard to

19   that -- I should say the defendant.

20           MR. GROVE:  One defendant, many attorneys.

21           THE COURT:  That's it.  You had me confused.

22           MR. GROVE:  Matthew Grove, Your Honor, on behalf of

23   the Governor.

24           Mr. Kopel and I have had a couple of discussions over

25   the last couple of days, and that's what resulted in his filing

 1    what has been now been termed the Fourth Amended Complaint.

 2    Many of the arguments that we've raised in our response to the

 3    proposed Third Amended Complaint, which is Docket No. 112, is

 4    our response, apply to the Fourth Amended Complaint as well.

 5         There are some additional concerns that I'd like to

 6    raise.  Let me just start off by saying, the Governor opposes,

 7    as we did the Third Amended Complaint, the acceptance of the

 8    Fourth Amended Complaint and the sheriffs' motion for joinder

 9    and to amend the Fourth Amended Complaint.

10         There are a number of reasons for this.  The primary

11    one is that we don't believe that under Rule 16 the plaintiffs

12    have shown good cause to amend.  And under Rule 15, which is

13    the second step of the analysis, we don't believe that -- well,

14    we believe that an amendment at this point would be futile,

15    particularly with respect to House Bill 1224, which is the

16    large-capacity magazine restriction.

17         There are questions in addition with respect to 1229,

18    which is the universal background check provision, as to

19    whether the plaintiffs' Complaint, Fourth Amended Complaint,

20    states adequate allegations in order to nudge it across the

21    line from plausible under the *Twombly* and *Iqbal* test.  And so

22    that's something that -- again, this has all moved very

23    quickly, as Your Honor knows, that we're still processing.  But

24    at this point, that's our position.  Most of it is laid out in

25    the response to the proposed Third Amended Complaint.

1          THE COURT:  Anything else you'd like me to consider?

2          MR. GROVE:  Not with respect to our opposition.  If

3    the Court has -- there are some other issues that I think we

4    should probably discuss today, but we can move on from that.

5          THE COURT:  I'm just concerned with this motion at

6    this juncture.

7          MR. GROVE:  Nothing else with respect to this motion.

8          THE COURT:  All right.  Thank you.

9          Any of the other plaintiffs want to address this?

10         MR. KRUMHOLZ:  Your Honor, on behalf of David --

11         THE COURT:  Would you go to the lectern, please.

12         MR. KRUMHOLZ:  Thank you, Judge.

13         With respect to David Bayne, Dylan Harrell, and the

14   nonprofit plaintiffs, we do not oppose Mr. Kopel's motion.

15         THE COURT:  Thank you.

16         MR. FABIAN:  Neither is there an objection from

17   Colorado State Shooting Association or family -- Hamilton

18   Family Enterprises.

19         THE COURT:  Thank you.

20         MR. ABBOTT:  Plaintiff Magpul does not object to the

21   motion.  Plaintiff Shooting Sports Foundation takes no

22   position.

23         THE COURT:  Thank you.

24         MR. WATSON:  The plaintiff federally licensed firearms

25   dealers take no position on the motion either.

1          *THE COURT:*  Thank you.

2          Is there any further argument you'd like to make,

3    Mr. Kopel, on behalf of your clients?

4          *MR. KOPEL:*  Yes, Your Honor.

5          Your Honor, granting the Fourth Amended Complaint

6    would promote judicial economy in two important ways.  First of

7    all, it would prevent the -- would obviate the need for the

8    filing of an entirely new Complaint by these 55 individuals,

9    which would, of course, result in another case and a whole

10   other situation starting up.  Having their concerns resolved in

11   this single case, in which they have been participating for

12   over half a year, would, therefore, be substantially

13   instructive to judicial economy.

14         The Fourth Amended Complaint would also move this

15   particular case forward.  The claims that are brought forward

16   in the Fourth Amended Complaint are the same kind of individual

17   rights of individual firearms owners that have been at issue in

18   this case all along and on which extensive discovery and

19   briefing has taken place.

20         As was stated in the December 11 initial motion for

21   leave to file the Amended Complaint, there will be no new

22   witnesses in this case.  The six sheriffs who were proposed as

23   witnesses were deposed extensively already.  They were deposed

24   quite extensively, not only about their official capacity

25   issues, but also about their individual capacity issues, based

1    on the understanding that the lawyers on both sides had at the

2    time.  So as Exhibit A shows, they have been asked all about

3    their particular individual firearms they personally own,

4    particular magazines they personally own, how much they go

5    hunting, how far they go target shooting.  Really, the full

6    scope of their individual gun ownership was up for deposition

7    and has been deposed.  Accordingly, no new discovery is

8    necessary in this case.

9           We -- in the Fourth Amended Complaint, pleaded as

10   concisely as possible to address all of defendant's express

11   concerns about the Third Amended Complaint raising new issues,

12   we don't believe that that Third Amended Complaint raised

13   anything new.  As the citations in the Complaint itself to the

14   discovery showed, these are all issues that have already been

15   on the table.  But we certainly don't need the third -- we

16   don't need any new complaint to continue to bring those issues

17   forward.  Those are well established by the Second Amended

18   Complaint back of July 1.

19          The Governor's response filed yesterday said that he

20   would support a simple amendment which simply brought the

21   sheriffs into the case as ordinary individuals with individual

22   rights.  We have done everything that was asked by him to do

23   so, to take out everything he objected to in the Third Amended

24   Complaint and radically reduce the content for what is left in

25   the Fourth Amended Complaint.  We've done that conscientiously,

10

 1   in the spirit of expedition and cooperation.  And we believe

 2   that the Governor's offer in his filing yesterday, that a

 3   simple amendment would be supported should be accepted by this

 4   court.

 5          THE COURT:  Thank you.

 6          MR. KOPEL:  Thank you, Your Honor.

 7          THE COURT:  Docket No. 104, the motion for joinder and

 8   leave to file an Amended Complaint, has by its -- by the

 9   briefing become a motion for joinder and leave to file a Fourth

10   Amended Complaint.

11          Let me start with an observation that evolution of the

12   parties' positions during the course of briefing is not the

13   best way to frame up an issue for determination.  Our local

14   rule requiring conference between the parties expects and

15   anticipates that all of the conversation between the parties

16   will occur before any pleading is filed, and that way it is

17   clear what the issues are to be addressed at the time of the

18   hearing or ruling on the motion.

19          So I urge you, counsel, in the future, please do not

20   attempt to satisfy your Rule 7.1 required disclosure by simply

21   saying, we talked to the other side.  Complete your

22   conversation.  Review the other parties' pleadings so that

23   there is a clear framework for what will be determined here in

24   the courtroom.

25          As to the amended motion, I grant it in part, and I

1    deny it in part.

2          I recognize that from the plaintiffs' perspective,

3    there is value to having many people who hold important

4    positions of public office being named as plaintiffs in this

5    case.  It attracts attention to their claims, and it helps

6    shape the public debate.  But from a legal perspective, those

7    things are irrelevant.  The symbolic figure of Lady Justice

8    wears a blindfold to avoid consideration of who the parties are

9    and how many of them agree with a particular perspective.

10   Instead of the court of public opinion, this is a court where

11   the determination will be made on the evidence and the law, not

12   who participates in the lawsuit.

13         Simply because a person holds public office or has

14   firmly held views on a matter does not entitle them to

15   participate in a lawsuit.  In order to have legal standing,

16   they must have a right that they are about to lose.  In a case

17   like this, a case that seeks to prospectively prevent the

18   application of a criminal statute, that usually means they are

19   likely to be subject to criminal prosecution in the future.  It

20   can also mean that they are likely to lose some other

21   recognized right or property interest by enforcement of the

22   law.  Thus, what is necessary here is for a plaintiff to

23   establish that he or she is under a real and immediate threat

24   of being injured in the future.

25         With regard to the statute prohibiting large-capacity

1    magazines, there is an exception to enforcement against

2    individuals who are employees of a department or an agency of

3    this state; and that covers all of the sheriffs so long as they

4    are sheriffs.  There are, however, 11 individuals who state

5    that they will be retiring from law enforcement within roughly

6    the next year.  These individuals are Mr. John Cooke, Mr. Ken

7    Putnam, Mr. James Faull, Mr. Larry Kuntz, Mr. Fred Jobe,

8    Mr. Donald Krueger, Mr. Stan Hilkey, Mr. Dave Strong, Mr. Peter

9    Gonzalez, Ms. Sue Kurtz, and Mr. Douglas Darr.

10          Their ability to participate in this lawsuit arises

11   from a potential loss that could arise from enforcement against

12   them after they cease to fall within the exception to the

13   statute.

14          Now, truly, it is January of 2015 that is the earliest

15   time period at which it appears from this Complaint that they

16   would fall victim, potentially, to such a law; but I find that

17   to be imminent enough to allow them to participate in this

18   action.

19          As to the other sheriffs, their joinder in this action

20   and their motion to amend must be denied, because it is futile.

21   They do not have current standing.  There has been no showing

22   with regard to the large-capacity magazine statute that they

23   are likely to lose a right or property interest or be subject

24   to prosecution.

25          And as to the statute requiring background checks, the

1  Amended Complaint offers only a singular paragraph that in

2  substance attempts to address standing.  It says that the

3  sheriffs as a group wish to sell, buy, give, and loan handguns

4  to or from anyone, including their families.  Such allegation

5  is too summary, too unspecific, too general, to indicate which

6  individuals might have standing due to a real and immediate

7  threat of being injured by enforcement of that statute.

8          As a consequence, I find that there was good cause to

9  bring both motions, that arising from my determination on the

10  motion to dismiss, but that no standing -- no facts sufficient

11  to establish standing of most of the sheriffs has been offered.

12  And, therefore, any amendment to the Complaint and any joinder

13  in the lawsuit is denied.

14          As to the 11 individuals that I have named, they may

15  join this lawsuit as plaintiffs, and the Complaint may be

16  amended to add the paragraphs that specifically deal with them.

17  They are paragraphs 107, 112, 123, 124, 130, 131, 136, 140,

18  147, 157, and 160.  A conclusory statement may be added with

19  regard to each claim that is asserted, indicating which of

20  these individuals assert -- joins in a particular claim.  No

21  new claims may be asserted; no new attachments to the Complaint

22  may be submitted.  The case will be framed as it currently is,

23  subject to the ruling that I made with regard to the motion to

24  dismiss.

25          Any need for clarification or further explanation?

1          MR. KOPEL:  If I could, Your Honor, just to follow

2    your instructions.  Would the case, then, be recaptioned with

3    the 11 individuals in the order in which they currently appear?

4          THE COURT:  They may be added to the caption with

5    their individual names.

6          MR. KOPEL:  Okay, Your Honor.  Thank you.

7          THE COURT:  No titles.

8          MR. KOPEL:  Those have been out in all of our filings.

9          THE COURT:  Indeed, it is because these are individual

10   claims and they are premised upon these individuals no longer

11   being sheriffs.  There is no need to refer to their status as

12   sheriffs at this point.

13         MR. KOPEL:  Certainly, Your Honor.  And just to follow

14   your instructions:  So, for example, paragraph 112 is a little

15   bit of biographical information about a particular plaintiff.

16   Do you want that to stay as it is in the proposed --

17         THE COURT:  You can include that.

18         MR. KOPEL:  So we would include the biographical

19   paragraphs of those particular individuals and likewise include

20   the paragraphs which addressed 1224, not the addresses which

21   address 1229 in the -- to comply with your order; would that be

22   correct?

23         THE COURT:  No.  Mr. Kopel, in the Complaint, you have

24   now an -- 11 new plaintiffs.  They're not bringing any new

25   claims.  They may join in any of the claims that are asserted.

1      MR. KOPEL:  I see, Your Honor.  So the -- if I may

2  restate what I understand -- and please correct me, because,

3  obviously, I was wrong the first time.  The new Complaint

4  should have the biographical information about these particular

5  people.

6      THE COURT:  It shouldn't, but you can put it in there.

7      MR. KOPEL:  It can be in there, to state their names.

8  And then nothing -- and then it would simply state which of the

9  other Complaint -- the other issues raised elsewhere in the

10  Complaint by other individuals some or all of these particular

11  11 join in?

12      THE COURT:  Most often in a Complaint, each claim for

13  relief, one, two, three, four, has a statement that immediately

14  follows after the identification of the claim that says which

15  parties bring that claim.

16      MR. KOPEL:  Okay.

17      THE COURT:  Your Complaint here doesn't do that.  I'm

18  allowing you to say with regard to each of those claims what

19  parties bring the claim.

20      MR. KOPEL:  Thank you, Your Honor.  And so in that --

21  the new Complaint, for example, on the first claim -- first

22  claim for relief involving magazines, we would state each of

23  those 11 individuals, and we would also state the other

24  plaintiffs who also bring that particular claim; is that

25  correct?

1          THE COURT:  To the extent that all the plaintiffs are

2    asserting that claim, you can say "all plaintiffs assert that

3    claim."

4          MR. KOPEL:  Okay.  Thank you, Your Honor.

5          THE COURT:  Okay.

6          Yes, sir.

7          MR. GROVE:  While we're here, Your Honor, your order

8    raises some questions on discovery for us.

9          THE COURT:  Okay.

10         MR. GROVE:  And I'm not sure how attuned the Court is

11   to the history of how we've done discovery, so let me kind of

12   sketch it out for you.

13         With respect to the sheriffs, what the parties agreed

14   to do, with Magistrate Judge Watanabe's blessing, was identify

15   a small pool of sheriffs.  We didn't want all 55 of them coming

16   in and testifying, because it would be repetitive, who would

17   then -- that we would depose, and they would offer testimony at

18   trial or affidavits in support of or against summary judgment

19   motions.  You've knocked out five of those six who we had

20   deposed, and I --

21         THE COURT:  That doesn't prevent them from testifying.

22         MR. GROVE:  That's -- that's fair, Your Honor.  I can

23   understand that.  However, we haven't had an opportunity to

24   depose them because of an agreement we had.  What I wanted to

25   request is that we have an opportunity to confer with Mr. Kopel

1    to see which of those sheriffs may in fact be testifying.  It

2    may be all eleven, I don't know, it may be two or three, and

3    then for us to have an opportunity for us to take depositions

4    as we have before.

5              THE COURT:  Of the 11, you've taken depositions of how

6    many?

7              MR. GROVE:  One.

8              THE COURT:  I'm sorry?

9              MR. GROVE:  One.

10             THE COURT:  Okay.  Mr. Kopel, are you going to be

11   calling different witnesses than you previously identified to

12   the defendant?

13             MR. KOPEL:  If I could ask a question, Your Honor,

14   that would help provide the answer to that.

15             Of the six who were deposed, as my Brother Grove has

16   indicated, one of them is in this set of eleven.  All of the 55

17   are members of the Colorado State Shooting Association, one of

18   the plaintiffs in the case.  So of those five who were deposed

19   but are not on this list, would it be permissible for them to

20   testify in this case as individuals who belong to the state

21   shooting association?

22             THE COURT:  Mr. Kopel, witnesses are witnesses.  They

23   don't need to be parties.

24             MR. KOPEL:  I appreciate the clarification -- thank

25   you, Your Honor.  I want to make sure --

1          *THE COURT:*  So the question is, are you going to be

2    calling different witnesses than you've previously disclosed to

3    the defense?

4          *MR. KOPEL:*  And the answer to that is no, Your Honor.

5          *THE COURT:*  Okay.

6          *MR. KOPEL:*  Your Honor, if I may raise one other

7    issue.

8          Since the -- there are two other -- two others on

9    this -- in this group for whom there is a date certain for

10   retirement.  It was not stated in the pleadings, but I would

11   inform you that Terry Maketa will be retiring in January, 2015,

12   and Grayson Robinson will be retiring on January 31, 2014.

13         *THE COURT:*  Mr. Kopel, it's too late.

14         *MR. KOPEL:*  I thought --

15         *THE COURT:*  And this is redundant.

16         *MR. KOPEL:*  Certainly, Your Honor.

17         *THE COURT:*  The inclusion of these plaintiffs does not

18   change the issues or the evidence that's going to be presented.

19         *MR. KOPEL:*  I accept that, Your Honor.  Thank you.

20         *THE COURT:*  All right.

21         Okay.  It sounds like that the defense, you're not

22   going to have any different witnesses.  I'm assuming that means

23   you don't need any further discovery.

24         *MR. GROVE:*  That resolves our concern, Your Honor.

25         *THE COURT:*  Okay.  Now, there was mention made about

1   the filing of dispositive motions.  And part of this -- the

2   reason I set this hearing down is to determine whether or not

3   there should be any dispositive motions.

4        There is a belief in civil litigation that dispositive

5   motions should be filed in every lawsuit.  My experience is

6   that only 15 percent of the time -- and that's a national

7   average -- does it matter.  So in order to move things most

8   expeditiously, you can bypass filing dispositive motions unless

9   there is going to really be something decided here and it would

10  shorten a trial.  I would suggest to you that you do that and

11  move the matter to trial, if there is going to be a trial, as

12  soon as we can.

13       So I'd like to hear from each side as to how any

14  summary adjudication under Rule 56 would streamline or avoid a

15  trial, what claims or issues should be tried, and whether there

16  should be any separate trial under Rule 42(b) of any claims or

17  issues.

18       Who would like to start on this one?

19       MR. KRUMHOLZ:  Your Honor, on behalf of the

20  plaintiffs, I'm happy to start the discussion as to those

21  issues that you've raised.

22       The plaintiffs' position, Your Honor, is that summary

23  judgment will not resolve any of the claims, much less most of

24  them.  And so we believe that it makes the most sense to

25  proceed to trial, proceed to putting together a final pretrial

1   order on which we can then base trial briefs for Your Honor's

2   consideration prior to the trial.  So we don't -- as to your

3   second question, we don't believe there is any issue that is

4   appropriate for summary judgment in this case.

5            THE COURT:  How about for bifurcation?

6            MR. KRUMHOLZ:  As for bifurcation, Your Honor, I'm not

7   sure which of the claims you had in mind.  My guess was the ADA

8   claim.

9            THE COURT:  Correct.

10           MR. KRUMHOLZ:  With respect to that, Your Honor, Rule

11  42(b) is directed at achieving efficiency.  And we will have

12  the same witnesses with respect to the ADA claims as we would

13  have -- some of the same witnesses that we would have in the

14  ADA claims as we'll have in our Second Amendment claims.  So

15  because of that overlap, there is no efficiency to be gained,

16  Your Honor, from the bifurcation.

17           THE COURT:  All right.  Thank you.

18           For the State.

19           MR. GROVE:  What I'm about to say may not surprise

20  you, Your Honor.

21           We think that all the claims are ripe and appropriate

22  for summary judgment in this case.  And I can sketch out why,

23  if you'd like.

24           THE COURT:  Please.

25           MR. GROVE:  Legal issues predominate this.  And the

1  course of discovery in this case has demonstrated that

2  virtually all of the operative facts are not in dispute.   There

3  are some things at the margins that are certainly in question.

4  But even more important than that, whether or not a summary

5  judgment motion ended up being granted on all the claims,

6  what's very important in this case is that we are sketching out

7  the structure of the Second Amendment.   And this is not

8  something that has -- that the Tenth Circuit, any court in the

9  Tenth Circuit has really had an opportunity to do at this level

10  of detail.   So there are very important legal questions that

11  should be considered in the context of a summary judgment

12  motion that are based on almost totally undisputed facts, for

13  example.

14       *THE COURT:*  They have to be wholly undisputed.   Not

15  almost wholly; wholly undisputed facts.

16       *MR. GROVE:*  Let me clarify that.   Wholly undisputed

17  material facts.

18       *THE COURT:*  Okay.

19       *MR. GROVE:*  For example, what does "common use" mean?

20  One of the plaintiffs' theories, as I understand it, is that a

21  magazine is an arm that is protected by the Second Amendment.

22  That's another question.   And, B, that it's in common use,

23  *Heller* says that you can't do anything to restrict it.   If the

24  plaintiffs are correct on that claim, we probably lose,

25  frankly.

1          THE COURT:  How would that speed the trial ultimately?

2          MR. GROVE:  It would streamline the format of the

3    trial, because it would -- getting a ruling on what that means

4    would allow the parties to tailor the evidence that they

5    presented at trial and address those questions directly.

6          THE COURT:  Let's use that as an example.  What

7    evidence would be excluded if there were a determination as to

8    whether or not a magazine was an arm?

9          MR. GROVE:  Well, if the determination is that a

10   magazine is not an arm, then summary judgment is appropriate,

11   and there wouldn't be a trial to begin with.

12         THE COURT:  But if the answer goes to the contrary,

13   how does that speed the determination at trial?

14         MR. GROVE:  I agree that it probably wouldn't in this

15   case.  We're not going to present any evidence that I can think

16   of off the top of my head -- although, don't hold me to that.

17         THE COURT:  Okay.

18         MR. GROVE:   -- that a magazine isn't an arm.  I think

19   that is primarily the legal argument.  But at the same time,

20   our goal is to have the Court address that in a summary

21   judgment motion and consider it.  Argument A in our summary

22   judgment motion is likely to be, a magazine is not an arm;

23   therefore, House Bill 1224 does not impinge on conduct that

24   falls within the scope of the Second Amendment's guarantee.

25         THE COURT:  All right.  I'm not inclined to have

1    dispositive motions, because all of that briefing can be done

2    in the context of pretrial preparation for trial.  So unless

3    you can show me that there is some issue that can be determined

4    that will ultimately streamline a trial, I'm happy to entertain

5    all of your legal arguments in the context of the trial.

6         *MR. GROVE:*  When Your Honor says "streamline," what

7    exactly do you mean by that?  I'd like to tailor what I'm

8    saying to what you're saying.

9         *THE COURT:*  Cuts out evidence, narrows the issues,

10   remembering that any determination on a motion for summary

11   judgment is purely interlocutory and can being reconsidered at

12   the time of trial.

13        *MR. GROVE:*  At a minimum, we think that if we're going

14   to push forward and go to trial, that the ADA claim and 1229

15   should be severed.

16        There are also --

17        *THE COURT:*  Tell me why you think they should be

18   severed.

19        *MR. GROVE:*  Well, the first -- the threshold question

20   under all of these, and 1224 is included here, is -- are

21   standing, ripeness, justiciability.  With respect to the ADA,

22   the first question that the question the Court has to ask and

23   answer is, can the ADA apply to the statute?  Is the statute a

24   service program or activity of the state of Colorado?  And

25   under Tenth Circuit precedent, *Elwell v. Oklahoma Board of*

1    *Regents*, our position is going to be that it is not.

2        With respect to 1229, the threshold question is, is

3    there a private right to sell or transfer a firearm to another

4    individual without going through a federally licensed firearms

5    dealer?

6        *THE COURT:*  May I inquire as to why that issue was not

7    brought up in the motion to dismiss?

8        *MR. GROVE:*  We would have loved to have raised it in a

9    motion to dismiss, Your Honor.  The pressure -- the time

10    pressure did not allow us to do it.  Our position is that it's

11    still appropriate for summary judgment.

12        *THE COURT:*  All right.  Is there any other issue that

13    you think might impact a trial, either by bifurcation or by

14    summary determination?

15        *MR. GROVE:*  The standard of review that the Court

16    applies, assuming that any of the activities or conduct that

17    are implicated by the plaintiffs' complaint, is a very

18    important issue and, again, will guide the course of the

19    evidence at the time.  So we plan to advocate -- this is

20    something that is wide open in the Tenth Circuit -- that if the

21    burden on the plaintiffs that they have alleged is not

22    substantial, that rational basis applies.  And that it's the

23    plaintiffs' burden to get across that line and demonstrate that

24    there is a substantial burden in order for anything higher than

25    rational basis -- anything more strict than rational basis

1    would apply.

2          Summary judgment briefing would give us an opportunity

3    to argue that and, again, would provide guidance to the parties

4    as to who bears the burden at trial and how that burden might

5    be carried.

6          THE COURT:  Anything else?

7          MR. GROVE:  There is also the question of experts and

8    who -- who will testify at trial, who will be necessary to

9    testify at trial.  The -- the standard that the Court ends up

10   applying, decides is appropriate, may influence which experts

11   are eventually called, which expert opinions are proffered by

12   those experts.

13         And I think that's all I've got.

14         THE COURT:  Okay.  Let me hear from the plaintiffs

15   with regard to that.

16         MR. KRUMHOLZ:  Thank you, Your Honor.  There were a

17   couple of points Mr. Grove made that I wanted to respond to.

18         Number one, the suggestion that we could somehow

19   streamline the case by arriving at summary judgment as to prong

20   1, that is whether or not 16-plus magazines are protected under

21   the Second Amendment, the problem with that, Your Honor, is

22   there is tremendous overlap in the evidence between the proof

23   as to prong 1 and the proof as to prong 2.  And that's

24   especially so depending on -- depending on the level of

25   scrutiny that this court chooses to apply.

1          If you apply level of scrutiny that requires some sort

2    of balancing, well, then, that balancing process is going to

3    require some evidence that folds back onto the question of what

4    the -- what the nature of the burden is on the plaintiffs and

5    their Second Amendment rights.

6          I believe that's all I have for now, Your Honor.

7          *THE COURT:*  Okay.  Thank you.  I remain unpersuaded

8    that dispositive motions will significantly streamline trial in

9    this matter.  I'm also unpersuaded that a determination as

10   requested by the defendant as to the standard of scrutiny can

11   be made in a vacuum.  It ultimately is a legal question, but it

12   depends upon how severe the burden is on what are determined to

13   be core Second Amendment rights.  And the severity of the

14   burden and the identification of core Second Amendment rights

15   may be impacted by the presentation of evidence.  And so while

16   it ultimately is a legal determination, it is a determination

17   arguably based upon factual evidence.

18         As to the ADA issue, my initial thought was that that

19   could be bifurcated.  I'm persuaded by the plaintiffs'

20   representation that some of the same evidence that they would

21   use with regard to the other claims would apply to the ADA.

22   Obviously, the ADA claim has different standards.

23         Were this a jury trial, there might be some argument

24   for a presentation after some framing up of issues through

25   dispositive motions.  But where you're going to be presenting

1    both the evidence and the argument to the Court, it makes very

2    little difference whether it is in the form of a dispositive

3    motion or it is at trial.

4         So in deference to the need to have this matter

5    determined as promptly as possible in order to conserve the

6    resources of the parties and resolve the issues as

7    expeditiously as we can, I'm inclined to just have a trial.

8    And I will set a deadline for the filing of a proposed final

9    pretrial order today.

10        When will you be ready to file your proposed final

11   pretrial order?

12        MR. GROVE:  Your Honor, if I could just throw this out

13   there.  We haven't conferred with them.  Would it be possible

14   just to set a trial date and work backward from that?  I'm not

15   sure if that's how you do things.

16        THE COURT:  Well, I can do them in a number of

17   different ways.  It's a little hard to set a trial date until

18   you know how much time it's going to take to try the case.  Do

19   you feel like you know that today?

20        MR. GROVE:  I know that we had discussed originally in

21   the scheduling order that ten days was contemplated.  I don't

22   know if that has changed.

23        THE COURT:  Here is how I usually do it:  A trial day

24   is generally six hours in the courtroom, so six hours for

25   presentation of evidence and argument and objections and

1    rulings.  I usually look at the number of witnesses that are

2    going to be called and the amount of time that you all think

3    it's going to take to examine those witnesses, and I figure out

4    how many days we need based on that.

5          Now, maybe you've done that in your calculation of ten

6    days.  But let me assure you that if you tell me ten days,

7    that's what you get, but no more.

8          MR. GROVE:  Speaking for the defendant, Your Honor,

9    I'd be very surprised if we exceeded our five-day allotment.

10         THE COURT:  Okay.

11         MR. KRUMHOLZ:  Your Honor, if I understand your court

12   procedure with respect to pretrial orders, it is not a small

13   undertaking.  So we would propose that a deadline for a

14   pretrial order be sometime in the middle of January, which

15   would give us sufficient time between now and then to do the

16   things that we need to do to put together that pretrial order,

17   on which then you can base your determination of when the trial

18   will be, and we can make our determination how long we think

19   it's going to take.

20         THE COURT:  So do I understand you to say,

21   essentially, you don't agree with the ten-day trial?

22         MR. KRUMHOLZ:  No, I don't -- Your Honor, I think the

23   plaintiffs agree that at the moment, ten days still sounds like

24   an appropriate amount of time.

25         But as -- the pretrial order process is designed to

1    help us -- aid us in that, in making that determination.  And

2    so standing here now, on December 19, ten days sounds

3    appropriate to the plaintiffs.  Based on the work we do in

4    putting together the pretrial order, we may have a different

5    view.  I don't foresee that, but it's possible.

6           THE COURT:  Well, if you agree that ten days is the

7    amount of time you need for trial, I'll go ahead and set a

8    trial today.

9           MR. KRUMHOLZ:  We would not be opposed to that.

10   Thanks, Judge.

11          THE COURT:  Okay.  When are you going to be ready to

12   go to trial?

13          MR. GROVE:  I assume next October is probably off the

14   table at this point.

15          THE COURT:  Pretty much.  I'm thinking February or

16   March.

17          MR. GROVE:  Certainly, the later, the better for us.

18   One issue that would need to be resolved is 702 motions.

19          THE COURT:  We can address that in a minute.

20          MR. GROVE:  Okay.  So -- as late as you could possibly

21   set it is fine with us, Your Honor.

22          THE COURT:  Okay.  My objective here is to comply with

23   rule one, not to set the trial as late as possible, but to set

24   a trial as soon as you can be ready.

25          MR. GROVE:  And I think that March, Your Honor -- it

1    probably compatible with that.  But this is a major

2    undertaking.

3            THE COURT:  All trials are major undertakings.  I

4    understand that, but I have every confidence that you will have

5    adequate time to do what you need to do.

6            MR. GROVE:  I appreciate your faith in us, Your Honor.

7            MR. KRUMHOLZ:  Your Honor, February and/or March would

8    be fine with us.

9            THE COURT:  All right.  We'll set the trial, then, to

10   begin on March 31 and to run until April 11.

11           Trial will begin at 8:30 a.m. on Monday morning, the

12   31st.  It will run all of the days that week.  It will continue

13   on April 7th through the entirety of that week -- I should say,

14   the time allotted for it.  It will not extend beyond the 11th.

15   You'll each have 30 hours in which to make your presentation.

16   That includes all of your examination, cross-examination,

17   redirect examination, it includes all of your objections or

18   your responses to objections, your opening arguments, your

19   closing arguments.  You can allocate your time however you

20   want.  Rulings that I make will be divided 50/50, so that the

21   time is spent equally by each side.  And Ms. Glover will keep

22   track of this on a chess clock, so you can ask her at any point

23   in time where your time is.

24           We'll set the time for filing the final pretrial order

25   at January 31, 2014.  And only in the event that that final

1  pretrial order indicates that the amount of time that's

2  currently set for trial is inappropriate will the amount of

3  trial time be changed.

4          We'll set January 15, 2014, as the date for the filing

5  of any joint 702 motions.  That actually is later than the

6  deadline that you originally had with regard to the pretrial

7  scheduling order.

8          MR. GROVE:  Your Honor, may I just follow up on the

9  702 question quickly?

10         THE COURT:  Uh-huh.

11         MR. GROVE:  We had discussed -- Mr. Colin is not here

12  today.  I had discussed the possibility, given this is a bench

13  trial -- I know that Your Honor typically holds an evidentiary

14  hearing on 702s before the trial.  And what we had discussed

15  was filing the joint 702 motions as contemplated by the Court

16  and just folding that into -- folding that into the trial

17  itself.

18         THE COURT:  I think that makes good sense.  But I

19  would like to have the joint 702 motion so I know where your

20  areas of disagreement are.

21         MR. GROVE:  Absolutely.

22         THE COURT:  And it's important that they be joint.

23         MR. GROVE:  We'll --

24         THE COURT:  Otherwise it doesn't work real well, when

25  everybody is guessing what the other folks' opinion is going to

1    be.

2         I urge you to think about those opinions and not use a

3    comprehensive scatter-shot approach under Rule 702.  In other

4    words, if the methodology is a reliable methodology, please

5    don't challenge it.  If someone has adequate experience,

6    training, expertise, et cetera, please don't challenge that.

7         If you're looking at sufficiency and facts -- of the

8    facts and data, remember that the Tenth Circuit uses a

9    quantitative measure, not a qualitative measure.  So it's not,

10    what did you look at?  It's whether you looked at enough.

11         Any other matters that we should address, anticipating

12    trial?

13         Then we'll set a pretrial conference date -- yes, sir.

14        *MR. GROVE:*  Do you expect an Answer to the Fourth

15    Amended Complaint, and when?

16        *THE COURT:*  I haven't set a date for when it's going

17    to be filed.  And given the slight amendment that's going to

18    occur, I'm going to set a very tight Answer date and before

19    your final pretrial order is submitted, because that, of

20    course, will take the place of all of the previous pleadings.

21        So we'll set --

22        Mr. Kopel, when do you plan on the earliest date that

23    you can file the Fourth Amended Complaint?

24        *MR. KOPEL:*  Your Honor, I believe we could file the

25    Amended Complaint, consistent with your instructions, on

1    Monday, if that would be all right.

2              THE COURT:  On the 23rd?

3         MR. KOPEL:  Yes.

4              THE COURT:  Okay.

5         MR. KOPEL:  And I have one question on captioning.  It

6    was discussed today as being the Fourth Amended Complaint, but

7    since the Third Amended Complaint never really made it across

8    the finish line, should I call this the third or the fourth?

9              THE COURT:  The fourth.

10        MR. KOPEL:  Thank you, Your Honor.

11             THE COURT:  Thank you.

12        Can you file an Answer by the 3rd of January?

13        MR. GROVE:  Yes, Your Honor.

14             THE COURT:  Okay.  That will be our date for our

15   Answer on this.

16        Let me do a couple of cleanup rulings here.

17        We have the motion for extension of time to file

18   dispositive motions at Docket No. 97.  It is denied for the

19   reasons that have been expressed during the hearing.

20        Docket No. 105, an unopposed motion for leave to

21   restrict, this was a motion seeking restricted access to

22   certain exhibits that were attached to the Third Amended

23   Complaint.  Since the Third Amended Complaint is essentially

24   withdrawn and those exhibits will not be considered, I'm going

25   to deny the motion for leave to restrict but leave the exhibits

1   under restriction.

2        I don't think there are any other pending motions.

3   Have I overlooked any?

4        Then we need to set a final pretrial conference.  We

5   can set that for February 20 at 3 o'clock p.m.  Will that work

6   for everybody?

7        MR. GROVE:  That's fine for the Government, Your

8   Honor.

9        MR. KOPEL:  Your Honor, I teach at Denver University

10  Law School at that particular time; but my students, I'm sure,

11  would appreciate a day off.

12       THE COURT:  You can bring them into the courtroom, and

13  they can watch what is going on.

14       MR. KOPEL:  Thank you, Your Honor.

15       MR. GROVE:  There is -- that just triggered something

16  in my mind, Your Honor.

17       In your trial preparation memo, there is an indication

18  that the final pretrial conference, that the defendant needs to

19  appear in person.  This is an official capacity suit.  Would a

20  representative of the Governor's office be here be sufficient,

21  or would you like Governor Hickenlooper here in person?

22       THE COURT:  The reason that that is there is because

23  oftentimes the parties have little idea what happens in a real

24  trial.  Their experience has been watching things on TV, in the

25  movies; and real trials are different than what we see in the

1    media.  And one of the things that I try to do at the final

2    pretrial conference is help the parties have realistic

3    expectations as to what is going to happen at trial.  This

4    isn't one of those cases.  And as a consequence, I don't

5    believe any parties need to be here for the final pretrial

6    conference.

7            MR. GROVE:  Thank you, Your Honor.

8            THE COURT:  You're welcome.

9            Anything else that we need to deal with today?

10           MR. GROVE:  Nothing from the Governor, Your Honor.

11           THE COURT:  Thank you.  How about for the plaintiffs?

12           MR. KRUMHOLZ:  No, Your Honor.

13           THE COURT:  All right.  Then I will look forward to

14   seeing you in February, and we'll have this matter at trial by

15   the end of March.

16           We'll stand in recess.  I wish you all happy holidays.

17           (Recess at 4:07 p.m.)

18                      REPORTER'S CERTIFICATE

19

20       I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.

21

22       Dated at Denver, Colorado, this 30th day of September,

23   2014.

24                              s/Therese Lindblom

25                          _____
                            Therese Lindblom,CSR,RMR,CRR